UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FREDERICK CANFIELD,

                         Plaintiff,

v.                                             6:24-cv-1303
                                             (GTS/TWD)

PETER TARTAGLIA, et al.,

                         Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

FREDERICK CANFIELD
*Plaintiff, pro se*
23-B-5349
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

## I.    INTRODUCTION

      The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Frederick Canfield ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983. Dkt. No. 1.

Plaintiff, who was confined at the Oneida County Correctional Facility at the time of filing, has

not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). Dkt.

Nos. 2, 3.

## II.    IFP APPLICATION

      "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No.

1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need.  Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, Dkt. No. 3, he is granted permission to proceed IFP.[1]

## III.    BACKGROUND

As stated above, Plaintiff identified the Oneida County Correctional Facility as his place of detention at the time of his complaint, dated September 30, 2024.  *See* Dkt. No. 1 at 2, 6.[2] Plaintiff also reported "23B5349" as an identification number associated with a prior period of incarceration.  *See id.* at 2.

At approximately 9:00 p.m. on July 12, 2024, "Sergeant Richard Kimmerer and several others including my parole officer Peter Tartaglia . . . showed up on Mumbulo RD at my brothers

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

property and told me I had pending charges for some incident that happened 2 weeks prior, and had no evidence to support that and proceeded to put me in handcuffs." *Id.* at 4. Plaintiff avers "[b]ecause Sergeant Kimmerer lacked evidence to charge me with he got Mr. Tartaglia to act as a stalky horse to conduct a illegal and unlawful search to find evidence that they lacked to act upon to charge me with." *Id.* Therefore, "without consent or a warrent they illegally and unlawfully conducted a illegal search that violated my 4th and 14th Amendment on a camper that was not mine." *Id.* "They found a bag of pills and a Gram of meth to illegally charge me with and took me to jail to unlawfully imprison me." *Id.* "Mr. Tartaglia was filling out the warrant while I was in the back of the Sheriffs car." *Id.* at 5.

At the time he filed his complaint, Plaintiff had been "sitting in jail . . . for 75 days with no indictment . . . ." *Id.* at 4-5. He states he has been "unlawfully imprisoned." *Id.* at 5. Plaintiff also avers he "was coerced into signing the parole agreement papers with my freedom from prison, If not for that I would not have signed the agreement. So I believe that makes it void." *Id.* at 5. He further argues "Parole status does not provide parole officers a Golden ticket to search him/her whenever the mood strikes nor can they run interference for the police to help them find evidence for crimes they are investigating but otherwise lack probable cause to act upon." *Id.*

Plaintiff identified three claims: (1) "Mr. Tartaglia conducted a illegal search and seizure violating my 4th and 14th Amendment Rights;" (2) "Sergeant Richard Kimmerer conducted a warrentless and illegal search and seizure violating my 4th and 14th Amendment Rights;" and (3) "Sergeant Kimmerer and Mr. Tartaglias actions deprived me of Life and liberty violating my 14th Amendment Right." *Id.* at 6. He seeks "$500,000 for the Damage and to stop them from

doing this to other people, compensatory Damage and punitive damage." *Id*. On January 14, 2024, Plaintiff filed a motion to appoint counsel. *See* Dkt. No. 8.

The Court takes judicial notice of the New York State Department of Corrections and Community Supervision ("DOCCS") public administrative records which indicate "Fredrick Canfield," DIN 23B5349, was accepted into DOCCS custody on February 3, 2025, and list the admission type as "RETURN FROM PAROLE/COND REL." *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on Feb. 14, 2025); *see also*, *e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information . . . ."); *Peterkin v. Mullin*, No. 5:24-CV-0377 (GTS/TWD), 2024 WL 2022054, at *1 (N.D.N.Y. May 6, 2024) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Incarnated Lookup search page), *report and recommendation adopted*, 2024 WL 4262573 (N.D.N.Y. Sept. 23, 2024).

## IV.   LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

Here, given Plaintiff's allegation that he has been "unlawfully imprisoned," Dkt. No. 1 at 5; *see also*, Dkt. No. 1 at 4, his assertion that his "parole agreement papers" are "void," Dkt. No. 1 at 5, and his aforementioned return to physical custody from parole, *see supra*, Section III, it appears Plaintiff is attempting to seek review of a parole violation/revocation of parole status resulting from the events of July 12, 2024. In *Heck v. Humphrey*, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87 (1994). Further, Courts have subsequently made clear that "*Heck* and its 'favorable termination' rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole." *Partee v. City of Syracuse*, No.

5:19-CV-0417 (TJM/DEP), 2019 WL 2617901, at *6 (N.D.N.Y. May 23, 2019) (citing *Bratton v. New York State Div. of Parole*, No. 5:05-CV-0950, 2006 WL 2792743, at *2 (N.D.N.Y. Sept. 27, 2006)) (additional citations omitted), *report and recommendation adopted*, 2019 WL 2616954 (N.D.N.Y. June 26, 2019); *see also Opperisano*, 286 F. Supp. 3d at 454 (explaining, "*Heck's* limitation of section 1983 claims has come to be known as the 'favorable-termination' rule and applies to revocations of parole.") (citing *Lee v. Donnaruma*, 63 F. App'x 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.")) (additional citations omitted).

Accordingly, insofar as Plaintiff seeks to challenge his current confinement, any such claim is barred by *Heck* and should be dismissed. *Smurphat v. Hobb*, No. 8:19-CV-0804 (GTS/CFH), 2019 WL 7971869, at *5 (N.D.N.Y. Sept. 27, 2019) (finding the plaintiff's claims, which "appear[ed] to be challenging the terms and conditions of his parole as well as the parole revocation" were "barred by *Heck*" and recommending dismissal of such claims without prejudice), *report and recommendation adopted*, 2019 WL 6827571 (N.D.N.Y. Dec. 13, 2019); *Barzee v. Wison*, No. 5:24-CV-1237 (DNH/MJK), 2024 WL 4751552, at *6 (N.D.N.Y. Nov. 12, 2024) (explaining, "plaintiff's claims against the defendant law enforcement officers as they relate to the revocation of his parole may not proceed."), *report and recommendation adopted*, 2024 WL 4969972 (N.D.N.Y. Dec. 4, 2024).

"Moreover, the Second Circuit has made clear that, 'when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom.'" *Brown v. Budelmann*, No. 5:23-CV-0002 (MAD/TWD),

2023 WL 4424119, at *3 n.7 (N.D.N.Y. Apr. 17, 2023) (quoting *Stegemann v. Rensselaer Cnty.*

*Sheriff's Off.*, No. 20-CV-3316, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (citing *Heck*,

512 U.S. at 487 n.7)), *report and recommendation adopted*, 2023 WL 4144999 (N.D.N.Y. June

23, 2023).  Therefore, because Plaintiff has not alleged injury resulting from the allegedly

unreasonable search and seizure beyond his confinement, he cannot recover for the search and

seizure absent a showing of favorable termination of his parole revocation.  *See, e.g.*, *Kravitz v.*

*City of Hudson*, No. 1:17-CV-1175 (TJM/CFH), 2017 WL 6403075, at *2 (N.D.N.Y. Nov. 16,

2017) (explaining, "[i]f it is the case that the allegedly illegal search of plaintiff's property led to

a criminal conviction, a challenge to the search of the property would be barred by *Heck* as

success on such claim would necessarily invalidate that conviction."), *report and*

*recommendation adopted*, 2017 WL 6389715 (N.D.N.Y. Dec. 12, 2017).

　　　　Should Plaintiff file an amended complaint, "he may be able to address the *Heck* bar

through more detailed pleading regarding the status of his parole revocation, or by demonstrating

that his claims do not implicate the invalidity of his parole revocation."  *Kelly v. Albany Cnty.*

*Prob. Dep't*, No. 8:20-CV-0722 (GLS/DJS), 2020 WL 4458929, at *2 (N.D.N.Y. July 9, 2020),

*report and recommendation adopted*, 2020 WL 4432711 (N.D.N.Y. July 31, 2020).

Accordingly, the undersigned recommends the complaint be dismissed without prejudice and

with leave to amend.  *See, e.g.*, *Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019

WL 1486836, at *3 (N.D.N.Y. Apr. 4, 2019) (recommending the "plaintiff's false imprisonment

and false arrest causes of action be dismissed without prejudice and with opportunity to amend to

specify any and all criminal charges brought against him in connection with the August 9, 2018

incident and whether a 'conviction or sentence has been reversed . . . . , expunged . . . . , [or

otherwise] declared invalid[.]'"), *report and recommendation adopted*, 2019 WL 1922286 (N.D.N.Y. Apr. 30, 2019).

## VI.    MOTION FOR COUNSEL

Based on the above recommendation to dismiss the complaint, the undersigned further recommends Plaintiff's motion for counsel, Dkt. No. 8, be denied as moot.  *See, e.g.*, *Salaam v. Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-0689 (BKS/TWD), 2019 WL 4415624, at *4 (N.D.N.Y. Sept. 16, 2019).

## VII.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to appoint counsel (Dkt. No. 8) be **DENIED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

     **IT IS SO ORDERED.**

Dated: February 19, 2025
     Syracuse, New York

     Therese Wiley Dancks
     United States Magistrate Judge

---

Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 11 of 108
Cash v. Bernstein, Not Reported in F.Supp.2d (2010)
2010 WL 5185047

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**   TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 12 of 108
Cash v. Bernstein, Not Reported in F.Supp.2d (2010)
2010 WL 5185047

his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]  Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

### III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2**  In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

• In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson [3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

[3]  It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff

Cash v. Bernstein, Not Reported in F.Supp.2d (2010)

2010 WL 5185047

in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

• In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

• In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM)(RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

• Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

## All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2022054
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony PETERKIN, Plaintiff,

v.

M. MULLIN, et al., Defendants.

5:24-cv-0377 (GTS/TWD)
|
Signed May 6, 2024

**Attorneys and Law Firms**

ANTHONY PETERKIN, Plaintiff, pro se, 29613 Rt. 12, Apt. 7, Watertown, NY 13601.

**REPORT-RECOMMENDATION AND ORDER**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

 **\*1** The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Anthony Peterkin ("Plaintiff") brought pursuant to 42 U.S.C. § 1983, Dkt. No. 1, as well as a motion to proceed *in forma pauperis* ("IFP"), Dkt. No. 2. For the reasons stated below, the Court recommends Plaintiff's complaint be dismissed.

## II. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. Dkt. No. 2. Upon review, Plaintiff's IFP application demonstrates economic need. *See id.* at 1-2. Therefore, he is granted permission to proceed IFP.

## III. BACKGROUND

Plaintiff alleges Senior Parole Officer M. Mullin and Parole Officer M. Delaney ("Defendants") violated his Sixth and Fourteenth Amendment constitutional rights. Dkt. No. 1 at 3. He contends the Defendants "contributed to extend my Post Release Supervision beyond the Court ordered legally prescribed time." *Id.* at 4. [1] Plaintiff sets forth the facts of his case as follows:

> On 02/18/21 I was released to the Jefferson County New York State Parole Supervision Watertown Sub-Area Office to begin my sentence's end of Post release supervision. After being "MERIT RELEASE" to the parolre officers there. (see, NYS PL 70.45(b) and annexed exhibit. On 8/19/2022 Parole Officer M. Delaney came to my apartment seeking to enter to affect a search. I would not allow her to enter, stating emphatically that in accordance with law my sentence was officially terminated. Officer M. Delaney disagreed and wrongly circled incorrect dates upon a DOCCS computer Senior Parole Officer M. Mullin informed me that I would remain upon Parole supervision until my Maximum sentence date, with reductions in time, in accordance with the New 30/30 Laws. Of course this was a misapplication of the law and a malicious and willful deceit done under the color of state Law to violate my 14th and 6th.

> U.S.C.A Rights. This illegal state has continued for 16 months or more. As I still have not been issued
> an official letter of sentence termination.

*Id.* [2]  Plaintiff's claims are brought against Defendant Mullin in his official capacity and Defendant Delaney in her individual capacity. *Id.* at 2.

[1]    Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2]    The Court notes the lower portion of one line of text contained in Plaintiff's complaint appears to be cut off, *see* Dkt. No. 1 at 4, however, it is unclear whether any additional text may be missing. Plaintiff also references an "annexed exhibit", however, no such exhibit appears to have been submitted.

The Court takes judicial notice of the New York State Department of Corrections and Community Supervision ("DOCCS") public administrative records which indicate Plaintiff was sentenced to an aggregate maximum sentence of ten years following his convictions of criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the third degree. [3]  Plaintiff's maximum expiration date is listed as May 1, 2023. [4]

[3]    *See* https://nysdoccslookup.doccs.ny.gov/ (site last visited on Apr. 18, 2024); *see also, e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 453 (E.D.N.Y. 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information ...."); *DePaul v. Helmer*, No. 6:10-CV-00813 (LEK), 2012 WL 967059, at *1 (N.D.N.Y. Mar. 21, 2012) (taking judicial notice of the plaintiff's conviction based on information obtained via the DOCCS Inmate Lookup search page).

[4]    The aforementioned DOCCS website further provides "[i]f an inmate has a maximum expiration date, maximum expiration date for parole supervision and/or a post release supervision maximum expiration date, the latest date is controlling." *See also* N.Y. Penal Law § 70.45(a)-(b); *Livingston v. Annucci*, No. 9:18-CV-0803 (JKS), 2021 WL 1091464, at *3 n.5 (N.D.N.Y. Mar. 22, 2021) ("A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date.") (citing N.Y. Department of Corrections and Community Supervision Website, Offender Information Data Definitions, http://www.doccs.ny.gov/calendardatadefinitions.html).

 **\*2**  Plaintiff avers "I suffer from Mental anguish daily thinking that I could be illegally re-arrested any day. This state of perpetual mental anguish has caused physical problems with my health." *Id.* at 5. He requests two million dollars in compensatory and punitive damages and asks the Court to "Have NYSDOCCS issue an official letter of sentence termination ...." *Id.*

## IV. STANDARD OF REVIEW

Section 1915 of Title 28 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989),

*abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

 **\*3**  Plaintiff's complaint asserts Sixth and Fourteenth Amendment due process clause claims against Defendant Mullin, in his official capacity, and against Defendant Delaney, in her individual capacity. *See* Dkt. No. 1 at 3 (identifying "14th U.S.C.A. and 6th U.S.C.A." as the rights violated). [5]  For the reasons stated below, the Court recommends Plaintiff's complaint be dismissed with leave to amend.

[5]     *See also* Dkt. No. 1 at 4 ("Each Defendant contributed to extend my Post Release Supervision beyond the Court ordered legally prescribed time.[ ]M. Delaney as Parole Officer and M. Mullin as co-conspirator Senior Parole officer.").

### A. Eleventh Amendment Sovereign Immunity

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 38-40 (2d Cir. 1977)), *aff'd*, 311 F. App'x 474 (2d Cir. 2009). "Further, 42 U.S.C. § 1983 does not abrogate the immunity of the states, including New York." *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).

"DOCCS, of which the Division of Parole is now a part, is a New York State agency that has immunity under the Eleventh Amendment." *Ennis v. New York Dep't of Parole*, No. 5:18-CV-0501 (GTS/TWD), 2018 WL 3869151, at *4 (N.D.N.Y. June 12, 2018) (citing *Rother v. Dep't of Corr. and Community Supervision*, 970 F. Supp. 2d 78, 89-90 (N.D.N.Y. 2013); *Heba v. New York State Div. of Parole*, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007)), *report and recommendation adopted*, 2018 WL 3862683

(N.D.N.Y. Aug. 14, 2018). "When a defendant is sued in his official capacity, we treat the suit as one against the 'entity of which an officer is an agent.' " *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)) (additional citations omitted). As a result, "claims for money damages against state officials, including DOCCS officials and parole officers, sued in their official capacities, are ... barred under the Eleventh Amendment." *Ennis*, 2018 WL 3869151, at *4 (citing *Graham*, 473 U.S. at 167-68) (additional citations omitted).

Plaintiff's claims concerning Defendant Mullin are brought against him in his official capacity as a senior parole officer, therefore, they are barred by the Eleventh Amendment. Accordingly, the Court recommends Plaintiff's claims against Defendant Mullin in his official capacity be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) with prejudice. *See, e.g.*, *Partee v. City of Syracuse*, No. 5:19-CV-0417 (TJM/DEP), 2019 WL 2617901, at *8 (N.D.N.Y. May 23, 2019) (recommending dismissal of plaintiff's claims against parole officers "[a]s plaintiff has named the defendant-officers of the Division of Parole in their official capacities and seeks monetary damages, those claims are barred by the Eleventh Amendment.") (citing *Ennis*, 2018 WL 3869151, at *4), *report and recommendation adopted*, 2019 WL 2616954 (N.D.N.Y. June 26, 2019).

### B. Failure to State a Claim

**\*4** Next, Plaintiff has failed to allege facts plausibly suggesting a deprivation of his constitutional rights. Therefore, the Court recommends Plaintiff's remaining claims also be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

While Plaintiff states he told Delaney his "sentence was ofically terminated" sometime prior to August 19, 2022, Dkt. No. 1 at 4, and summarily alleges the Defendants "contributed to extend my Post Release Supervision beyond the Court ordered legally prescribed time," Dkt. No. 1 at 3, Plaintiff has not pleaded facts indicating when or how any court or other authority either terminated or otherwise modified the length of his sentence. Absent such information it is difficult to analyze Plaintiff's claims. In other words, Plaintiff's conclusory assertion that his Sixth and Fourteenth Amendment constitutional rights were violated has merely "alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)) (internal quotations omitted).

Plaintiff's sole factual allegations against Defendant Delaney are that she (1) requested to enter Plaintiff's apartment on August 19, 2022, (2) disagreed with Plaintiff's statement that his sentence had been terminated, and (3) identified allegedly incorrect dates on a DOCCS computer. *See id.* at 4. Similarly, Plaintiff merely alleges Defendant Mullin told him he remained under parole supervision on some occasion prior to his maximum sentence date. *See id.* These bare facts do not give rise to a constitutional claim. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (explaining, to establish liability under § 1983, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (citing *Iqbal*, 556 U.S. at 676) (internal quotations omitted).

Accordingly, the Court recommends the complaint be dismissed for failure to state a claim upon which relief may be granted. *See Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) ("A complaint may be dismissed under Rule 8 if it 'is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' ") (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)); *see also, e.g.*, *Mitchell v. Annucci*, No. 1:22-CV-0613 (DNH/DJS), 2022 WL 7271377, at *3 (N.D.N.Y. Aug. 29, 2022) (recommending dismissal of the plaintiff's § 1983 claim that officials conspired to deny his Fourteenth Amendment right to due process as wholly conclusory), *report and recommendation adopted*, 2022 WL 4354360 (N.D.N.Y. Sept. 20, 2022); *Scheidel v. Kosse*, No. 5:09-CV-1277, 2010 WL 3881496, at *3 (N.D.N.Y. Sept. 28, 2010) (dismissing for failure to state a claim plaintiff's complaint which merely alleged wrongdoing in conclusory fashion).

### C. Leave to Amend

In deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court recommends Plaintiff be afforded the opportunity to file an amended complaint to cure the deficiencies identified above. *See Gomez*, 171 F.3d at 796. The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any amended complaint submitted by Plaintiff must also demonstrate that a case or

controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to pursue. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI. CONCLUSION

**\*5** **ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [6] and it is

[6]   Although Plaintiff's application to proceed IFP has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. [7] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[7]   If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2024 WL 2022054

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4262573
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony PETERKIN, Plaintiff,

v.

M. MULLIN, Sr. Parole Officer, in his official capacity; and M. Delaney,
NYSDOCCS, Parole Officer, in his individual capacity, Defendants.

5:24-CV-0377 (GTS/TWD)
|
Signed September 23, 2024

**Attorneys and Law Firms**

ANTHONY PETERKIN, Plaintiff, Pro Se, 29613 Route 12, Apt. 7, Watertown, New York 13601.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

**\*1**  Currently before the Court, in this *pro se* civil rights action filed by Anthony Peterkin ("Plaintiff") against the two above-named parole officers ("Defendants"), is United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Plaintiff's Complaint be *sua sponte* dismissed with leave to amend for failure to state a claim, and Plaintiff's Objection to the Report-Recommendation. (Dkt. Nos. 4, 5.)

Even when construed with the utmost of special leniency, Plaintiff's Objection does not identify with particularity (1) any portion of the Report-Recommendation to which he has an objection and (2) the basis for that objection. (*See generally* Dkt. No. 5.) [1] As a result, Magistrate Judge Dancks' Report-Recommendation is subject to only a review for clear error. [2]

---

[1]  When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]  When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).

2024 WL 4262573

After carefully reviewing the relevant papers herein, the Court can find no clear error in the Report-Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only two brief points.

First, Magistrate Judge Dancks' thorough and correct Report-Recommendation would survive even a de novo review.

**\*2** Second, rather than wait for the undersigned's ruling on Magistrate Judge Dancks' Report-Recommendation, Plaintiff has attempted to file, along with his Objection, a document that he labels as his "Amended Complaint." (Dkt. No. 5.) This act has complicated matters because, even assuming Plaintiff had an absolute right to file such an Amended Complaint under Fed. R. Civ. P. 15(a)(1) despite that he had not yet served his Complaint, [3] an amended complaint supersedes an original complaint in all respects. [4] This means that, arguably, Plaintiff's "Amended Complaint" has partially mooted Magistrate Judge Dancks' Report-Recommendation, which analyzed Plaintiff's *original* Complaint.

[3]    Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course ***within*** ... 21 days after serving it ...." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). Here, Plaintiff never served his Complaint; thus, he is arguably not yet ***within*** the 21-day window in which he may filed an Amended Complaint as a matter of course. *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at \*4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) never ***commenced***.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at \*2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within ... 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required.").

[4]    *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, at 556-57 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."); *cf.* N.D.N.Y. L.R. 7.1(a)(4) ("[T]he proposed amended pleading ... will supersede the pleading sought to be amended in all respects.").

Out of a desire for judicial efficiency, the Court is tempted to apply the recommendations in the Report-Recommendation to Plaintiff's "Amended Complaint." However, Plaintiff's "Amended Complaint" is fatally defective in three respects: (1) it is improperly co-mingled with his Objection; (2) while it contains a statement of factual allegations, it does not contain the other elements of a pleading (e.g., statement of the parties, a statement of the basis of jurisdiction, a statement of the claims, and a statement of the relief requested), as does his original Complaint, which was filled out on a court form (*compare* Dkt. No. 5 *with* Dkt. No. 1); and (3) it appears to rely on an incorporation of his original Complaint, in violation of Local Rule 15.1(a) of the Local Rules of Practice for this Court. More importantly, the Court is mindful that it would hardly be an extension of special solicitude to Plaintiff to consider such a flawed document as his exercise of his absolute right to amend his Complaint once, when he has not yet had the benefit of the undersigned's ruling on Magistrate Judge Dancks' the Report-Recommendation. [5] For all of these reasons, the Court will consider Dkt. No. 5 not as Plaintiff's Amended Complaint but only as his proposed Amended Complaint (which the Court finds to be insufficient for the reasons stated above).

[5]    *Cf. Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

**\*3  ACCORDINGLY**, it is

2024 WL 4262573

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 4) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) **shall be *sua sponte* DISMISSED with prejudice** and without further Order of this Court **UNLESS**, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** correcting the pleading defects identified in the Report-Recommendation; and it is further

**ORDERED** that any Amended Complaint filed by Plaintiff must be a complete pleading that replaces in its entirety, and does not incorporate by reference any portion of, his original Complaint; and it is further

**ORDERED** that, should Plaintiff file an Amended Complaint within the thirty (30) day time period, the Amended Complaint be returned to Magistrate Judge Dancks for further review pursuant to 28 U.S.C. § 1915.

**All Citations**

Slip Copy, 2024 WL 4262573

---

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 23 of 108
Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

2019 WL 2617901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Cedric PARTEE a/k/a Webb, Plaintiff,

v.

The CITY OF SYRACUSE, et al., Defendants

Civil Action No. 5:19-CV-0417 (TJM/DEP)
|
Signed 05/23/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: CEDRIC PARTEE, Pro Se, 32 Candlelight Circle, Apt. A, Liverpool, NY 13090.

FOR DEFENDANTS: NONE.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** *Pro se* plaintiff Cedric Partee, a New York State parolee, has commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against the City of Syracuse ("City"), a City police officer, and various employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleging that defendants violated a number of his rights arising under the United States Constitution. Plaintiff's complaint and an amended application for leave to proceed *in forma pauperis* ("IFP") submitted by the plaintiff have been forwarded to me for review. Based upon my consideration of those materials, I am granting plaintiff's amended IFP application, and recommending that his complaint be accepted only with respect to his Fourth Amendment claim asserted against one individual defendant.

I. BACKGROUND

Plaintiff Cedric Partee, who also claims to be known as "Webb," commenced this action by the filing of a complaint, accompanied by a number of appended exhibits in support of his claims, on April 8, 2019. Dkt. No. 1; Dkt. No. 1-1. According to those documents, plaintiff was convicted in 1984, upon a jury verdict, of murder in the second degree, in violation of N.Y. Penal Law § 125.25, and was sentenced to an indeterminate term of imprisonment of twenty-five years to life. Dkt. No. 1-1 at 67. Plaintiff complains that his original written order of commitment contains a number of clerical errors in contravention of N.Y. Correction Law § 601-a that must be addressed by the DOCCS. Dkt. No. 1 at 12-14 (citing Dkt. No. 1-1 at 71).

Plaintiff's claims appear to have as their genesis his release from state custody, in 2014, to lifetime parole supervision. Dkt. No. 1 at 4; Dkt. No. 1-1 at 16, 58. Under the terms of that release, plaintiff was required to, *inter alia*, abstain from the use of alcohol and refrain from fraternizing with those known to have criminal records. Dkt. No. 1-1 at 16, 19-20, 58.

Although plaintiff's prolix pleading is peppered with constitutional and legal buzzwords, his claims are predicated upon his contention that defendants conspired, in various forms, to charge him with parole violations that he did not commit. *See generally* Dkt. No. 1; Dkt. No. 1-1. Plaintiff claims that he was accused by officers of consuming alcohol, striking his wife, Tina Chambliss-Partee, and being involved in an altercation with his brother-in-law, John Chambliss, on the evening of July 14, 2016, culminating in his arrest by defendant C. Cowan, a City police officer. *See generally* Dkt. No. 1; Dkt. No. 1-1.

2019 WL 2617901

On July 18, 2016, as a result of the incident, plaintiff received a notice of parole violation, in which he was charged as follows:

CHARGE #1: [Plaintiff] violated Rule #7, of the rules governing his release in that on 07/14/16, he was in the company of John Chambliss, a person with a known criminal history who is supervised by the Syracuse Area Office.

CHARGE #2: [Plaintiff] violated Special Condition #13(c), of the rules governing his release, in that on 07/14/16, he consumed alcohol.

**\*2** CHARGE #3: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of Tina Chambliss Partee, by causing injury to her eye.

CHARGE #4: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of Tina Chambliss Partee, by causing injury to her eye, resulting in his arrest for assault.

CHARGE #5: [Plaintiff] violated Rule #8, of the rules governing his release in that on 07/14/16, he threatened the safety and well-being of John Chambliss by having a physical altercation with him.

Dkt. No. 1-1 at 56-57; *see also* Dkt. No. 1 at 10. [1]

[1]  In addition to the notice of parole violation, plaintiff appears to have also been charged criminally in connection with the July 14, 2016 events, although one count of assault in the third degree was dismissed in the interest of justice pursuant to N.Y. Criminal Procedure Law § 170.30(1)(g) by the Syracuse City Court on September 6, 2016. Dkt. No. 1-1 at 65.

On September 13, 2016, the matter proceeded to a final parole revocation hearing, at which plaintiff was represented by counsel. Dkt. No. 1-1 at 15-72. Although plaintiff denied each of the allegations raised at the hearing, the charges alleging violations with regard to not consuming alcohol, fraternizing with a person known to have a criminal record, and engaging in a physical confrontation, were sustained, leading ultimately to the revocation of his parole and imposition of a twenty-four-month additional period of incarceration. [2]  *See generally* Dkt. No. 1, Dkt. No. 1-1; *see also Partee v. Stanford*, 159 A.D.3d 1294 (3d Dept 2018) (confirming the revocation of plaintiff's parole).

[2]  Although Ms. Chambliss-Partee was subpoenaed by the DOCCS to testify at the final revocation hearing, she failed to appear. Dkt. No. 1-1 at 39. She subsequently provided plaintiff with a notarized statement in which she summarily stated as follows:
I ... did not tell my brother John Chambliss that [plaintiff] ... hit me. I don't know why he lied at [plaintiff's] parole rehearing on September 13, 2016.
Dkt. No. 1-1 at 13.

As relief for the foregoing, plaintiff seeks monetary damages in excess of $40 million, as well as injunctive relief of an unspecified nature. Dkt. No. 1 at 14-15.

II. DISCUSSION

A. IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400.00, must ordinarily be paid. [3]  28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). [4]  Although plaintiff has submitted a completed, amended IFP application, in it he indicates that he receives no income from any sources whatsoever. Dkt. No. 2. It strains credulity that plaintiff has no source of income at all, even if it is in the form of public assistance, Social Security benefits, or financial help from friends or relatives. [5]  *See id.* However, for purposes of this order, report, and recommendation, I will assume that plaintiff is financially eligible for IFP status. [6]  *See id.*

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 25 of 108

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)
2019 WL 2617901

3    The total cost for filing a civil action in this court is $ 400.00, consisting of the civil filing fee of $350.00, 28 U.S.C. § 1914(a), and an administrative fee of $ 50.00.

4    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

5    Indeed, according to documents appended to the plaintiff's complaint, he claims to receive Social Security supplemental security income ("SSI") payments. *See* Dkt. No. 1-1 at 59.

6    Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

B. Sufficiency of Plaintiff's Complaint

1. Standard of Review

**\*3** Because I have found that plaintiff meets the financial criteria for commencing this action IFP, I must next consider the sufficiency of plaintiff's claims in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or the factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)) (internal quotation marks and emphasis omitted).

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 26 of 108
Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)
2019 WL 2617901

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

## 2. Analysis of Plaintiff's Claims

**\*4** Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also* 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights[,] .... [but] merely provides 'a method for vindicating federal rights elsewhere conferred[.]' " *Patterson*, 375 F.3d at 225 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In order to state a claim pursuant to section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

### a. Personal Involvement of Defendants Moss and Snyder

In his complaint, plaintiff names Supervising Parole Officers "Moss" and "J. Snyder" as two of the defendants sued. Other than listing these defendants under "Parties to Action" and in the "Relief Requested" sections of his complaint, however, those defendants are nowhere mentioned in the body of plaintiff's complaint.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)) (internal quotation marks omitted). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under [the] law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at \*3 (S.D.N.Y. Jan. 24, 1994).

Because plaintiff has made only passing reference to defendants Moss and Snyder in his complaint, and has included no factual allegations regarding their conduct, he has failed to plausibly allege their personal involvement in any constitutional violations. Accordingly, I recommend that plaintiff's complaint be dismissed as against those defendants based upon their lack of personal involvement.

### b. City of Syracuse

2019 WL 2617901

Plaintiff names the City of Syracuse as a defendant, yet fails to plausibly allege any facts that would support a claim against that entity. A municipal entity may be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Municipal liability for the acts of its employees can be established in several ways, including through "proof of an officially adopted rule or widespread, informal custom" demonstrating " 'a deliberate government policy or failing to train or supervise its officers.' " *Bruker v. City of N.Y.*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of N.Y.*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent official policy," *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), or when municipal officers have acquiesced in or condoned a known policy, custom, or practice that violates federal law. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.").

**\*5** In this case, plaintiff has failed to allege the existence of a specific policy of the City of Syracuse that led to the constitutional violations asserted in his complaint. Instead, he has merely alleged that the City should be held accountable based upon its alleged failure to properly hire, train, and supervise it employees. *See, e.g.*, Dkt. No. 1 at 8. Such a conclusory allegation is insufficient to states a plausible municipal liability claim. *Simms v. City of New York*, 480 Fed. App'x 627, 631 n.4 (2d Cir. 2015) (noting that plaintiff's "conclusory allegation that the City failed to train its officers, without any supporting factual material" is insufficient to state a claim for municipal liability under section 1983). Accordingly, I recommend that plaintiff's claims against the City of Syracuse be dismissed.

### c. N.Y. Correction Law § 601-a and Defendant Annucci

While the primary thrust of plaintiff's complaint stems from the circumstances leading to the revocation of his parole, plaintiff also complains that defendant Anthony J. Annucci, the Acting Commissioner of the DOCCS, failed in his obligation to correct various clerical errors appearing in plaintiff's original order of commitment, as well as other documents concerning plaintiff, and which are maintained by the DOCCS. Dkt. No. 1 at 12-14 (citing Dkt. No. 1-1 at 71). Although his claims against Annucci are inartfully pled, plaintiff appears to allege that because the written order of commitment referred to him as "Cedric Partee," rather than "Cedric Webb," and indicated that his NYSID was 4064899K, rather than 4064899M, the sentence imposed was illegal, resulting in a violation of his constitutional rights. [7]

[7]  At the same time, plaintiff appears to suggest that at least the clerical error with respect to his NYSID was corrected "by the Administration of Correction[,]" but that the correction "resulted in a lost [sic] of jurisdiction." Dkt. No. 1 at 12.

More specifically, plaintiff claims that his constitutional rights were violated by virtue of the fact that the Annucci, in his capacity as the Acting Commissioner of the DOCCS, was derelict in his duties arising under N.Y. Correctional Law § 601-a. That section directs the DOCCS to bring any sentencing irregularities to the attention of the sentencing court so that a defendant can be resentenced to comply with the law. [8] Assuming that at least some aspect of a successful challenge to the correctness of the written order of commitment would not result in plaintiff's immediate or speedier release from parole supervision, such that the sole procedure available is a habeas corpus proceeding, plaintiff's claim is nonetheless not cognizable under section 1983. Any alleged clerical error in a written order of commitment implicates an issue of state law. *See, e.g., Jackson v. Annucci*, No. 18-CV-1162, 2018 WL 7959122, at \*5 (Dec. 19, 2018) (Sannes, J.) (citing *Vasquez v. Loiodice*, No. 07-CV-7164, 2009 WL 2575775, at \*2 (S.D.N.Y. Aug. 20, 2009)), *reconsideration denied*, 2019 WL 1517580 (N.D.N.Y. Apr. 8, 2019). The proper procedure for the plaintiff to challenge the perceived inadequacies with the written order of commitment is by commencing an "appropriate proceeding" with the sentencing court. *See, e.g., Jackson*, 2018 WL 7959122, at \*6; *Matter of McCullaugh v. DeSimone*, 111 A.D.3d 1011, 1012 (3d Dept 2013).

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 28 of 108

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

8       Specifically, that section provides as follows:

> Whenever it shall appear to the satisfaction of the department based on facts submitted on behalf of a person sentenced and confined in a state prison, that any such person has been erroneously sentenced, it shall be the duty of the department to communicate with the sentencing court, the inmate's defense attorney and the district attorney of the county in which such person was convicted. If upon investigation, the sentencing court, the defense attorney or the district attorney believes that the person has been so erroneously sentenced, the sentencing court, or the district attorney acting at the direction of the sentencing court, shall notify the department and arrange for the person to be heard and properly resentenced. The department thereupon shall comply with any court order to produce such person from such prison and cause him or her to be taken before the court in which he or she was sentenced for the purpose of resentence.

N.Y. Corr. Law § 601-a.

 **\*6**  Based upon the foregoing, I find that plaintiff's claim against defendant Annucci arising under N.Y. Correction Law § 601-a is not cognizable under section 1983, and I therefore recommend that it be dismissed.

### d. The *Heck* Doctrine

When a plaintiff seeks "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Estes v Doe*, No. 97-CV-8133, 1999 WL 983886, at \*3 (S.D.N.Y. Oct. 29, 1999) (quoting *Heck*). "A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983." *Estes*, 1999 WL 983886, at \*3. Therefore,

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 487.

Significantly, *Heck* and its "favorable termination" rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole. *See, e.g., Bratton v. New York State Div. of Parole*, No. 05-CV-950, 2006 WL 2792743, at \*2 (N.D.N.Y. 2006) (Mordue, J.) ("District courts have applied the *Heck* holding to section 1983 lawsuits based on the revocation of parole.") (citing *inter alia Dallas v. Goldberg*, 143 F. Supp. 2d 312, 322 (S.D.N.Y. 2001) ("The *Heck* holding applies equally in the parole revocation context.")); *see also Loving v. Harris*, No. 05-CV-3411, 2005 WL 1961420, \*3 (E.D.N.Y. 2005).

Plaintiff's complaint contains a number of naked assertions, though is otherwise conspicuously devoid of factual enhancement, making the precise nature of his claims difficult to discern with any degree of certainty. Plaintiff appears to allege, however, that during the course of his arrest and resulting revocation hearing, he was deprived of equal protection of the law through the use of "discriminatory practices towards [him]." Dkt. No. 1 at 12; *see also id.* at 9-11. Specifically, plaintiff claims that defendants' improper actions were motivated by discriminatory animus against plaintiff as a "Categore [sic] 1 Parolee," and plaintiff was treated differently than similarly situated persons on parole. Dkt. No. 1 at 12; *see also id.* at 8, 11.

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a cognizable equal protection cause of action, a plaintiff must allege sufficient facts that plausibly suggest that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).

 **\*7**  Even assuming that plaintiff's allegations were sufficient to state a claim under the equal protection clause of the Fourteenth Amendment under Rule 8 and *Iqbal*, his equal protection claim fails under the rule promulgated in *Heck*. Plaintiff has not alleged facts that plausibly suggest that the decision to revoke his parole has been invalidated, vacated, overturned, or expunged. *Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) ("However, [the plaintiff] does not allege that he has succeeded in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding."). Because plaintiff's equal protection claim "goes to the heart of the constitutionality" of his parole revocation, it therefore "call[s] into question the validity" of the revocation, and thus is not cognizable under section 1983. *See Burris v. Nassau Cty. Dist. Attorney*, No. 14-CV-5540, 2017 WL 9485714, at \*11 (Jan. 12, 2017) (recommending dismissal of plaintiff's first amendment claim under the rule in *Heck* because it "[bore] on the validity of plaintiff's underlying conviction and sentence"), *report and recommendation adopted by* 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017).

Finally, to the extent that plaintiff's complaint can be read as challenging the terms and conditions of his supervised release—which plaintiff claims were applied as a result of a "conspiracy" among the defendants—this too "would necessarily imply the invalidity" of his parole revocation. *See Robinson v. N.Y. State Dep't of Corr. Servs.*, No. 08-CV-0911, 2008 WL 4560098, at \*2 (N.D.N.Y. Oct. 8, 2008) (McAvoy, J.) (finding that plaintiff's challenge to the terms and conditions of his supervised release was barred under *Heck*); *see also Davis*, 214 F. Supp. 2d at 316 (plaintiff's claim that his parole revocation was the result of inadequate parole revocation proceedings is barred under *Heck*).

Accordingly, I recommend that plaintiff's equal protection claim, as well as any claim challenging the conditions of his parole, be dismissed as barred pursuant to *Heck*.

### e. Fourth Amendment and Defendant Cowan

Plaintiff also alleges that defendant Cowan "forced plaintiff from his home[ ] without an arrest warrant" and handcuffed him on July 14, 2016, in violation of his rights under the Fourth Amendment. Dkt. No. 1 at 8, 10. Based upon these limited allegations, it is unclear whether that claim is based upon defendant Cowan's unlawful entry into plaintiff's home, an unlawful search and seizure, or both. What does appear clear from plaintiff's complaint and accompanying exhibits is that plaintiff does not challenge his actual arrest as violating the Fourth Amendment, since his arrest was conducted pursuant to a warrant. *See generally* Dkt. No. 1; *see also* Dkt. No. 1-1 at 57-59 (detailing plaintiff's purported violation of release to parole supervision and resulting arrest pursuant to a warrant). It appears that at the time Cowan approached plaintiff's home, however, no such warrant had yet been issued. *See* Dkt. No. 1 at 8; Dkt. No. 1-1 at 58.

The Fourth Amendment prohibits "unreasonable searches and seizures," and the Warrants Clause requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, "a search or seizure pursuant to a warrant is presumed valid." *U.S. v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *accord Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("There is ... a presumption of validity with respect to the affidavit supporting [a] search warrant."); *see also U.S. v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000).

While *Heck* would traditionally bar a plaintiff's claim brought pursuant to section 1983 under the circumstances discussed herein, the Supreme Court and the Second Circuit have both recognized that traditional Fourth Amendment claims are ordinarily

not barred by *Heck* because, in light of exceptions to the exclusionary rule—such as the independent source doctrine and the inevitable discovery doctrine—a favorable outcome on a claim pursuant to 42 U.S.C. § 1983 would not necessarily demonstrate the invalidity of a related conviction, or in this instance, revocation of a parolee's supervised release. *Heck*, 512 U.S. at 487 n.7; *Fifield v. Barrancotta*, 353 F. App'x 479, 480-81 (2d Cir. 2009). Thus, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487.

 **\*8** Here, although *Heck* may potentially bar plaintiff's claim that defendant Cowan illegally forced plaintiff from his home and handcuffed him, it is difficult to discern whether plaintiff's release under supervision would have been revoked absent Cowan's alleged interactions with plaintiff. Thus, in light of this uncertainty and considering the court's obligation to liberally construe a *pro se* litigant's pleadings, I find that plaintiff's complaint should be accepted for filing and that defendant Cowan should be required to respond in accordance with the local rules of practice for this court and the Federal Rules of Civil Procedure. I should note, however, that in recommending that the court require a response from defendant Cowan, I express no opinion as to whether plaintiff's claims can survive a properly filed motion to dismiss, motion for summary judgment, or whether he may prevail at trial.

### f. Eleventh Amendment Immunity

In his complaint, plaintiff asserts that his claims against the individual DOCCS Division of Parole defendants, which plaintiff has sued in both their individual and official capacities, are not barred by sovereign immunity afforded under the Eleventh Amendment. Dkt. No. 1 at 14. However, for the reasons set forth below, I reject that assertion.

The Eleventh Amendment protects a state against suits brought in federal court by "private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *accord Cory v. White*, 457 U.S. 85, 90-91 (1982); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest. *See, e.g., Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.). As plaintiff has named the defendant-officers of the Division of Parole in their official capacities and seeks monetary damages, those claims are barred by the Eleventh Amendment. *See Ennis v. N.Y. Dep't of Parole*, No. 5:18-CV-501, 2018 WL 3869151, at \*4 (N.D.N.Y. June 12, 2018) (Dancks, M.J.) ("[C]laims for money damages against state officials, including DOCCS officials and parole officers, sued in their official capacities, are also barred under the Eleventh Amendment."), *report and recommendation adopted by* 2018 WL 3862683 (N.D.N.Y. Aug. 14, 2018).

The Supreme Court, in *Ex parte Young*, 209 U.S. 123 (1908), however, established an exception to state sovereign immunity where the plaintiff brings an action seeking injunctive relief against an individual in their official capacity for an ongoing violation. Specifically, "a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, '(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " *Olivo v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:17-CV-0357, 2017 WL 2656199, at \*3 (N.D.N.Y. June 20, 2017) (Sannes, J.) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)). Liberally construing plaintiff's complaint, and considering that plaintiff has since been returned to his supervised release status,[9] I find that plaintiff has not alleged any facts to suggest an ongoing violation against him that would warrant prospective relief. *See id.* Thus, to the extent that plaintiff seeks injunctive relief against defendants in their official capacities, I recommend that those claims be dismissed as barred by the Eleventh Amendment.

2019 WL 2617901

9     DOCCS records matching plaintiff's department identification number (84A5009) indicate that on July 12, 2018, plaintiff was released on parole. *See* DOCCS Inmate Information, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited May 22, 2019).

g. State Law Claims [10]

10    Based upon my finding that plaintiff's federal claims against all defendants with the exception of defendant Cowan are subject to dismissal, I recommend that the court decline to extend supplemental jurisdiction over his state law claims against those defendants. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, in this section I address only plaintiff's state law claims against defendant Cowan.

**\*9** Finally, plaintiff's complaint also refers to defendant Cowan having committed state law torts, including malicious prosecution, intentional infliction of emotional distress, and fraud. Dkt. No. 1 at 8. Beyond suggesting that these torts occurred, plaintiff has failed to provide any further factual enhancement to his claims. *See Iqbal*, 556 U.S. at 678. For instance, assuming that plaintiff's intentional infliction of emotional distress was not otherwise time-barred pursuant to N.Y. Civil Practice Law and Rules § 215(3), plaintiff does not plausibly allege any facts that would suggest defendant Cowan engaged in extreme conduct that was so shocking and outrageous as to exceed all reasonable bounds of decency as required under New York law. *See Washington v. Cty. of Onondaga*, No. 5:04-CV-0997, 2009 WL 3171787, at \*86 (N.D.N.Y. Sept. 29, 2009) (Suddaby, C.J.) (defining actionable conduct for a claim of intentional infliction of emotion distress as conduct that is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and utterly intolerable in a civilized society" (citations and internal quotation marks omitted)); *Lazo v. United States*, No. 06-CV-5438, 2007 WL 2948342, \*5 (S.D.N.Y. Oct. 9, 2007) ("The conduct of the Government employees in this case in seeking an arrest warrant and proceeding to a revocation hearing for a parolee who had never appeared for supervision plainly cannot be characterized as 'extreme and outrageous.' ").

Furthermore, plaintiff has not pled sufficient conduct to state a claim for malicious prosecution or fraud. To state a claim for malicious prosecution under New York law, plaintiff must establish the following four elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Caidor v. M&T Bank*, No. 05-CV-0297, 2006 WL 839547, at \*7 (N.D.N.Y. Mar. 27, 2006) (Scullin, J.) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)) (internal quotation marks omitted). Here, the proceedings at issue—the September 13, 2016 revocation hearing—were not terminated in plaintiff's favor as the decision to revoke plaintiff's supervised release was upheld. *See generally* Dkt. No. 1-1. Moreover, plaintiff has failed to plead that defendant Cowan acted with "actual malice" as the motivating factor for any of his actions. Considering plaintiff cannot meet these critical elements, his claim for malicious prosecution must fail.

Likewise, plaintiff has not established a claim for common law fraud under New York law. To state such a claim, plaintiff must demonstrate that "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Kearney v. N.Y.S. D.O.C.S.*, No. 9:11-CV-1281, 2013 WL 5437372, at \*14 (N.D.N.Y. Sept. 27, 2013) (Suddaby, C.J.) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995)), *aff'd sub nom. Kearney v. New York State Dep't of Corr. Servs.*, 581 F. App'x 45 (2d Cir. 2014). A plain reading of plaintiff's complaint demonstrates that he has failed to plead the essential elements of a claim for fraud. Here, there is no mention in plaintiff's complaint of a materially false statement made by Cowan on which plaintiff relied. Additionally, plaintiff failed to plead that Cowan made any such statement with the intent to defraud plaintiff.

In sum, I find that plaintiff's claims fall well short of passing muster under Rule 8 and *Iqbal*, and accordingly, I recommend that plaintiff's state law claims be dismissed.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 32 of 108

Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)

2019 WL 2617901

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

 **\*10**  In this case, it is possible that, with the inclusion of additional factual detail, plaintiff may be able to state a plausible section 1983 claim against all or some of the defendants. For that reason, I recommend that plaintiff be permitted to submit an amended complaint that cures the deficiencies identified in this report.

In the event that plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

III. SUMMARY, ORDER, AND RECOMMENDATION

Having reviewed plaintiff's amended request for leave to proceed without prepayment of fees, although I am skeptical of the information provided by plaintiff, I find that his application demonstrates his entitlement to that status. Turning to the merits of plaintiff's complaint, however, and applying the standard set forth in 28 U.S.C. § 1915(e), I conclude that plaintiff's complaint fails to state a cognizable claim against any of defendants, with the exception of defendant Cowan. In deference to plaintiff's *pro se* status, I find that defendant Cowan should be directed to respond to the complaint insofar as it asserts a claim against him under the Fourth Amendment. Accordingly, it is hereby

ORDERED that plaintiff's application for leave to proceed in this action without prepayment of fees (Dkt. No. 2) is GRANTED; and it is further respectfully

RECOMMENDED that plaintiff's complaint in this action (Dkt. No. 1) be ACCEPTED for filing only with respect to plaintiff's Fourth Amendment claim against defendant Cowan, but that plaintiff's remaining claims, asserted against all other defendants named in this action be DISMISSED with leave to replead within thirty days of any decision and order adopting this report.

 **\*11**  NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [11] FAILURE TO SO

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 33 of 108
**Partee v. City of Syracuse, Not Reported in Fed. Supp. (2019)**
2019 WL 2617901

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

11      If you are proceeding *pro se* and are served with this order, report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2617901

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2616954

2019 WL 2616954
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Cedric PARTEE a/k/a Webb, Plaintiff,
v.
The CITY OF SYRACUSE, et al., Defendants

Civil Action No. 5:19-CV-0417 (TJM/DEP)
|
Signed 06/26/2019

**Attorneys and Law Firms**

Cedric Partee, Liverpool, NY, pro se.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. David E. Peebles, Chief United States Magistrate Judge. In his May 23, 2019 Order, Report, and Recommendation [Dkt. No. 6], Magistrate Judge Peebles recommends that plaintiff's complaint [Dkt. No. 1] be accepted for filing only with respect to plaintiff's Fourth Amendment claim against defendant Cowan, but that plaintiff's remaining claims, asserted against all other defendants named in this action, be dismissed with leave to replead within thirty days of any decision adopting the report. Plaintiff did not file objections to the Order, Report, and Recommendation, and the time to do so has expired.

**II. DISCUSSION**

After examining the record, this Court has determined that the Order, Report, and Recommendation is not subject to attack for plain error or manifest injustice.

**III. CONCLUSION**

Accordingly, the Court **ACCEPTS and ADOPTS** the Order, Report, and Recommendation [Dkt. No. 6] for the reasons stated therein. Thus, it is hereby

**ORDERED** that plaintiff's complaint [Dkt. No. 1] is **accepted for filing only with respect to plaintiff's Fourth Amendment claim against defendant Cowan.** Plaintiff's remaining claims, asserted against all other defendants named in this action, are **DISMISSED with leave to replead** by filing an amended complaint **within thirty (30) days of this Decision and Order**.

Plaintiff is advised that an amended complaint **supersedes in all respects** the prior pleading. Therefore, if plaintiff files an amended complaint, he **must properly allege in the amended complaint all factual bases for all claims asserted therein, and the amended complaint must be in compliance with Rules 8 and 10 of the Federal Rules of Civil Procedure.**

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2616954

      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 2792743
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Larry BRATTON, Plaintiff,

v.

NEW YORK STATE DIVISION OF PAROLE; P.O. Turner; P.O. Wijkowski; P.O. Jones;
Sgt. Herson; Sgt. Valley; Officer Watkins; and Ithaca Police Department, Defendants.

No. 5:05-CV-950 (NAM/GJD).

|

Sept. 27, 2006.

**Attorneys and Law Firms**

Larry Bratton, Plaintiff, Moravia, NY, pro se.

Hon. Eliot Spitzer, Attorney General of the State of New York, Senta B. Siuda, Esq., Assistant Attorney General, Syracuse, NY, for Defendants New York State Division of Parole, Turner, Wijkowski, and Jones.

G. Peter Van Zandt, Esq., Binghamton, NY, for Defendants Sgt. Herson, Sgt. Valley, Officer Watkins, and Ithaca Police Department.

### MEMORANDUM-DECISION AND ORDER

Hon. NORMAN A. MORDUE, Chief U.S. District Judge.

### INTRODUCTION

**\*1** Defendants New York State Division of Parole, P.O. Turner, P.O. Wijkowski, and P.O. Jones move (Dkt. No. 24), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings dismissing the claims against them. Defendants Sgt. Herson, Sgt. Valley, Officer Watkins, and the Ithaca Police Department move (Dkt. No. 44) for the same relief. For the reasons set forth herein, the Court grants the motions in part and denies them in part.

### AMENDED COMPLAINT

In his amended complaint (Dkt. No. 6) in this action under 42 U.S .C. § 1983, plaintiff *pro se* claims that he is currently incarcerated in a New York State Correctional Facility as a result of a determination that he violated the conditions of his parole. The amended complaint asserts claims against the New York State Division of Parole and against Parole Officers Turner, Wijkowski, and Jones in their individual and official capacities. The amended complaint also asserts claims against the Ithaca Police Department and against Sgt. Herson, Sgt. Valley, and Officer Watkins in their individual and official capacities.

On January 14, 2005, plaintiff was released from prison on parole. Defendant Wijkowski was assigned as his parole officer. According to the amended complaint, at around 9 p.m. on February 8, 2005, Wijkowski and an unidentified male (who in fact was defendant Jones, another parole officer) came to plaintiff's residence. Plaintiff admitted them. Once inside, Wijkowski stated that he wanted to obtain a urine sample from plaintiff. Wijkowski did not, however, have a urine test sample kit with

him. He said he was going to obtain a test sample kit, and instructed the unidentified man to watch plaintiff while he was gone. Plaintiff objected that he did not know who the unidentified man was. Plaintiff stated that he was going out and began to dress. Wijkowski went into the hall and telephoned the Ithaca Police Department. Wijkowski then returned to plaintiff's room, and he and Jones tackled and handcuffed plaintiff, telling him he was under arrest. Plaintiff claims that Wijkowski and Jones handcuffed him so tightly that when the handcuffs were removed his wrists were swollen and bruised.

The amended complaint further alleges that, while plaintiff was handcuffed and lying on his bed, defendants Herson and Watkins, both Ithaca Police Officers, arrived with a large dog on a leash. They brought the dog near plaintiff and permitted it to bark and lunge at him. Eventually, plaintiff was taken to a police car. Watkins, Wijkowski, Jones and Herson then used the dog to search plaintiff's room for drugs.

According to plaintiff, he had complied at all times with the conditions of his parole. He claims that the individual defendants conspired to "violate" him on his parole and to search his residence without a warrant or probable cause. He alleges that he had a lawsuit pending against Wijkowski at the time, *Bratton v. Baker,* 03-CV-1458 (N.D.N.Y., Hurd, D.J.); that Wijkowski intensely disliked him; that Wijkowski was likely to seek retaliation against him; and that defendants Turner and New York State Division of Parole had reason to know these facts but were indifferent to the threat Wijkowski posed to plaintiff. Plaintiff alleges a variety of constitutional violations and conspiracy pursuant to 42 U.S.C. §§ 1983, 1985 and 1986.

## DISCUSSION

**\*2** In deciding a motion to dismiss the complaint under Fed.R.Civ.P. 12(c), the Court applies the standard applicable to a Rule 12(b)(6) motion for failure to state a claim, *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001), that is, the Court accepts as true the factual allegations of the complaint and draws all inferences in favor of the plaintiff. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). Dismissal is proper only if it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief. *See Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994).

The New York State Division of Parole correctly argues (Dkt. No. 24) that it is entitled to dismissal on the ground that any claim against it is barred by the Eleventh Amendment, which bars a citizen from suing a state or one of its agencies or departments in federal court. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Dismissal of all claims against New York State Division of Parole is granted. *See Loving v. Harris,* 2005 WL 1961420, \*3 (E.D.N.Y.2005). For the same reason, all claims against Parole Officers Turner, Wijkowski, and Jones in their official capacities are dismissed. *See Hill v. Goord,* 63 F.Supp.2d 254, 259 (E.D.N.Y.1999).

The Ithaca Police Department argues (Dkt. No. 44) that plaintiff fails to plead any basis for holding it liable for the conduct of its police officers. It is well established that a municipal agency or department cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents; rather, to support such liability a plaintiff must show that his injury resulted from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *Monell v. Department of Social Servs.,* 436 U.S. 658, 694 (1978). Plaintiff makes no such allegation here, and his claims against the police department are dismissed. By the same token, his claims against the police officers in their official capacities are dismissed. *See Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir.2004).

All defendants urge that plaintiff's claims are barred under *Heck v. Humphrey,* in which the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by

executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486-87 (1994). District courts have applied the *Heck* holding to section 1983 lawsuits based on the revocation of parole. *See Loving,* 2005 WL 1961420 at *2 (*Heck* bars section 1983 damage claim stemming from parole revocation where plaintiff claims that parole officers issued parole violation based on perjured testimony); *Dallas v. Goldberg,* 143 F.Supp.2d 312, 322 (S.D.N.Y.2001) ("The *Heck* holding applies equally in the parole revocation context."); *Davis v. Cotov,* 214 F.Supp.2d 310, 316 (E.D.N.Y.2002) (holding that *Heck* bars plaintiff's claims that his parole violation was based on an improper arrest and that his parole revocation proceedings were inadequate). The issue, then, is whether a ruling in plaintiff's favor on his claims here would render invalid the revocation of his parole.

**\*3** The amended complaint asserts numerous claims, including claims that defendants Wijkowski and Jones wrongfully used the pretext of obtaining a urine sample while their true intention was to harass and intimidate plaintiff in retaliation for his pending legal action against Wijkowski; that they wrongfully used their status as parole officers to enter and search his room without a warrant or probable cause; that they wrongfully detained and arrested plaintiff in his residence without a warrant or probable cause; that they used excessive force in arresting and handcuffing him; that they abused the regular processes of their agencies by pretending that they wanted to obtain a urine test sample when they actually intended to harass, intimidate, threaten, and arrest plaintiff and to search his residence without warrant or probable cause; that they, along with Watkins and Herson, violated his rights by bringing a dog into his residence and using it to threaten him and to search for evidence of a crime without a warrant or probable cause; and that all individual defendants conspired to use plaintiff's status as a parolee to allow police to conduct a wrongful search of his premises, to arrest him without cause, and to harass and intimidate him.

Defendants argue that all of plaintiff's claims stem from the alleged unlawfulness of the procedures which culminated in the revocation of his parole and that therefore, because the parole revocation decision has not been reversed or set aside, plaintiff's section 1983 claims must be dismissed pursuant to *Heck.* A review of the amended complaint, however, does not support dismissal pursuant to *Heck.* Plaintiff's claims do not appear to stem solely from the alleged injury of having his parole revoked. It cannot be said on the face of the amended complaint that every claim advanced by plaintiff necessarily implicates the invalidity of the revocation of his parole. This is not to say that, upon review of this action in light of the parole revocation proceedings and/or other evidence, the Court may not find on summary judgment that some or all of plaintiff's claims must be dismissed on the ground of *Heck,* by operation of the doctrine of collateral estoppel, or on some other ground. The Court finds only that, based solely on the pleadings, it does not appear beyond doubt that all of plaintiff's claims are barred by *Heck.*

Defendants Herson, Valley, and Watkins also move (Dkt. No. 44) for dismissal of the claims against them in their individual capacities on the ground of qualified immunity. This aspect of their motion is denied. They may well succeed in obtaining summary judgment on this ground; however, on the face of the amended complaint, and accepting plaintiff's allegations as true, it does not appear beyond doubt that their alleged conduct could reasonably have been thought consistent with the rights they are alleged to have violated. *See generally Anderson v. Creighton,* 483 U.S. 635, 639 (1987).

**\*4** Likewise, the other grounds raised by defendants do not warrant Rule 12(c) dismissal. Accepting as true the factual allegations of the complaint and drawing all inferences in favor of the plaintiff, the Court finds that it does not appear beyond doubt that plaintiff can prove no set of facts which would entitle him to relief.

**CONCLUSION**

It is therefore

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 39 of 108
**Bratton v. New York State Div. of Parole, Not Reported in F.Supp.2d (2006)**
2006 WL 2792743

ORDERED that the motion by defendants New York State Division of Parole, P.O. Turner, P.O. Wijkowski, and P.O. Jones (Dkt. No. 24) for judgment on the pleadings dismissing the claims against them under Fed.R.Civ.P. 12(c) is granted to the extent that all claims against New York State Division of Parole and against P.O. Turner, P .O. Wijkowski, and P.O. Jones in their official capacities are dismissed, and the motion is otherwise denied; and it is further

ORDERED that the motion by defendants Sgt. Herson, Sgt. Valley, Officer Watkins, and Ithaca Police Department (Dkt. No. 44) for judgment on the pleadings dismissing the claims against them under Fed.R.Civ.P. 12(c) is granted to the extent that all claims against Ithaca Police Department and against Sgt. Herson, Sgt. Valley, Officer Watkins in their official capacities are dismissed, and the motion is otherwise denied.

IT IS SO ORDERED.


**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2792743

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 40 of 108

Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)

2019 WL 7971869

2019 WL 7971869
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin C. SMURPHAT, II, Plaintiff,

v.

Michael HOBB, Parole Officer, et al., Defendants.

8:19-CV-804 (GTS/CFH)
|
Signed 09/27/2019

**Attorneys and Law Firms**

Kevin C. Smurphat, II, 10-A-2976, Franklin County Correctional Facility, P.O. Box 10, Malone, New York 12953, Plaintiff pro se.

## REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

### I. In Forma Pauperis

**\*1** Plaintiff pro se Kenneth C. Smurphat, II, commenced this action on July 8, 2019, with the filing of a complaint and an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."), Dkt. No. 2. After reviewing plaintiff's application, the undersigned concludes that plaintiff may properly proceed IFP for purposes of filing. [1] The undersigned must now assess plaintiff's complaint pursuant to 28 U.S.C. § 1915(e).

[1]     Plaintiff should note that, pursuant to the Prisoner Litigation Reform Act ("PLRA") inmate plaintiffs who have been granted IFP status are still required to pay the $350 reduced filing fee which will be remitted in installments from the inmate's account. 28 U.S.C. § 1915(b). Further, plaintiff will be responsible for all other fees that he may incur in this action, including but not limited to, copying and/or witness fees. See N.D.N.Y. L.R. 5.4(a).

### II. Initial Review

#### A. Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8 (a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the

**Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)**

2019 WL 7971869

adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

> (3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

**\*2** FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

In deciding whether a complaint states a colorable claim, a court must extend a measure of deference to pro se litigants, Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), also referred to as "special solicitude." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). However, the court also has an obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff an opportunity amend the complaint as long as there is a possibility that an amendment would be able to cure the identified defects. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### B. Complaint

Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, 1985 for violations of his civil rights. See generally Compl. Plaintiff contends that defendant Michael Hobb, his parole officer, divulged personal health information to plaintiff's girlfriend, referred to him in derogatory and demeaning terms, and imposed "special conditions that were extravagant," including allowing contact between plaintiff and his girlfriend only during times Mr. Hobb knew plaintiff and his girlfriend would be at work which

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 42 of 108

Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)

2019 WL 7971869

"greatly hindered the relationship from flourishing." Id. at 7. Plaintiff further contends that Mr. Hobb engaged in conversations with plaintiff's mother and stepfather wherein he referred to plaintiff in derogatory terms and "imparted false information and divulged protected health information." Compl. at 8. Plaintiff contends that, as a result of these conversations, his stepfather "engaged in a smear campaign at his and plaintiff's place of employment," "began threatening plaintiff with serious bodily harm and death," and harassed plaintiff by threatening to falsely report him to the authorities. Id.

**\*3** Mr. Hobb accused plaintiff of witnessing his girlfriend staying over at his home, which would have been an unauthorized visit, and that plaintiff had unauthorized contact with his girlfriend's minor child. Compl. at 8-9. Plaintiff denies this conduct. Id. Mr. Hobb coerced plaintiff into signing a false affidavit admitting contact with the minor child. Id. Mr. Hobb instituted a new special condition "disallowing any and all contact by any means"[2] and that his "failure to agree and sign these documents would result in immediate incarceration." Id. at 10.

[2]    It is not entirely clear whether the disallowance of "any and all contact by any means" was between plaintiff and his girlfriend or plaintiff and the minor child. Compl. at 9-10.

In November 2017, plaintiff communicated with his mother and stepfather at which time his stepfather again threatened plaintiff with death. Compl. at 11. Plaintiff reported the threats to Mr. Hobb, the New York State Police, and Washington County Sheriff's Office. Id. Plaintiff contends that as a result of "these extreme circumstances," he "suffered a psychotic break" and was admitted into Glens Falls Hospital Behavioral Health Unit. Id. Plaintiff filed "three formal grievances" against Mr. Hobb and defendant Tabone. Id. In November 2017, the "grievances were denied and appealed." Id. Defendants Kirker and Gilbert denied the grievances, stating that the matters would be addressed at an upcoming compliance hearing. Id. at 12

After his discharge from the hospital in November 2017, Mr. Hobb disclosed confidential medical information by disclosing information about plaintiff's admission into the behavioral health unit, as well as "plaintiff's regimen of pharmacotherapy as well as the discharge diagnoses assigned to plaintiff." Compl. at 12. Further, Mr. Hobb falsely told his mother that plaintiff "made threats of physical injury" against his stepfather. Id.

In November 2017, plaintiff's stepfather made further threats against him, and plaintiff reported this to the New York State police. Compl. at 12. Mr. Hobb harassed plaintiff between November 27, 2018, and January 30, 2018, "by randomly accusing plaintiff of a plethora of false allegations," including having unauthorized meetings with his girlfriend in Fort Edward, New York; meeting plaintiff at her residence, "which in fact was the residence of the significant other of plaintiff[']s mother," and "of association with controlled substances and other unlawful activity." Id. at 13.

Plaintiff had a compliance hearing on December 7, 2017, presided over by Hon. Glen T. Bruening. Compl. at 13. Plaintiff was represented by Charles Bayer from Mental Hygiene Legal Services and the New York State Attorney General's Office was represented by "Mr. John Doe." Id. "All parties were in agreement" that plaintiff could resume contact "albeit temporarily by text only" with his girlfriend. Id. Mr. Hobb was notified of this arrangement and told plaintiff that he would notify him when he was permitted to resume this contact with his girlfriend. Id. Plaintiff contacted Mr. Hobb about when he could begin contact, but Mr. Hobb "gave increasingly vague and evasive responses." Id. at 14.

Mr. Hobb contacted the American Red Cross, "of which plaintiff was an active volunteer" and "in essence told them that they should terminate plaintiff's services due to his criminal history along with his mental and emotional stability." Compl. at 14. Mr. Hobb "disclosed false and/or misleading inflamatory [sic] information along with confidential and protected health information." Id.

**\*4** In December 2017, Mr. Hobb instituted a new condition prohibiting any contact with his stepfather. Compl. at 14. Because plaintiff and his stepfather worked at the same location, this condition "effectively caused plaintiff to terminate his employment." Compl. at 14-15. On December 20, 2017, Mr. Hobb strip frisked plaintiff, "leaving him in only his boxer shorts for the duration." Id. at 15. Defendant Hoatling noticed plaintiff's state of undress and "upon concluding his inflammatory pronouncement,

Defendant Hoatling began to berate plaintiff. In response to Defendant Hoatling's obstreperous barrage of explatives [sic,] several parole officers, parolees and other employees witnessed the tirade against plaintiff along with plaintiff[']s state of undress exacerbatin [sic] plaintiff[']s humiliation." Id.

Defendants Hobb and Hoatling then "coerced plaintiff into signing an additional affidavit falsly [sic] claiming third-party contact with Mrs. Ashline [his girlfriend] assisted by his mother and grandfather. Refusal to author and sign said document would result in immediate incarceration." Compl. at 16. Mr. Hobb threatened plaintiff with incarceration if he continued to attempt to "rescind" the special condition prohibiting contact between plaintiff and his girlfriend. Id. Plaintiff was also threatened with "the disapproval of residence and a new condition disallowing contact with his mother" and threatened plaintiff "with his mother[']s incarceration due to her 'alleged' interference." Id.

On January 30, 2018, plaintiff had defendants Hobb, Sawyer, Reif, and Bailey made an unannounced home visit. Compl. at 17. Defendants placed plaintiff in handcuffs and told him to remain at the kitchen table while Bailey stood guard over him. id. Hobb, Sawyer, and Reif searched the residence, causing "unnecessary, unwarented [sic], and vengeful destruction of plaintiff[']s personal property." Id. Specifically, Mr. Hobb "unceremoniously tossed everything onto the bed, to include, but not limiter to food, drink and an ashtray thus causing permanent damage." Id. Hobb then threatened plaintiff's mother, who is the homeowner, "with plaintiff[']s incarceration as well as further damage to property, if she refused him permission to search other private areas of which plaintiff did not have access to, specifically [plaintiff's mother's] bedroom." Id. at 17. Plaintiff contends that during the search, Bailey "made several comments ... that insinuated he was privy to Defendant Hobb's insidious scheme to incarcerate plaintiff with or without cause," including that " 'even if nothing is found, it is still suspecious [sic]." Id. at 18. Hobb "claimed that due to unauthorized items found in plaintiff[']s possession, that Defendant Senior Parole Officer Tabone authorized a warrant." Id. Mr. Hobb took plaintiff into custody and brought him to the Washington County Jail "to await parole revocation proceedings." Id. at 18.

On January 31, 2018, Mr. Hobb "authored a violative report that was patently false and misleading. Defendant Hobb in several instinces [sic] outright lied in said report." Compl. at 18. Mr. Hobb "made it very clear that if plaintiff contested the hearing in anyway [sic] he would guarantee an additional violation of plaintiff[']s regimen of Strict and Intensive Supervision and Treatment." Id. at 19. Plaintiff contends that a parole violation "would subject plaintiff to the possibility of a life term of commitment to a psychiatric hospital, effectively hadicaping [sic] plaintiff from obtaining justice and relief through the administrative process." Id. at 19.

Plaintiff "requests an order declaring that the defendants acted in a maner [sic] that deprived him of his state and federal statutory rights as well as the rights conferred by and enumerated in the Constitution of the United States and the ammendments [sic] thereof." Compl. at 19. Plaintiff "requests an injunction obviating the authority of the defendants, their superiors as well as their subordinates, an all other employees of the Department of Corrections and Community Supervison [sic] (DOCCS) and the Office of Mental Health (OMH) to supervise in any capacity the plaintiff in regards to any and all criminal, civil, and administrative proceedings occuring [sic] before this date against plaintiff." Id. Plaintiff demands compensatory damages "in no event less than three-million two-hundred-fifty thousand dollars ($3,250,000). Id. at 20. Plaintiff additionally seeks punitive damages "in no event less than one-million eight-hundred thousand dollars ($1,800,000). Id.

### C. Review of Complaint

**\*5** Here, plaintiff appears to be challenging the terms and conditions of his parole as well as the parole revocation and alleging that defendants engaged in a conspiracy to violate his constitutional rights, including an apparent conspiracy to re-incarcerate plaintiff. See generally Compl. In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)

2019 WL 7971869

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. 477, 486-87 (1994).

Because, from what can be determine from the complaint, the parole revocation has not been reversed or set aside, plaintiff's section 1983 conspiracy claims appear barred by Heck. Further, plaintiff's conspiracy claim "goes to the heart" of the constitutionality of his parole terms and revocation, it "call[s] into question the validity" of the revocation, and, therefore, is not cognizable under section 1983. Partee v. City of Syracuse, 5:19-CV-0417 (TJM/DEP), 2019 WL 2617901, at *7 (E.D.N.Y. May 23, 2019) (quoting Burns v. Nassau Cty. Dist. Attorney, No. 14-CV-5540, 2017 WL 9485714, at *11 (N.D.N.Y. Jan 12, 2017), report & recommendation adopted by 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), citing Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002)). [3] Further, insofar as plaintiff challenges the terms and conditions of his parole, which plaintiff contends were applied as a conspiracy among defendants to violate his constitutional rights, this claim also "would necessarily imply the validity of his parole revocation." Partee, 2019 WL 2617901, at *7 (quoting Robinson v. N.Y. State Dep't of Corr. Servs., No. 08-CV-0911, 2008 WL 4560098, at *2 (N.D.N.Y. Oct. 8, 2008)). Accordingly, it is recommended that, insofar as plaintiff's complaint attempts to raise claims challenging the constitutionality of the terms or his supervised release or the revocation of said release, it is recommended that these claims be dismissed without prejudice as barred by Heck.

[3]    Unpublished decisions cited within this Report-Recommendation & Order have been provided to plaintiff.

Insofar as plaintiff contends that defendants damaged his personal property during the search of his home, arguably, plaintiff seeks to set forth a claim for excessive property damage in violation of the Fourth Amendment. See Compl. at 17. The Second Circuit has made clear that " '[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.' " U.S. v. Howard, 489 F.3d 484, 497 (2d Cir. 2007) (quoting United States v. Ramirez, 523 U.S. 65, 71 (1998)). However, "it is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.' " Diaz v. City of New York, 00-CV-2944 (JMA), 2006 WL 3833164, at *7 (E.D.N.Y. Dec. 29, 2006) (quoting Cody v. Mello, 59 F.3d 13, 16 (2d Cir. 1995)). "[T]he Supreme Court has held that a 'seizure' under the Fourth Amendment 'occurs when there is some meaningful interference with an individual's possessory interests in that property.' " Heidorf v. Town of Northumberland, 985 F. Supp. 250, 257 (N.D.N.Y. 1997) (quoting Soldal v. Cook County, Illinois, 505 U.S. 56, 61 (1992) (additional internal quotation marks omitted)). For a plaintiff to succeed on a Fourth Amendment claim for destruction of property, he "must establish 'that the officers' actions were unreasonable or malicious, and that more than ordinary disarray and damage incident to the execution of the warrant' or search occurred." Jackson ex rel. Jackson v. Suffolk County, 8 F. Supp. 3d 386, 401 (E.D.N.Y. 2015) (internal citation omitted). However, " '[s]ome property damage caused during a lawful search is not per se unreasonable within the meaning of the Fourth Amendment.... The reasonableness of the damage must be evaluated with reference to the target of the search,' such as a more invasive contraband search." Id. at 401-02 (quoting Koller v. Hillerbrand, 933 F. Supp 2d 272, 278 (D. Conn. 2013)).

**6**  Here, it does not appear that any such damage was excessive. Plaintiff suggests that unspecified items were permanently damaged because defendants Hobb, Sawyer, and Reif "unceremoniously tossed everything onto the bed, to include, but not limited to food, drink and an ashtray thus causing permanent damage." Compl. at 17. However, plaintiff has not provided the Court with sufficient information surrounding the search – such as the target of the search and whether any contraband was

found as a result of the search such that the Court can assess the reasonableness. Jackson, 9 F. Supp 3d at 401. Accordingly, in light of special solicitude, it is recommended that plaintiff's claim insofar as it may be interpreted as contending that defendants caused excessive property damage resulting from the search in violation of his Fourth Amendment rights be dismissed without prejudice.

Plaintiff next contends that defendant Hobb wrongly disclosed his health information to his girlfriend, mother, stepfather, or the American Red Cross; referred to him in derogatory terms to his girlfriend, mother, stepfather, and/or the American Red Cross; shared "horror" stories with his girlfriend about other persons he was assigned to supervise; and caused him embarrassment/ humiliation by leaving him in his boxer shorts after a search. Compl. at 7-8. Plaintiff also contends that Mr. Hobb amended the terms of his supervision by prohibiting plaintiff from any contact with his stepfather, which "effectively caused plaintiff to terminate his employment as Mr. Whitney [the stepfather] was employed at the same location." Compl. at 14-15.

Liberally read, plaintiff suggests that defendant Hobb engaged in verbal harassment, verbal abuse and/or potentially unprofessional conduct. See Compl. at 7-8, 14-15. However, plaintiff fails to demonstrate how this conduct amounts to a violation of his constitutional rights as verbal harassment, without a showing of actual injury, is not actionable pursuant to section 1983. See Gill v. Hoadley, 261 F. Supp.2d 113, 129 (N.D.N.Y. 2003) (collecting cases) ("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."); Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under ... § 1983"). To the extent plaintiff may allege that his "injury" was the change in the terms of his parole or his parole revocation, as noted above, this claim would appear barred by Heck as plaintiff cannot challenge the terms, conditions, or revocation of his parole unless he demonstrates the revocation has been overturned or otherwise deemed invalid by a court of law. Accordingly, it is recommended that, insofar as plaintiff contends that defendant Hobb or any other defendant violated his unspecified constitutional rights by disclosing health information, referring to plaintiff in derogatory terms to his stepfather or others, leaving him in his boxer shorts, this claim be dismissed with prejudice. Insofar as plaintiff argues that Hobb's conduct resulted in alterations to the terms and conditions of his parole – including the loss of his employment due to the no contact provision involving his stepfather – for the reasons discussed above, it is recommended that this claim be dismissed without prejudice should plaintiff be able to overcome the Heck bar.

Plaintiff makes several claims about being harassed or threatened by his stepfather as a result of Hobb's alleged statements to plaintiff's stepfather. Compl. at 8, 11-12. Plaintiff appears to argue that because his stepfather threatened and harassed him as a result of defendants' alleged actions in disclosing information to the stepfather, defendants' should be held liable for violating plaintiff's unspecified constitutional rights. Id. Plaintiff has set forth no cognizable legal argument supporting a finding that his stepfather, a private actor, could somehow be subject to liability under section 1983. Thus, even reading this potential argument liberally, the Court does not see how plaintiff can set forth any cognizable constitutional claim as a result of the stepfather's alleged conduct or demonstrate that defendants' alleged conduct of sharing health or personal information about plaintiff is not too far attenuated from the stepfather's alleged resultant threats. Plaintiff fully fails to show how defendants' alleged conduct of disclosing personal information to plaintiff's stepfather, which apparently resulted in the stepfather's threats to plaintiff, would be violative of section 1983. [4] Thus, it is recommended that any such claims relating to defendants' disclosure of information to plaintiff's stepfather or others be dismissed with prejudice.

[4]   It is noted that a plaintiff cannot base a federal constitutional claim based on a defendant's negligence. Thus, insofar as plaintiff may seek to argue that defendants were negligent insofar as they disclosed certain information to the stepfather, and that due to that disclosure, the stepfather made threats against him, such would fail to state a claim. See generally Davidson v. Cannon, 474 U.S. 344 (1986) (holding that a prisoner could not base a federal civil rights action against prison officials for their negligent failure to protect).

Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)
Case 6:24-cv-01303-GTS-TWD   Document 10   Filed 02/19/25   Page 46 of 108
2019 WL 7971869

**\*7**  Arguably, plaintiff's complaint, read liberally, may suggest that, in violation of the Fourteenth Amendment, [5] defendants failed to protect him from his stepfather's threats or harassment despite the fact that he alerted them about the harassment/threats. Compl. at 8, 11-12. The Court is unaware of case law out of the Second Circuit addressing the government's duty to protect an individual from a third party when the plaintiff was not in state custody. However, the Eleventh Circuit has been instructive:

> In general, the government does not violate the Due Process Clause of the Fourteenth Amendment by failing to protect an individual against private violence. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In certain limited circumstances, the Due Process Clause will impose on the government an affirmative duty of protection, which arises from the government's affirmative act of restraining the individual's freedom through incarceration, institutionalization, or other similar limitation of personal liberty. Id. at 194-200, 109 S.Ct. 998. Thus, if the victim was not in the government's custody, state officers may only be held liable for a substantive due process violation if they are engaged in behavior that is "arbitrary or conscience shocking in a constitutional sense." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003).

Hilderbrand v. Sanders, 495 F. App'x 6, 7-8 (11th Cir. 2012). Although plaintiff was under parole supervision, as plaintiff was not in state custody at the time of the alleged threats from the stepfather, under this standard, defendants' conduct would have to be "arbitrary" or "conscious shocking." See id. Here, the conduct in question is Mr. Hobb's alleged disclosure of health information and referral to plaintiff in derogatory terms. Even if plaintiff faced annoyance or fear from the stepfather's conduct, plaintiff did not demonstrate injury as a direct result of defendants' alleged disclosure. The alleged disclosure does not shock the conscious such that plaintiff could set forth a claim of failure to protect in violation of the Fourteenth Amendment. Accordingly, insofar as plaintiff's complaint may be interpreted as contending that defendants failed to protect plaintiff from his stepfather's threats, it is recommended that this claim be dismissed with prejudice.

[5]     As plaintiff was a parolee, any such claim would arise under the Fourteenth Amendment, rather than the Eighth Amendment.

### III. Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's Motion for Leave to Proceed In Forma Pauperis, dkt. no. 2, is **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's complaint, dkt. no. 1, be **DISMISSED**: (1) plaintiff's Fourth Amendment excessive property damage claim be dismissed **without prejudice** as set forth herein; (2) plaintiff's claims relating to the terms and conditions of his parole and his apparent parole revocation be dismissed **without prejudice** and with opportunity to amend only if plaintiff can overcome the Heck bar; and (3) the remainder of plaintiff's complaint be dismissed **with prejudice**; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order and permits an amendment as set forth herein, any amended complaint must be filed within thirty (30) days of the filing of the Order adopting this Report-Recommendation & Order and if plaintiff fails to file an amended complaint within that time frame, the case be closed without further order of the Court. [6]

[6]     Plaintiff is advised that, if he is permitted to file an Amended Complaint, the Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety. Plaintiff is further advised that, in any such Amended Complaint, he may not re-assert any claims that have been dismissed with prejudice by the Court.

 **\*8  IT IS SO ORDERED**.

2019 WL 7971869

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within **fourteen (14) days** after being served with a copy of the ... recommendation." N.D.N.Y. L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). FAILURE TO OBJECT TO THIS REPORT WITHIN **FOURTEEN** DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e). [7]

[7]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 7971869

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 48 of 108

Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)

2019 WL 6827571

2019 WL 6827571
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin C. SMURPHAT, II, Plaintiff,

v.

Michael HOBB, Parole Officer; Sharron Tabone, Sr. Parole Officer; Chris Sawyer,
Parole Officer; Kyle Reif, Parole Officer; Scott Bailey, Parole Officer; Rick Hotaling,
Sr. Parole Officer; Jeff Kirker, Bureau Chief; and Ken Gilbert, Reg'l Dir., Defendants.

8:19-CV-0804 (GTS/CFH)
|
Signed 12/13/2019

**Attorneys and Law Firms**

KEVIN C. SMURPHAT, II, 10-A-2976, Plaintiff, Pro Se, Franklin Correctional Facility, P.O. Box 10, Malone, New York 12953.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Kevin C. Smurphat, II ("Plaintiff") against the eight above-captioned employees of the New York State Department of Corrections and Community Supervision's Board of Parole ("Defendants"), are United States Magistrate Judge Christian F. Hummel's Report-Recommendation recommending that the claims in Plaintiff's Complaint be *sua sponte* dismissed (some with prejudice and the rest without prejudice) for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B), and Plaintiff's Objections to the Report-Recommendation. (Dkt. Nos. 5, 6.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety.

## I. RELEVANT BACKGROUND

### A. Magistrate Judge Hummel's Report-Recommendation

Generally, in his Report-Recommendation, Magistrate Judge Hummel rendered the following three findings of fact and conclusions of law: (1) Plaintiff's claims concerning the addition of special conditions of parole, the revocation of his parole, and a conspiracy to re-incarcerate him, should be dismissed after an opportunity to amend them if he cannot overcome the bar on such claims imposed by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Plaintiff's Fourth Amendment claim for excessive property damage should be dismissed after an opportunity to amend it if he cannot correct the pleading defects in that claim; and (3) the remainder of Plaintiff's claims (e.g., his claims arising from the alleged disclosure of his protected health information, alleged verbal harassment, alleged strip frisk, and an alleged failure to protect him from his stepfather) should be dismissed with prejudice at this time for failure to state a claim. (Dkt. No. 5, at Part II.)

### B. Plaintiff's Objections to the Report-Recommendation

Generally, liberally construed, Plaintiff's Objections assert the following five arguments: (1) Plaintiff's claim arising from the revocation of his parole is not barred by *Heck v. Humphrey* because the claim is not challenging the truth of the parole-violation report but the non-physical "assault" to which he was subjected during the course of the revocation of his parole; (2) Plaintiff's claim arising from the special conditions of parole in question (i.e., disallowing contact with his co-worker Mrs. Kayla Ashline and her stepfather Mr. Arthur Whitney) is not barred by *Heck* because his violation of those special conditions did not give rise

2019 WL 6827571

to the revocation of his parole; (3) Plaintiff's Fourth Amendment claim is not barred by *Heck* because the claim arises from the manner of the search, and the manner of the search did not give rise to the revocation of his parole; (4) Plaintiff's claim arising the disclosure of his protected health information and/or highly personal information is actionable because the disclosure was intentional and affirmatively created or enhanced a danger of private violence to Plaintiff; and (5) Plaintiff's claim arising from being "strip searched" and left in boxer shorts in full view of several passers by is actionable under *Crosby v. Hare*, 932 F. Supp. 490 (W.D.N.Y. 1996). (Dkt. No. 6.)

## II. STANDARD OF REVIEW

 **\*2**  When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1]  When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2]  Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at \*1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[1]  *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]  *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3]  Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear*

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 50 of 108

Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)
2019 WL 6827571

error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[4]

[3]    *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[4]    *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**\*3** After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Hummel's thorough Report-Recommendation, the Court can find no error in those portions of the Report-Recommendation to which Plaintiff specifically objected, and no clear error in the remaining portions of the Report-Recommendation: Magistrate Judge Hummel employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds the following analysis.

With regard to Plaintiff's first objection, the Court rejects Plaintiff's argument that his Complaint has alleged facts plausibly suggesting an actionable assault.

With regard to Plaintiff's second objection, the Court rejects Plaintiff's argument that the violations of the two special conditions referenced in his Objections, even if they indeed form the basis of a claim in his Complaint, are (as currently alleged) unrelated to his parole revocation for purposes of *Heck*.

With regard to Plaintiff's third objection, the Court rejects Plaintiff's argument that the manner of the search in question, even if it indeed forms the basis of a claim in his Complaint, is (as currently alleged) both actionable and unrelated to his parole revocation for purposes of *Heck*.

With regard to Plaintiff's fourth objection, the Court rejects Plaintiff's argument that the Complaint's alleged disclosure of his "protected health information" and/or "highly personal information" is actionable.

Finally, with regard to Plaintiff's fifth objection, the Court rejects Plaintiff's argument that the Complaint's alleged strip frisk is actionable under *Crosby v. Hare*, 932 F. Supp. 490 (W.D.N.Y. 1996), which found no violation of the Fourth Amendment rights of a female plaintiff who was completely naked in a bathroom in brief view of a male officer, and passing view of various other male officers, during a search.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 5) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 51 of 108

Smurphat v. Hobb, Not Reported in Fed. Supp. (2019)

2019 WL 6827571

**ORDERED** that the Complaint's claims concerning the addition of special conditions of parole, the revocation of Plaintiff's parole, and a conspiracy to re-incarcerate him, **shall be <u>DISMISSED</u> with prejudice UNLESS, within THIRTY (30) DAYS** from the date of this Decision and Order, Plaintiff files an **Amended Complaint** that overcomes the bar on such claims imposed by *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further

**ORDERED** that the Complaint's Fourth Amendment claim for excessive property damage **shall be <u>DISMISSED</u> with prejudice UNLESS, within THIRTY (30) DAYS** from the date of this Decision and Order, Plaintiff files an **Amended Complaint** that corrects the pleading defects in that claim; and it is further

**ORDERED** that the remainder of the Complaint's claims (e.g., Plaintiff's claims arising from the alleged disclosure of his protected health information, alleged verbal harassment, alleged strip frisk, and an alleged failure to protect him from his stepfather) are **<u>DISMISSED</u> with prejudice** for failure to state a claim; and it is further

 **\*4  ORDERED** that any Amended Complaint that Plaintiff files must be a complete pleading that replaces and supersedes his original Complaint in its entirety (without any incorporation by reference), and may not re-assert any claims that have been dismissed with prejudice by the Court; and it is further

**ORDERED** that, should Plaintiff file an Amended Complaint in a timely fashion, the Clerk shall return the file to Magistrate Judge Hummel for his review.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6827571

---

**End of Document**                                                       © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4751552
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Saio BARZEE, Plaintiff,

v.

Aaron M. WISON, Jr., et al., Defendants.

5:24-CV-1237 (DNH/MJK)

|

Signed November 12, 2024

**Attorneys and Law Firms**

SAIO BARZEE, Plaintiff, pro se

### ORDER and REPORT-RECOMMENDATION

Mitchell J. Katz, United States Magistrate Judge

**\*1**  TO THE HONORABLE DAVID N. HURD, U.S. DISTRICT JUDGE:
The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Saio Barzee. (Dkt. Nos. 1, 6).

### I. IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II. Complaint

**\*2** Plaintiff's complaint concerns events alleged to have occurred between September and November 2023, giving rise to his underlying arrest and criminal prosecution. Plaintiff, a parolee, was hired and began working at Wendy's in September of 2023. (Complaint ("Compl.") at ¶ 1). Plaintiff alleges that, during the course of his employment at Wendy's in September and October 2023, he endured ongoing verbal and sexual harassment from his co-workers, including defendants Santina Rivera, Kari Wheeler, Michelle Murphy, Chris Gordon, Louis Rivera Jr. and Emily Roe. (*See generally* Compl. at ¶¶ 2-19). Plaintiff also describes offending conduct by non-Wendy's employee Aaron M. Wilson, Jr., Santina Rivera's boyfriend. (*See* Compl. at ¶ 16).

On or around October 29, 2023, plaintiff got into a verbal altercation with his co-worker, defendant Kari Wheeler. (Compl. at ¶¶ 20-21). In response, defendant Santina Rivera, Ms. Wheeler's sister, "texted" Wendy's manager defendant Michelle Murphy [1] and informed her that Ms. Wheeler and plaintiff were "threatening each other with violence and gun violence." (*Id.* at ¶ 22). Plaintiff thereafter took a break outside the Wendy's store, at which time he noticed a suspicious dark colored vehicle that he felt to be threatening. (*Id.* at ¶¶ 23-24). Plaintiff alleges that he attempted to approach the vehicle, in which he "noticed a firearm and some weed smoking." (*Id.* at ¶ 24). Ms. Murphy then approached plaintiff and convinced him to go inside so she could "just simply talk to him and that there didn't have to be any problem." (*Id.* at ¶¶ 24-26).

[1]     Defendant Michelle Murphy is Kari Wheeler and Santina Rivera's mother. (Compl. at ¶ 8).

After returning to the inside of the store and speaking to Ms. Murphy, plaintiff "started to go back to work only to then ... be harassed again." (Compl. at ¶ 28). Specifically, plaintiff alleges that he was verbally harassed by a "Caucasian kid in his mid-twenties" at the cashier area of the store, and then later, after leaving his shift for the night, by other unidentified individuals outside of the store. (*See id.* at ¶¶ 28-32).

After that night, plaintiff informed his parole officer that "he was not going to go back to Wendy's because he did not feel welcomed." (Compl. at ¶ 33). Plaintiff alleges that he made "a couple more stops to Wendy's after that[,] but never got into any physical altercation ... nor did [he] approach the defendants." (*Id.*). Plaintiff states that he went "simply to see if he could get the license plate of the people that had harassed him that night so that he could get a potential identification and or [sic] confirmation of the potential threat[.]" (*Id.* at ¶ 33).

Plaintiff then states that, on November 15, 2023, he went to Wendy's again "to inform the defendants that he was either going to commence with filing criminal charges against them and or [sic] file a lawsuit for the unjustifiable slander of his character." (Compl. at ¶ 33). Plaintiff thereafter alleges that he was "wrongfully arrested" that night. (*Id.* at ¶ 34). Although plaintiff generally refers to the "transactions" that occurred that night leading to his arrest, he conveniently fails to provide any detail surrounding the circumstances. According to contemporaneously published news articles, [2] Cicero Police responded to Wendy's that evening for a report of an ex-employee threatening to kill employees. [3] The articles further report that police were advised that the ex-employee displayed a handgun and made multiple threats to kill people before leaving the scene.

2024 WL 4751552

2    The Court may take judicial notice "of news articles discussing the conduct raised in the complaint[.]" *Stewart v. Loring Ests. LLC*, No. 18-CV-2283, 2020 WL 3002363, at \*9 (E.D.N.Y. Feb. 26, 2020), *report recommendation adopted,* 2020 WL 1231783 (E.D.N.Y. Mar. 13, 2020) (quoting *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 397 (S.D.N.Y. 2011)). It should be emphasized that the court does not accept the articles as evidence of the truth of the matters therein asserted.

3    *See https://cnycentral.com/news/local/paroled-ex-employee-arrested-after-threatening-wendys-staff-in-cicero* (last visited Nov. 4, 2024); https://cnycentral.com/news/local/paroled-ex-employee-arrested-after-threatening-wendys-staff-in-cicero (last visited Nov. 4, 2024); https://www.localsyr.com/news/local-news/ex-employee-shows-up-at-cicero-wendys-threatens-to-kill-current-employees/ (last visited Nov. 4, 2024).

**\*3** The remainder of plaintiff's complaint alleges the culpable behavior of the various defendants to the extent they are alleged to have violated his constitutional rights with respect to the October 29th and November 15th incidents. Specifically, plaintiff asserts that defendants Aaron M. Wilson, Jr., Kari Wheeler, Chris Gordon, and Santina Rivera lied and/or perjured themselves in the course of providing statements to, and otherwise assisting the responding law enforcement officers, during the investigation leading to plaintiff's arrest on November 15th. (*See* Compl. at ¶¶ 34-40).

Plaintiff further alleges the violation of his constitutional rights by the various law enforcement officers involved in the November 15th arrest and subsequent prosecution, including defendant Police Officers Ernes Merdanovic, Kyle Harrington, and John Baldini, as well as Sergeants ("Sgt.") Snell and Thomas Leo. For the sake of brevity, the court addresses the differing allegations against these officers in more detail in the analysis section.

Plaintiff next alleges that his defense attorney, defendant Susan C. Carey, "wrongfully deprived plaintiff of his ... right to testify at the grand jury[,]" "wrongfully failed to adequately communicate with the plaintiff[,]" and "failed to inform the plaintiff about relevant matters pertaining to his criminal case and of every stage of his criminal proceeding." (Compl. at ¶¶ 47-48).

Plaintiff states that defendant Michael Wright, a "parole revocation specialist," "wrongfully [brought] up new parole violation charges against the plaintiff on the same day as the plaintiff's schedule[d] final parole revocation hearing ... depriv[ing] the plaintiff of the opportunity to adequate[ly] prepare a defense against the [other] allegations brought up against him[.]" (Compl. at ¶ 50). Plaintiff further alleges that Michael Wright "wrongfully allow[ed] ... defendant Aaron M. Wilson Junior to view photographic evidence of the firearm recovered by [defendant P.O. Harrington ...]"; was "more wrongfully worried about convicting the plaintiff th[a]n he was to upholding justice ..."; "wrongfully attempted to influence plaintiff's attorney ... to coerce the plaintiff into accepting one of the maliciously framed offer[s] given by the board of parole ..."; and "knew that the administrative law judge was being extremely bias[ed] and failed to uphold justice by bringing cure to the prejudicial injuries being suffered by the plaintiff." (*Id.* at ¶¶ 51-54).

Finally, plaintiff alleges that defendant Tamara Danner, a firearm examiner, "violated his right to ... due process by way of forgery when the defendant wrongfully certified ... [and] presented falsified documentations which made it appear as if the firearm was indeed operable ... which ... was perjury[.]" (Compl. at ¶ 56).

## III. Private Party Defendants

### A. 42 U.S.C. § 1983 Claims

Plaintiff's § 1983[4] claims against defendants Wilson, Rivera, Wheeler, Murphy, Gordon, Rivera Jr., and Roe should be dismissed. To state a claim under Section 1983, a litigant must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). To state a claim for a Section 1983 conspiracy involving a private party, "a plaintiff must allege '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional

injury; and (3) an overt act done in furtherance of that goal causing damages.' " *Knopf v. Esposito*, 803 F. App'x 448, 452–53 (2d Cir. 2020) (quoting *Ciambriello*, 292 F.3d 307, 324–25 (2d Cir. 2002)). A private actor also acts under the color of state law "when the private actor is a willful participant in joint activity with the State or its agents." *Betts v. SHearman*, 751 F.3d 78, 84 (2d Cir. 2014) (internal quotation marks and citation omitted).

4      The Court recognizes that a defamation claim can be brought as a civil rights violation pursuant to 42 U.S.C. § 1983 "when a plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.' " *Gerrard v. Burns*, No. 7:14-CV-1235 (DNH), 2015 WL 1534416, at *3 (N.D.N.Y. April 6, 2015). "The action is one for violation of a liberty or property interest protected by due process. *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). Thus, to the extent plaintiff asserts a cause of action for defamation under the First Amendment (*See* Compl. at p. 16-17), which is typically raised as a defense in such a claim, it does not provide a basis for any § 1983 claim as pled.

**\*4** A complaint that contains "only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights [is] properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (internal quotation marks omitted); *see also Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 381–82 (E.D.N.Y. 2021) ("[T]he complaint must allege facts that plausibly suggest a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."). And while "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks and citation omitted), the plaintiff is still required to allege facts beyond "conclusory, vague, or general allegations" to state a claim "that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights," *Ciambriello*, 292 F.3d at 325.

Here, plaintiff fails to allege any facts demonstrating that the private defendants acted in concert with or conspired with the law enforcement officers affecting his arrest. Liberally construed, plaintiff alleges that these private defendants were responsible for harassing him at his place of work, and reporting false information to the police about the events that occurred on November 15 [th] . A party's calling or summoning police officers does not constitute joint action with the officers that is actionable under § 1983. *See Rodriguez v. Winski*, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) (finding that a private party "summoning police or requesting that police take action ... simply does not suffice to constitute joint action or to convert the private party into a state actor"); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (private party's "provision of background information to a police officer does not by itself make [the private party] a joint participant in state action under Section 1983"). This is the case even if the private defendants' reports to the law enforcement officers were, in fact, false. *See Rodriguez*, 973 F. Supp. at 422 ("[E]ven assuming that [defendant] had deliberately provided false information to police, such provision alone is not sufficient" to make him a state actor.); *Vazquez v. Combs*, No. 04-Civ-4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.").

To the extent that plaintiff alleges defendant Wilson Jr. provided false testimony at plaintiff's final parole revocation hearing and during grand jury proceedings, this claim fails on multiple bases. First, an allegation that a private individual gave false testimony in a judicial proceeding, without more, does not plausibly allege that the individual was acting under color of state law. *See Briscoe,* 460 U.S. at 329–30 ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.' "); *Gordon v. City of New York,* No. 10–CV–5148, 2012 WL 1068023, at *12 (E.D.N.Y. Mar. 29, 2012) (dismissing Section 1983 claim based on private individual's allegedly false grand jury testimony); *see also Flores v.* Levy, No. 07–CV–3753, 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) ("[T]he fact that [the private actor] ... perjured herself as a witness at ... trial does not transform her into a state actor."). Moreover, a witness in a judicial proceeding is entitled to absolute immunity against claims for damages arising out of his or her testimony. *See Briscoe,* 460 U.S. at 334 ("At least with respect to private witnesses, it is clear that § 1983 did not abrogate the absolute immunity existing at common law."); *see also San Filippo v. U.S. Trust Co. of N.Y., Inc.,* 737 F.2d 246, 254 (2d Cir. 1984) (extending *Briscoe's* holding to grand jury testimony); *accord* Gordon, 2012 WL 1068023, at *12.

**\*5** Accordingly, plaintiff's § 1983 claims against these private defendants should be dismissed for failure to state a claim and/or immunity from suit.

### B. State Law Claims [5]

[5] This court is recommending that certain of plaintiff's federal claims survive *sua sponte* review. (*See, infra*, p. 30). District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a) (2000). Accordingly, the court will analyze those state law claims raised by plaintiff in his complaint, to the extent that the district court accepts my recommendation and recognizes supplemental jurisdiction.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Hogan v. Herald Co.*, 84 A.D.2d 470, 474 (4th Dep't 1982), *aff'd* 58 N.Y.2d 630 (N.Y. 1982). "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001).

"Under New York law a [libel] defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). In addition, "[u]nder New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege." *Ryle v. Rehrig Pac. Co.*, 19-CV-1478, 2020 WL 6196144, at \*8 (N.D.N.Y. Oct. 22, 2020) (citing *Albert*, 239 F.3d at 265-66). Slander per se includes "statements (i) charging plaintiff with a serious crime; [and] (ii) that tend to injure another in his or her trade, business or profession." *Whelan v. Cuomo*, 220 A.D.3d 979, 981 (2d Dep't 2023) (quoting *Liberman v. Gelstein,* 80 N.Y.2d 429, 435 (1992)).

Plaintiff's claim for libel against defendant Aaron M. Wilson Jr. for the testimony he gave at plaintiff's criminal proceedings (*see* Compl. at ¶¶ 61-63) should be dismissed for failure to state a claim. Moreover, under New York law, "[i]t is well-settled that statements made in the course of litigation are entitled to absolute privilege." *TRB Acquisitions LLC v. Yedid*, 215 A.D.3d 40, 43 (1st Dep't 2023) (quoting *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015)).

Plaintiff further asserts a claim for slander per se against defendants Santina Rivera, Aaron M. Wilson Jr., and Luis Rivera Jr. for referring to plaintiff as a sex offender and a pedophile. (*See* Compl. at ¶¶ 14, 16, 57-58). These allegations further fail to state a claim. To the extent plaintiff alleges that these statements were made in conversations between him and the defendants (*see, e.g.,* Compl. at ¶ 14), such allegations do not amount to slander because they were not published to a third party. *See McCollum v. Baldwin*, 688 F. Supp. 3d 117, 128 (S.D.N.Y. 2023) ("Plaintiffs' defamation claims that are based on [the defendant's] private communications with [the plaintiff] ... are not actionable."). Moreover, it was not slander per se for defendant Wilson to "report" to defendant P.O. Merdanovic that plaintiff "was under the assumption that people were slandering his character[.]" (*See* Compl. at ¶ 58). Otherwise, as alleged plaintiff's allegations do not plausibly allege claims for defamation under New York Law.

**\*6** Accordingly, plaintiff's state law defamation claims should be dismissed for failure to state a claim.

### IV. Law Enforcement Defendants

Plaintiff explicitly declares in his complaint that he is not seeking to base his § 1983 claims against the defendant law enforcement officers on a cause of action for false arrest, but is "asserting that the cruel and unusual punishment being wrongfully inflicted upon the plaintiff ... are a violation of plaintiff's due process rights[.]" (Compl. at ¶¶ 75-79, 93). He also asserts claims of perjury, falsifying reports and obstructing justice against these defendants. (*Id.* at ¶¶ 64-68).

At the outset, the court notes that plaintiff's claims arising under the Eighth Amendment right to be free from cruel and unusual punishment should be dismissed. As a parolee at the time of his arrest, any claims plaintiff raised to this effect would be "appropriately analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment." *Porath v. City of New York*, No. 22-CIV-1302, 2023 WL 9197680, at *5 n. 3 (S.D.N.Y. Dec. 21, 2023), *report and recommendation adopted*, 2024 WL 127025 (S.D.N.Y. Jan. 11, 2024) (quoting *Stovall v. Wilkins*, No. 15 Civ. 2163, 2016 WL 5478509, at *3 (S.D.N.Y. Sept. 29, 2016)).

Moreover, plaintiff's claims against the defendant law enforcement officers as they relate to the revocation of his parole may not proceed. "An individual convicted of a crime may not bring a section 1983 suit for damages that 'necessarily impl[ies] the invalidity of his conviction or sentence ... unless [he] can demonstrate that the conviction or sentence has already been invalidated.' " *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 454 (E.D.N.Y. 2018) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)) (additional citations omitted). "*Heck's* limitation of section 1983 claims has come to be known as the 'favorable-termination' rule and applies to revocations of parole." *Opperisano*, 286 F. Supp. 3d at 454 (citing*, inter alia, Lee v. Donnaruma*, 63 Fed. App'x 39, 41 (2d Cir. 2003) ("Courts have applied *Heck* to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside.")). "A parolee challenging a parole revocation must therefore demonstrate that his parole revocation has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Id.* at 455 (quoting *Heck*, 512 U.S. at 486-87) (additional citations omitted).

In this case, plaintiff has alleged that as a result of the defendants' conduct, he was sentenced to the "maximum amount of imprisonment (two years)" for violating his parole. (Compl. at ¶ 42). The complaint does not allege that the determination at his parole revocation hearing has since been invalidated. Accordingly, plaintiff's claims related to the violation of probation proceedings are barred by *Heck* and should be dismissed. [6] *See, e.g., Robinson v. Wright*, No. 5:21-CV-1098, 2023 WL 6122882, at *2 (N.D.N.Y. Sept. 19, 2023) (dismissing plaintiff's Fourteenth Amendment due process claims concerning perjured testimony and material omissions during parole revocation hearing as barred by *Heck*); *Harris v. New York Div. of Parole*, No. 9:18-CV-1435(LEK/TWD), 2019 WL 1958017, at *4 (N.D.N.Y. May 1, 2019) ("Since success on Plaintiff's malicious prosecution and due process claims require him to prove the invalidity of his parole revocation, *Heck* bars those claims unless state authorities reversed the revocation.") (citation omitted).

[6]     Specifically, this includes plaintiff's claims that defendants P.O. Merdanovic and P.O. Harrington provided false testimony at his parole revocation hearing. (Compl. at ¶ 41).

 **\*7**  To the extent plaintiff's allegations may be construed to raise malicious prosecution claims against the law enforcement defendants, such claims should be dismissed. Claims for malicious prosecution require the plaintiff to show a favorable termination of the underlying criminal case against him. *See Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) ("[A] Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him."). Plaintiff affirmatively alleges in his complaint that he is a "pretrial detainee of [his] new pending case." (Compl. at p. 1). As plaintiff's criminal proceeding is allegedly ongoing, he necessarily cannot allege that it terminated in his favor. *See Sabino v. Port Auth. Police Dep't*, No. 21-CV-5731, 2021 WL 3914092, at *2 (S.D.N.Y. Sept. 1, 2021) (citing *Bayan v. Sikorski*, No. 17-CV-4942, 2021 WL 1163653, at *5 (S.D.N.Y. Mar. 26, 2021) ("Because 'favorable termination is an element of a malicious prosecution claim, a plaintiff cannot state a claim if the relevant criminal proceeding is pending.' ")).

A Section 1983 "fair trial" claim is a claim for civil damages for violations of a criminal defendant's due process rights. *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (quoting *Cone v. Bell*, 556 U.S. 449, 451 (2009)) ("The right to a fair trial [is] guaranteed to state criminal defendants by the ... Due Process Clauses [of the Fifth and Fourteenth Amendments, defined] ... largely through [ ]several provisions of the Sixth Amendment.") (citations and quotation marks omitted). A § 1983 claim for a violation of the right to a fair trial lies, *inter alia,* where a police officer "creates false information likely to influence a jury's

decision and forwards that information to prosecutors." *Ricciuti,* 124 F.3d at 130. Such a fair trial claim can be sustained "even if the officer had probable cause to arrest in the first place." *Abreu v. City of New York,* 04 CV 1721, 2006 WL 401651, at *6 (E.D.N.Y. Feb. 22, 2006) (citing *Jocks v. Tavernier,* 316 F.3d 128, 138 (2d Cir. 2007)). A fair trial claim can also arise where police or prosecutors "withhold evidence that is 'material' to a criminal defendant's guilt or punishment." *McCaffrey,* 2013 WL 494025, at *10 (citing *Brady v. Maryland,* 373 U.S. 83, 87 (1963)). "A plaintiff need not have proceeded to a full trial on the merits in order to have an actionable section 1983 claim based on the denial of a fair trial." *Marom v. City of New York,* No. 15-CV-2017, 2016 WL 916424, at *9 (S.D.N.Y. Mar. 7, 2016) (citing *Ricciuti,* 124 F.3d at 127). To the extent plaintiff has raised allegations sounding in the violation of his right to a fair trial, the court will address each defendant in turn.

### A. P.O. Ernes Merdanovic

Plaintiff alleges that defendant P.O. Merdanovic "knew or should have known" that defendant Wilson Jr. was lying about the events that occurred on November 15th, but nevertheless "wrongfully filed the felony complaint which was later used as the accusatory instrument brought up against plaintiff." (Compl. at ¶ 35). However, plaintiff fails to plausibly allege what false information defendant Wilson Jr. provided to defendant P.O. Merdanovic that was ultimately put in his report, much less facts reasonably asserting how defendant P.O. Merdanovic should have known that said information was false. A claim asserting deprivation of a right to a fair trial cannot survive based only on broad and conclusory allegations that the officers created false narratives. *Marom,* 2016 WL 916424, at *9 (citing *Abdul-Rahman v. City of New York,* 10-CV-2778, 2012 WL 1077762, at *12 (E.D.N.Y. Mar. 30, 2012)). To this end, cursory pleadings are not sufficient to plausibly allege a claim for denial of the to a fair trial. *See, e.g., Hutchins v. Solomon,* No. 16-CV-10029, 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018) ("Conclusory statements that officers fabricated evidence do not suffice to state a claim for the denial of a fair trial."); *Longo v. Ortiz,* No. 15-CV-7716, 2016 WL 5376212, at *6 (S.D.N.Y. Sept. 26, 2016) (holding that the plaintiff failed to state denial of fair trial claim where he alleged "he was denied the right to a fair trial ... when the defendants fabricated evidence, gave false testimony, and made false extrajudicial statements ... to be used against [the plaintiff] at trial ...."); *Marom,* 2016 WL 916424, at *9 (explaining that plaintiff did not plausibly allege a deprivation of fair trial claim because he failed to assert how, in what way, or to what effect, the defendants specifically falsified information).

**\*8** Plaintiff further alleges that body camera video footage recordings show defendant P.O. Merdanovic "maliciously whispering something to defendant Chris Gordon in an attempt to let the defendant know that his body camera was on and recording their conversation while [P.O. Merdanovic] continued to commit unprofessional police misconducts and acts .... Defendant [P.O. Merdanovic] is also captured telling [P.O.] Boyland [7] to write a report claiming to have found the gun, which the officer refused to do." (*Id.* at ¶ 37). Neither of these allegations plausibly amount to violations of constitutional proportion. In particular, to the extent P.O. Merdanovic directed another officer to write a report (of a presumably false nature), plaintiff asserts that P.O. Boyland ultimately did not write said report. Thus, he cannot satisfy the elements of a claim for the deprivation of the right to a fair trial.

[7]    P.O. Boyland is not a named defendant in this action.

Plaintiff further alleges that defendant P.O. Merdanovic "lied in his report by asserting that [P.O.] Boyland saw the plaintiff throwing a bag even though video footage from the body worn cameras actually reveal that [P.O.] Boyland ... never saw plaintiff in possession of the bag but rather ... found a bag laying on the ground which the officer assumes that plaintiff abandoned during the pursuit." (Compl. at ¶ 38). Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008), the court recommends that plaintiff's fair trial claim against defendant P.O. Merdanovic concerning the false report indicating that plaintiff was observed throwing a bag survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Plaintiff further asserts that defendant P.O. Merdanovic "wrongfully tamper[ed] with the firearm recovered on November 15[th] [,]" to the extent he apparently attempted to "unjam," or otherwise render safe, the firearm upon taking it into custody. (*Id.*

at ¶¶ 40, 44). Nothing in these allegations against this defendant gives rise to a claim of constitutional proportion, or suggests misconduct on the part of P.O. Merdanovic.

### B. P.O. Kyle Harrington

Plaintiff alleges that defendant P.O. Harrington "knew or should have known" that defendant Santina Rivera lied in her report concerning the events surrounding plaintiff's arrest. (Compl. at ¶ 39). Plaintiff further alleges that defendant P.O. Harrington "wrongfully tamper[ed] with the firearm recovered on November 15th, to the extent he apparently removed the firearm from defendant P.O. Baldini's vehicle, took photographs of the firearm, and then attempted to "unjam" the firearm. (*Id.* at ¶¶ 40, 44). For the reasons previously set forth, plaintiff does not plausibly state a fair trial claim based on his conclusory allegation that defendant P.O. Harrington "knew or should have known" that defendant Santina Rivera was lying. Nor do plaintiff's contentions surrounding P.O. Harrington's "tampering" with the firearm plausibly state a claim.

Plaintiff further alleges that defendant P.O. Harrington provided "testimony that was wrongfully used to indict the defendant" at his grand jury proceedings, as well as "perjury testimony" at a suppression hearing. (Compl. at ¶ 42). Specifically, plaintiff alleges that defendant P.O. Harrington falsely testified that "he could actually see what the plaintiff was wearing when the plaintiff was walking to his home" on the night of November 15th based on information that was provided to him and because of the photographs captured from the Wendy's surveillance cameras. (*Id.*). Plaintiff asserts that this was perjury because "neither the photograph nor the report that was relayed to [defendant P.O. Harrington] mentioned the facts which the defendant asserted[.]" (*Id.*). Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the court recommends that plaintiff's fair trial claim against defendant P.O. Harrington concerning his perjured testimony at the suppression hearing survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### C. P.O. John Baldini

**\*9** Plaintiff alleges that defendant P.O. Baldini "wrongfully allowed [defendant P.O. Harrington] to remove the firearm from his vehicle and then allowed for [defendant P.O. Harrington] to first take photographs of the firearm and then ... attempt[ ] to 'unjam' the firearm[.]" (Compl. at ¶ 44). Plaintiff alleges that defendant P.O. Harrington then "pass[ed] the firearm to [defendant P.O. Merdanovic who] was also unsuccessful in unjamming the firearm." (*Id.*). Plaintiff alleges that defendant P.O. Baldini was then "finally able to regain re-control of the firearm and thus the police report field by [defendant P.O. Baldini] must be deemed as forgery." (*Id.*). For the reasons previously set forth, Plaintiff's allegations surrounding the handling of the firearm do not plausibly state a claim under § 1983.

### D. Sgt. Snell

Plaintiff alleges that defendant Sgt. Snell "wrongfully [went] into the storage locker area designated by the Cicero Police Department inorder [sic] to allegedly 'unjam' the firearm before then reporting that [defendant P.O. Harrington] ... properly stored the firearm into the evidence store unit section of the police locker room." (Compl. at ¶ 45). For the reasons previously set forth, Plaintiff's allegations surrounding the handling of the firearm do not plausibly state a claim under § 1983.

### E. Sgt. Thomas Leo

Plaintiff alleges that defendant Sgt. Leo "wrongfully allowed for the Cicero Police Officers (and the herein named defendants) to commit unprofessional actions in violation of the rules and regulations setforth [sic] by the Superintendent of the New York State Police and subsequently allowed for the officer to forge reports which he endorsed." (Compl. at ¶ 46). Plaintiff alleges that these reports were the "essential accusatory instrument used in wrongfully prosecuting plaintiff[.]" (*Id.*).

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir 1994) (quoting *Moffitt v. Town of Brookfield*,

2024 WL 4751552

950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a [supervisory] official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618. The Second Circuit explained that, " 'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

**\*10**  Here, to the extent plaintiff seeks to impose liability on Sgt. Leo by virtue of his supervisory role alone, such a claim cannot withstand review. To the extent plaintiff asserts that Sgt. Leo was personally involved in violating his constitutional rights, the allegations as plead do not meet the minimal pleading requirements of Federal Rule of Civil Procedure 8. The purpose of Rule 8 is to give adequate notice regarding the nature of the claim being asserted so that the defendant can prepare an adequate defense. *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995). The allegations here do not provide that notice, to the extent that plaintiff has not alleged what forged and/or false reports, authored by whom, defendant Sgt. Leo is alleged to have "endorsed." Nor is it clear in what way defendant Sgt. Leo "endorsed" the forged reports, i.e. if this consisted of conduct, acts, or omissions beyond his general supervisory role. Accordingly, plaintiff's claims against Sgt. Leo should be dismissed for failure to state a claim.

## V. Defense Counsel Susan Carey

Plaintiff may not proceed with a § 1983 action against defendant attorney Susan Carey. The law is well established that attorneys, whether privately-retained or court-appointed, do not act under color of state law when they perform traditional functions of counsel. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *D'Amato v. Rattoballi*, 83 F. App'x 359, 360 (2d Cir. 2003) ("The district court properly concluded that [the plaintiff's] section 1983 claims against [the defendant] should be dismissed on the ground that [the defendant], a privately retained attorney, was not acting under the color of state law." (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))); *McCloud v. Jackson,* 4 F. App'x 7, 9-10 (2d Cir. 2001) ("To the extent that [the defense attorney] may have served as privately-retained counsel, rather than as a court-appointed attorney, he still could not be held liable under § 1983 because there was no showing that he worked with state officials to deprive [plaintiff] of federal rights."); *Harrison v. New York*, No. 14-CV-1296, 2015 WL 1413359, at *24 (E.D.N.Y. Mar. 20, 2015) ("[I]t is well-settled that private attorneys and law firms ... do not act under color of state law." (citing cases)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) (holding that neither "public defenders ... nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position"). Because plaintiff alleges that defendant Carey was his defense attorney, he fails to state a claim under § 1983.

Liberally construed, plaintiff also appears to be attempting to commence a state law claim for legal malpractice against defendant Carey. As previously set forth, the district court may exercise supplemental jurisdiction over plaintiff's legal malpractice claim, to the extent it accepts my recommendation that some of plaintiff's federal claims survive initial review. "The elements of a claim of legal malpractice under New York law are: (1) an attorney-client relationship at the time of the alleged malpractice; (2) attorney negligence; (3) proximate causation and (4) actual damage to the client." *Bryant v. Silverman*, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018) (citing *Kirk v. Heppt*, 532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008)); *see also O'Callaghan v. Brunelle*, 84 A.D.3d 581, 582 (1st Dep't 2011); *Parola, Gross & Marino, P.C. v. Susskind*, 43 A.D.3d 1020, 1022 (2d Dep't 2007). An attorney is negligent if he or she fails to exercise that degree of care, skill and diligence commonly possessed and exercised by ordinary members of the legal community. *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007). Mindful of the requirement to liberally construe pro se pleadings, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the court recommends that plaintiff's New York State legal malpractice claim against defendant Carey survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

## VI. D.A. William Fitzpatrick

 **11** Plaintiff has alleged various § 1983 claims against defendant William Fitzpatrick, the District Attorney of Onondaga County. The only meaningful reference to defendant D.A. Fitzpatrick in the complaint is plaintiff's allegation that "employees working under the jurisdiction of Defendant William Fitzpatrick wrongfully allowed for" various errors to be made during plaintiff's criminal proceedings (*see* Compl. at ¶ 47). To the extent plaintiff asserts liability against this defendant in his supervisory capacity, and in the absence of factual allegations sufficient to plausibly allege that defendant D.A. Fitzpatrick was personally involved in any conduct that violated plaintiff's constitutional rights, the complaint fails to state a claim against this defendant. *See O'Dell v. Bill*, No. 13-CV-1275, 2015 WL 710544, at *4 (N.D.N.Y. Feb. 18, 2015) ("[S]upervisory officials may not be held liable merely because they held positions of authority.").

Moreover, even if plaintiff had plausibly alleged that defendant D.A. Fitzpatrick was personally involved in plaintiff's criminal prosecution, it is well-settled that "[p]rosecutors sued under § 1983 enjoy absolute immunity 'from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process.' " *Joyner v. Cty. of Cayuga*, No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (quoting, *inter alia, Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

Accordingly, the district court should dismiss plaintiff's claims against defendant D.A. Fitzpatrick.

## VII. Tamara Danner

Plaintiff's allegations do not plausibly state a cause of action against defendant Danner, to the extent she certified that the firearm was "operable." (Compl. at ¶ 56). Plaintiff's own opinion that the firearm was not "operable" because it was "jammed" does not suffice to establish that defendant Danner falsified evidence pertaining to his criminal prosecution, or that her opinion to the contrary could not be reasonably supported. *See, e.g., People v. Yarborough,* 158 A.D.3d 430, 431 (1st Dep't 2018) ("The

evidence also supports the conclusion that the pistol was operable, notwithstanding that it had jammed"). Plaintiff otherwise provides no allegations, other than his own suppositions, that defendant Danner's representation was false and/or "forgery."

## VIII. Michael Wright

Plaintiff fails to state a cause of action against defendant parole revocation specialist Michael Wright. As previously set forth, plaintiff's Fourteenth Amendment due process claims concerning the evidence and conduct at his parole revocation hearing are barred by *Heck*. Thus, because plaintiff's contentions that defendant Wright "wrongfully asked question to his witness in a manner that a competent person ... would deem as of leading witness inorder [sic] to get a guilty favorable outcome, and ... attempted to prevent the plaintiff from raising adequate points and bringing forth sufficient evidence" imply the invalidity of his parole revocation determination, his claims against defendant Wright are barred and must be dismissed. (Compl. at ¶ 80) *See Robinson v. Wright*, No. 5:21-CV-1098, 2023 WL 6122882, at *2 (N.D.N.Y. Sept. 19, 2023).

## IX. Injunctive and Declaratory Relief

**\*12** In addition to monetary relief, plaintiff seeks declaratory and injunctive relief pertaining to issues surrounding the continuing criminal prosecution against him in state court. (Compl. at ¶¶ 86-88, 91, 92). Plaintiff also asks this court to "render an injunction" directing defendant D.A. Fitzpatrick to commence a criminal investigation of the individuals "wrongfully slandering his character." (*Id.* at ¶ 89). Last, plaintiff seeks an injunction directing a criminal investigation of the conditions of confinement "of the plaintiff in the special housing unit." (*Id.* at ¶ 90).

In *Younger v. Harris*, 401 U.S. 37, 45 (1971), the Supreme Court endorsed "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). "[B]efore invoking *Younger*[,] a federal court may [also] appropriately consider ... [w]hether there is (1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (alterations, citation, and internal quotation marks omitted). "The *Younger* doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief; the Supreme Court held in a companion case to *Younger* that *Younger*'s policy would 'be frustrated as much by a declaratory judgment as it would be by an injunction.' " *Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000) (quoting Samuels v. Mackell, 401 U.S. 66, 73 (1971)). Here, insofar as plaintiff seeks the aforementioned declaratory and/or injunctive relief, the court abstains from intervening in the ongoing state criminal prosecution pursuant to *Younger. See, e.g.*, *Player v. Sini*, No. 21-CV-5613, 2021 WL 5084172, at *2 (E.D.N.Y. Nov. 1, 2021) (abstaining from adjudicating constitutional claims seeking injunctive relief regarding plaintiff's pending criminal case); *London v. Nassau County Dist. Attorney's Off.*, No. 20-CV-3988, 2020 WL 7699644, at *9 (E.D.N.Y. Dec. 28, 2020) (same).

Furthermore, this court does not have the authority to commence its own investigation, commence a criminal prosecution, compel a law enforcement agency to investigate suspected criminal activity, nor compel a prosecutor to prosecute. Prosecutors possess discretionary authority to bring criminal actions, and they are "immune for control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Further, plaintiff does not have standing to compel any law enforcement agency to investigate or prosecute any suspected criminal acts as there is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 1:20-CV-1337 (TJM/CFH), 2021 WL 3518439 (N.D.N.Y. Apr. 13, 2021) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."); *McFadden v. Ortiz*, 5:12-CV-1244 (MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013).

## X. Other Claims

On November 6, 2024, almost a month after plaintiff filed his complaint, plaintiff filed a letter with the court submitting approximately forty pages of "supportive legal documentation" for annexation in connection to this case. (*See* Dkt. No. 9). In

his letter, plaintiff complains, generally, of the conditions of confinement at the Onondaga County Justice Center ("OCJC"), where he is currently being detained. (*See id.*). Plaintiff also indicates that he intends to file a future § 1983 lawsuit in connection with these complaints. (*Id.* at 2). Plaintiff's letter does not identify any named defendants nor otherwise conform to the pleading requirements of a complaint. Moreover, the exhibits attached to plaintiff's most recent submission have no relevance to the allegations raised in plaintiff's complaint. Accordingly, and in light of plaintiff's representation, the court does not construe plaintiff's letter as a request to supplement his complaint in *this* action with any claims in connection with his confinement at OCJC. To this end, plaintiff's request to annex the forty pages of exhibits attached to his most recent submission to the complaint in this action should be denied. (*See* Dkt. No. 9-1).

**\*13**  To the extent plaintiff seeks "for criminal charges to be prosecuted" against unnamed deputies at the OCJC in his most recent letter, (*see* Dkt. No. 9 at 3), the district court should deny this request for the reasons stated above.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [8] and it is further

[8]   The court notes that although plaintiff's IFP application has been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

**RECOMMENDED**, that the following claims **SURVIVE** *sua sponte* review: Plaintiff's (1) Fourteenth Amendment denial of the right to a fair trial claim against defendant P.O. Merdanovic relative to his allegedly false report that another officer observed plaintiff "throwing a bag," (2) Fourteenth Amendment denial of the right to a fair trial claim against defendant P.O. Harrington relative to the alleged false testimony he provided at the (a) grand jury proceedings on January 11, 2024, and (b) suppression hearing on June 28, 2024, and (3) legal malpractice claim under New York State law against defendant Susan Carey; and it is further

**RECOMMENDED**, that the following claims be **DISMISSED with prejudice:** [9]  Plaintiff's (1) Eighth Amendment claims for cruel and unusual punishment, (2) § 1983 claim against defendant D.A. William Fitzpatrick based on his prosecutorial immunity, and (3) claims for injunctive and/or declaratory relief; and it is further

[9]   Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).

**RECOMMENDED**, that all remaining claims be **DISMISSED without prejudice** [10]  pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted; and it is further

[10]   Should Plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original Complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which Plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**RECOMMENDED**, that plaintiff's request to attach the forty pages of exhibits at Dkt. No. 9-1 to the complaint in this action (Dkt. No. 1) be **DENIED**, and it is further

2024 WL 4751552

**ORDERED, that plaintiff must <u>wait until the District Court rules on this Order and Report-Recommendation before he files any proposed amended complaint</u>**, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail. [11]

---

[11]    The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*14**    Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2024 WL 4751552

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4969972
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Saio BARZEE, Plaintiff,

v.

Aaron M. WILSON, Jr., et al., Defendants.

5:24-CV-1237
|
Signed December 4, 2024

**Attorneys and Law Firms**

SAIO BARZEE, Plaintiff, Pro Se, 11001866, Onondaga County Justice Center, 555 South State Street, Syracuse, NY 13202.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

**\*1** On October 9, 2024, *pro se* plaintiff Saio Barzee ("plaintiff") filed this civil action alleging that defendants violated his rights in a series of incidents that ultimately led to his arrest and criminal prosecution in state court. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 6, 7.

On November 12, 2024, U.S. Magistrate Judge Mitchell J. Katz granted plaintiff's IFP Application and, following an initial review of the complaint, advised by Report & Recommendation ("R&R") that a few of plaintiff's claims survived initial review but that most were subject to dismissal. Dkt. No. 10.

First, Judge Katz advised that plaintiff's: (1) Eighth Amendment claims; (2) § 1983 claims against defendant Fitzpatrick; and (3) claims for injunctive or declaratory relief should be dismissed with prejudice. Dkt. No. 10.

Second, Judge Katz advised that plaintiff's: (1) Fourteenth Amendment fair-trial claim against defendant P.O. Merdanovic based on his allegedly false report; (2) Fourteenth Amendment fair-trial claim against defendant P.O. Harrington based on his allegedly false testimony in grand jury and at a suppression hearing; and (3) state-law malpractice claim against defendant Susan Carey should survive initial review. Dkt. No. 10.

Third, Judge Katz advised that plaintiff's remaining claims be dismissed without prejudice. Dkt. No. 10. Although Judge Katz explained to plaintiff that he could try to amend these claims if he wanted to, Judge Katz ordered plaintiff to "wait until the District Court rules on this Order and Report-Recommendation before he files any proposed amended complaint." *Id.*

Plaintiff has lodged objections. Dkt. Nos. 14, 15, 16. Very briefly stated, plaintiff argues that the Court should consider certain additional facts and allegations outside the operative pleading. *See id.* That request will be denied. Upon *de novo* review, Judge Katz's R&R is accepted and will be adopted in all respects. *See* 28 U.S.C. § 636.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 10) is ACCEPTED;

2. Plaintiff's letter requesting to attach exhibits (Dkt. No. 9) is DENIED;

3. The following claims SURVIVE initial review and require a response:

    (a) Fourteenth Amendment fair-trial claim against defendant P.O. Merdanovic based on his allegedly false report;

    (b) Fourteenth Amendment fair-trial claim against defendant P.O. Harrington based on his allegedly false testimony in grand jury and at a suppression hearing; and

    (c) state-law malpractice claim against defendant Susan Carey;

4. Plaintiff's: (1) Eighth Amendment claims; (2) § 1983 claims against defendant Fitzpatrick; and (3) claims for injunctive or declaratory relief are DISMISSED with prejudice; and

5. Plaintiff's remaining claims are DISMISSED without prejudice.

The Clerk of the Court is directed to terminate the pending motions and refer this matter to Judge Katz for further action as appropriate, including service as to the surviving claims and defendants and/or a scheduling order regarding possible amendment to the pleading.

**\*2** IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 4969972

---

**End of Document**                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD     Document 10     Filed 02/19/25     Page 67 of 108

Brown v. Budelmann, Not Reported in Fed. Supp. (2023)

2023 WL 4424119

2023 WL 4424119
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence BROWN, Plaintiff,

v.

Jon E. BUDELMANN et al., Defendants.

5:23-cv-00002-MAD-TWD
|
Signed April 17, 2023

**Attorneys and Law Firms**

CLARENCE BROWN, Plaintiff, pro se, 31 Pearl Street, Apartment 106, Lyons, NY 14489.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent the Court a civil rights complaint filed by Clarence Brown ("Plaintiff") pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) Plaintiff has also filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 3.) For the following reasons, the Court grants Plaintiff's IFP application for purposes of initial review and recommends dismissal of the complaint in its entirety and without leave to amend.

## I. IFP APPLICATION

Plaintiff has not paid the filing fee for this action and seeks leave to proceed IFP. (Dkt. No. 3.) After reviewing Plaintiff's application, this Court finds he is financially eligible for IFP status. Therefore, Plaintiff's IFP application is granted for purposes of initial review.

## II. BACKGROUND

Plaintiff initiated this action against Jon E. Budelmann, Jodi A. Danzig, and Christopher Valdina on January 4, 2023. (Dkt. No. 1.) Plaintiff lists the official positions for the Defendants as follows: Jon E. Budelmann as "Chief Assistant"; Jodi A. Danzig as "Attorney General"; and Christopher Valdina as "Assistant." (Dkt. No. 1 at 1-2.)

The Court takes judicial notice that Jon E. Budelmann was an Assistant District Attorney for Cayuga County from 1995 to 2007 and the District Attorney of Cayuga County from 2008 to 2021.[1] He is currently a Cayuga County Surrogate Judge. *Id.* Jodi A. Danzig is an Assistant Attorney General at the New York Attorney General's Office.[2] Christopher Valdina is the Chief Assistant District Attorney for Cayuga County.[3]

[1]  Linkedin, Jon Budelmann, https://www.linkedin.com/in/jon-budelmann-30135a8 (last visited Apr. 14, 2023).

[2]  OPENGOVNY, Jodi Ann Danzig, https://opengovny.com/attorney/2543387 (last visited Apr. 14, 2023); OpenPayrolls, Jodi A Danzig, https://openpayrolls.com/employee/jodi-a-danzig-9593 (last visited Apr. 14, 2023).

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 68 of 108

Brown v. Budelmann, Not Reported in Fed. Supp. (2023)
2023 WL 4424119

3       Cayuga County New York, Staff Directory, https://www.cayugacounty.us/directory.aspx?eid=39 (last visited Apr. 14, 2023.)

Plaintiff was arrested in 2006 for burglary. (Dkt. No. 1 at 2.) At his trial, Plaintiff alleges evidence presented against him was "false" and "[p]hone logs were blacked out." *Id.* Plaintiff further claims the government presented his immigration status incorrectly. *Id.* Allegedly, the government stated at the trial Plaintiff had previously been deported and had re-entered the United States illegally. *Id.* Plaintiff disputes this assertion and claims Homeland Security does not have any record of his alleged illegal re-entry. *Id.* On May 12, 2008, Plaintiff was found guilty of two counts of Burglary in the Second Degree and one count of Promoting Prostitution in the Fourth Degree. (Dkt. No. 1 at 9.)

Additionally, during his trial, Defendants allegedly claimed Plaintiff's establishment, Brown's Bahamian Bar & Rest, did not have the requisite liquor license, making Plaintiff's transactions there illegal. (Dkt. No. 1 at 2, 16.)

Plaintiff lists his first cause of action as "I want my name cleared"; his second cause of action as "I need proof from the [District Attorney's] office of deportation including date and the time along with documentation of where I re-entered illegally"; and his third cause of action as "I believe the [District Attorney] tampered with evidence." (Dkt. No. 1 at 3.) He does not request any specific form of relief from the Court in the prayer for relief section of his complaint. (Dkt. No. 1 at 4.)

## III. SUFFICIENCY OF THE COMPLAINT

### A. Legal Standard

**\*2**  Under Section 1915(e), the Court must dismiss a complaint filed IFP if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).[4] The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest claims that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

4       Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless ... or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 69 of 108

Brown v. Büdelmann, Not Reported in Fed. Supp. (2023)
2023 WL 4424119

to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B. *Heck v. Humphrey* Bars Plaintiff's Section 1983 Claims**

When a claim under Section 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (*Heck*'s bar applies regardless of whether a plaintiff seeks damages or injunctive relief). The petitioner in *Heck* was an inmate with a direct appeal from his conviction pending, who brought a Section 1983 action for damages against state officials who, he claimed, acted unconstitutionally in arresting and prosecuting him. Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that an inmate's Section 1983 claim for damages was unavailable because he could not demonstrate that the underlying criminal proceedings had terminated in his favor. *Heck*, 512 U.S. at 486-87. In *Heck*, the Supreme Court enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid. *Id.*

**\*3** Here, all of Plaintiff's Section 1983 claims arise from Plaintiff's May 2008 prosecution and conviction in Cayuga County. (Dkt. No. 1 at 2, 9.) As is readily apparent, affording the *pro se* complaint a liberal construction, there is no allegation that Plaintiff's conviction has been invalidated. Indeed, Plaintiff asserts Defendants tampered with evidence, presented false evidence at trial, and requests his "name" to be "cleared." (Dkt. No. 1 at 2.) Because Plaintiff's success on his civil rights claims in this action would necessarily invalidate the conviction, which is not alleged to have been reversed or vacated, Plaintiff's Section 1983 claims are not cognizable under *Heck*. Thus, *Heck's* bar precludes their adjudication.[5] *See, e.g., Curtis v. Rockland Cty.*, No. 21-CV-04294, 2022 WL 16540705, at \*5 (S.D.N.Y. Oct. 28, 2022) ("A judgment in Plaintiff's favor on the unlawful search and seizure claim would clearly imply the invalidity of his conviction, and the claim is therefore barred by *Heck v. Humphrey*.").

[5]     "Although '[Section] 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim,' *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013), Plaintiff has the opportunity to seek habeas relief once his constitutional claims are properly exhausted in state court." *Braithwaite v. Collins*, No. 22-CV-0016, 2023 WL 2350030, at \*7 (E.D.N.Y. Mar. 3, 2023).

Moreover, the Second Circuit has made clear that, "when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom." *Stegemann v. Rensselaer County Sheriff's Off.*, No. 20-CV-3316, 2021 WL 5492966, at \*2 (2d Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7). Given that Plaintiff has not alleged any injury other than those related to his conviction, which he asserts resulted from the May 2008 trial, he cannot recover any damages or seek injunctive relief for these injuries unless and until his conviction is overturned. *See, e.g., Curtis v. Rockland Cty.*, 2022 WL 16540705, at \*5. Accordingly, at this juncture, Plaintiff's Section 1983 claims are not plausible, and the Court recommends dismissal of the complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). *See Arrington v. LoTempio*, No. 22-CV-6141, 2023 WL 375098 at \*3-4 (W.D.N.Y. Jan. 24, 2023) (*sua sponte* dismissing plaintiff's illegal search and denial-of-fair-trial claims without prejudice pursuant to *Heck*, including related conspiracy claims, brought pursuant to Section 1983 and *Bivens*).

**C. Prosecutorial Immunity**

Although *Heck* bars Plaintiff's claims seeking to impose Section 1983 liability on Defendants, such claims are not plausible for the additional reason that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).

As noted, Defendants were all prosecutors at the time of Plaintiff's trial. Prosecutors are immune from civil suit for damages in their individual capacities for acts committed within the scope of their official duties where the challenged activities are not

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 70 of 108
Brown v. Budelmann, Not Reported in Fed. Supp. (2023)
2023 WL 4424119

investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it") (internal quotation marks and citation omitted). In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

**\*4** In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Buckley*, 509 U.S. at 273. This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Moye v. City of New York*, No. 11 Civ. 316, 2012 WL 2569085, at \*5 (S.D.N.Y. July 3, 2012) (quoting *Johnson v. City of New York*, No. 00 CIV 3626, 2000 WL 1335865, at \*2 (S.D.N.Y. Sept. 15, 2000)). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981) (citing *Lee v. Willins*, 617 F.2d 320, 321-22 (2d Cir. 1980)), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also see also Verbeek v. Teller*, 158 F. Supp. 2d 267, 282 (E.D.N.Y. 2001) (granting motion to dismiss claims against prosecutorial official because conspiracy allegation does not "negate her entitlement to absolute immunity") (citing *Dory*, 25 F.3d at 83). Therefore, the Court recommends that Plaintiff's Section 1983 claims against Defendants be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(2).

**WHEREFORE**, for these reasons, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 3) is **GRANTED** for purposes of filing and any appeal, unless the trial court certifies in writing that the appeal is not taken in good faith, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1); and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[6]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

2023 WL 4424119

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4424119

---

**End of Document**                                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 72 of 108
Brown v. Budelmann, Not Reported in Fed. Supp. (2023)
2023 WL 4144999

2023 WL 4144999
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence BROWN, Plaintiff,

v.

Jon E. BUDELMANN et al., Defendant.

5:23-CV-00002 (MAD/TWD)
|
Signed June 23, 2023

**Attorneys and Law Firms**

CLARENCE BROWN, 31 Pearl Street, Apartment 106, Lyons, New York 14489, Plaintiff pro se.

## ORDER

Mae A. D'Agostino, United States District Judge:

## I. INTRODUCTION

**\*1** *Pro se* Plaintiff, Clarence Brown, commenced this civil rights action on January 3, 2023, by filing a Complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. On January 5, 2023, after Plaintiff failed to either pay the filing fee or file an *in forma pauperis* ("IFP") application form, the Court issued an order directing administrative closure of the action with opportunity to comply with filing fee requirements. *See* Dkt. No. 2. On January 12, 2023, Plaintiff filed a motion to proceed IFP, and accordingly, the Court reopened the case. *See* Dkt. Nos. 3-4.

In an Order and Report-Recommendation, Magistrate Judge Dancks granted Plaintiff's motion to proceed IFP for purposes of initial review and recommended the Court dismiss the complaint in its entirety without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1). *See* Dkt. No. 6 at 1.

## II. BACKGROUND

In May 2008, Plaintiff was convicted of two counts of Burglary in the Second Degree and one count of Promoting Prostitution in the Fourth Degree. *See* Dkt. No. 1 at 2, 9. In Plaintiff's Complaint, he alleges that at his trial, the government presented false evidence against him, blacked out phone logs, and presented his immigration status incorrectly. *See id.* at 1-2. Specifically, Plaintiff disputes the government's assertion that Plaintiff had been deported and re-entered the United States illegally. *See id.* Plaintiff claims Homeland Security has no record of his alleged illegal re-entry. *See id.* Plaintiff also claims that his establishment does have a liquor license, contrary to Defendants' assertion at trial that transactions at the establishment were illegal because Plaintiff did not have a liquor license. *See id.*

Plaintiff's Complaint lists three causes of action: (1) "I want my name cleared," (2) "I need proof from the [District Attorney's] office of deportation including date and time along with documentation of where I re-entered illegally," and (3) "I believe the [District Attorney] tampered with evidence." *See* Dkt. No. 1 at 3. Plaintiff does not list his requested relief in the relief section of his Complaint. *See id.* at 4.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 73 of 108

Brown v. Budelmann, Not Reported in Fed. Supp. (2023)
2023 WL 4144999

In an Order and Report-Recommendation dated April 17, 2023, Magistrate Judge Dancks granted Plaintiff's motion to proceed IFP for purposes of initial review and recommended the Court dismiss the complaint in its entirety without leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1). *See* Dkt. No. 6. First, Magistrate Judge Dancks determined that Plaintiff's Section 1983 claim is barred because the conviction was not invalidated as required under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See id.* at 5. Magistrate Judge Dancks then found that Plaintiff's claims are also barred by prosecutorial immunity because Defendants at the time of the trial were all prosecutors acting within the scope of their official duties. *See id.* at 7. Neither party objected to Magistrate Judge Dancks's Order and Report-Recommendation.

### III. DISCUSSION

#### A. Standard of Review
When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1).

 **\*2** Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that-- ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

#### B. 42 U.S.C. § 1983
Section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). It " 'is not itself a source of substantive rights[,]' ... [but] merely provides 'a method for vindicating federal rights elsewhere conferred[.]' " *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). A defendant acts under color of state law when he or she "ha[s] exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 59 (1988) (quotation omitted).

When a Section 1983 claim concerns the validity of a conviction, the court must dismiss the claim unless the conviction has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The Supreme Court identified four methods for finding a conviction has been invalidated: (1) the conviction has been reversed on direct appeal, (2) an executive order expunged the conviction, (3) a federal court issued a habeas corpus petition, or (4) an authorized state tribunal declared the conviction invalid. *Id.* If the conviction has not been invalidated, "a plaintiff may only recover for an injury other than the harm caused by the conviction and

2023 WL 4144999

the imprisonment resulting therefrom." *Stegemann v. Rensselaer County Sheriff's Off.*, No. 20-CV-3316, 2021 WL 5492966, *2 (2d. Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7).

As Magistrate Judge Dancks noted in her Order and Report-Recommendation, all of Plaintiff's claims concern his 2008 conviction which has not been invalidated through any of the aforementioned methods. *See* Dkt. No. 6 at 6. Further, Plaintiff has not claimed any injury besides those related to his conviction. *See generally* Dkt. No. 1. Accordingly, the Court finds Magistrate Judge Dancks correctly determined that Plaintiff's complaint must be dismissed for failure to state a claim.

### C. Prosecutorial Immunity

In addition to *Heck*'s bar, "[t]he doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a [Section] 1983 lawsuit...." *Anilao v. Spota*, 27 F.4th 855, 863 (2d Cir. 2022). Prosecutors "enjoy 'absolute immunity from [Section] 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process.' " *Id.* at 864 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). The immunity attaches to the prosecutor's function, not the identity of the actor performing it. *See id.* at 864. " 'Thus, unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity [from Section 1983 liability] exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process.' " *Id.* (quoting *Barr*, 810 F.2d at 361). Immunity extends even to a prosecutor's falsification of evidence and making of false statements in judicial proceedings. *Burns v. Reed*, 500 U.S. 478, 490 (1991).

**\*3** As Magistrate Judge Dancks explained in her Order and Report-Recommendation, Defendants were prosecutors acting within the scope of their official duties. *See* Dkt. No. 6. at 7. Their activities were intimately associated with the judicial phase of the criminal process rather than investigative in nature. *See id.* Therefore, the Court agrees with Magistrate Judge Dancks that Plaintiff's Section 1983 claims must be dismissed.

## IV. CONCLUSION

After carefully reviewing Magistrate Judge Dancks's Order and Report-Recommendation and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Dancks's April 17, 2023 Order and Report-Recommendation (Dkt. No. 6) is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that Plaintiff's motion to appoint counsel (Dkt. No. 7) is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2023 WL 4144999

**Brown v. Budelmann, Not Reported in Fed. Supp. (2023)**

2023 WL 4144999

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 76 of 108

Stegemann v. Rensselaer County Sheriff's Office, Not Reported in Fed. Rptr. (2021)

2021 WL 5492966

2021 WL 5492966
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Joshua G. STEGEMANN, Plaintiff-Cross-Defendant-Appellant,

v.

RENSSELAER COUNTY SHERIFF'S OFFICE, Rensselaer County District Attorney's Office, Jack Mahar, Air National Guard, Richard J. Sloma, Chris Clifford, Warren County Sheriff's Office, Warren County, Nathan H. York, Christopher Perilli, New York State Police, New York State Police, Sort, Dan Kiley, Fulton County Sheriff's Office, Fulton County, Berkshire County Sheriff's Office, Berkshire County, Thomas Bowler, Scott Colbert, Pittsfield Police Department, Michael Wynn, Tyrone Price, John Mazzeo, Glenn F. Decker, Glenn Civello, Massachusetts State Police Department, David Brian Foley, Berkshire County District Attorney's Office, David F. Capeless, Richard Locke, Cellco Partnership, dba Verizon Wireless, AT&T Mobility LLC, Rick Smith, Retired Captain of the Massachusetts State Police, fka The Captain of The Massachusetts State Police, Michael Fynn, Frank Mastan, fka Unknown Members of the Rensselaer County Emergency Response Team, Christopher Fumerola, fka Unknown Members of the Rensselaer County Emergency Response Team, Anthony D'Agostino, fka Unknown Members of the Rensselaer County Emergency Response Team, Justin Loomis, fka Unknown Members of Fulton County Sheriffs Office Canine Team, Wayne Peters, fka Unknown Members of Fulton County Sheriffs Office Canine Team, Defendants-Appellees, [*] Rensselaer County, Patrick Russo, fka Pat Russo, Arthur Hyde, fka Art Hyde, Steve Wohlleber, William Webster, Shane Holcomb, Jason Robelotto, fka J.S. Robelotto, Mark Geracitano, Sandra Blodgett, Justin Walread, Jami Panichi, Investigator, Travas McCarthy, fka Travis McCarthy, William Scott, Dale Gero, Michelle Mason, John Stec, Robert Patterson, fka Todd Patterson, Steve Jones, Berkshire County Drug Task Force, Derek Pyle, fka Captain Pyle, Richard McNally, James Deas, William Roy, Investigator Film, Unknown Members of the Rensselaer County Emergency Response Team, Richard C. Giardino, Kevin Roy, as a member of the Rensselaer County Emergency Response Team, Unknown Members of Fulton County Sheriffs Office Canine Team, Mark Gorman, fka Unknown Members of the Rensselaer County Emergency Response Team, Defendants-Cross-Defendants-Appellees, Subsurface Informational Surveys, Inc., Defendant-Cross-Claimant-Appellee, Michael Fynn, Defendant.

[*]    The Clerk of Court is directed to amend the caption as set forth above.

20-3316-cv
|
November 23, 2021

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*; Hummel, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-CROSS-DEFENDANT-APPELLANT: Joshua G. Stegemann, pro se, Ray Brook, NY.

FOR DEFENDANTS-APPELLEES: Stephen G. DeNigris, The DeNigris Law Firm PLLC, Albany, NY; Joseph P. Kittredge, Lorena Galvez, Rafanelli Kittredge, P.C., Acton, MA (for William Scott, Dale Gero, Michelle Mason, John Stec, Steve Jones, Robert Patterson, Travas McCarthy, and James Deas); Seth Schofield, Senior Appellate Counsel, for Maura Healy, Attorney

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 77 of 108

Stegemann v. Rensselaer County Sheriff's Office, Not Reported in Fed. Rptr. (2021)
2021 WL 5492966

General of the Commonwealth of Massachusetts, Boston, MA (for Scott Colbert, Thomas Bowler, Berkshire County Sherriff's Office, Berkshire County District Attorney's Office, David Capeless, Richard Locke, Berkshire County, Massachusetts State Police, Rick Smith, and David Brian Foley); Shawn F. Brousseau, Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany, NY (for Pittsfield Police Department, Glenn Civello, Michael Wynn, Tyrone Price, John Mazzeo, and Glenn F. Decker); Andrew B. Joseph, Faegre Drinker Biddle & Reath LLP, Florham Park, NJ (for AT&T Mobility LLC); Christine D. Hanlon, The Law Office of Tromello & Fishman, Chicago, IL (for Subsurface Informational Surveys, Inc.); Janet D. Callahan, Hancock Estabrook LLP, Syracuse, NY (for Cellco Partnership d/b/a Verizon Wireless); Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, Jonathan D. Hitsous, Assistant Solicitor General, for Letitia James, Attorney General of the State of New York, Albany, NY (for New York Air National Guard, Chris Clifford, Dan Kiley, New York State Police, New York State Police Sort, and Richard Sloma); John W. Bailey, Crystal R. Peck, Baily, Johnson & Peck, P.C., Albany, NY (for Sandra Blodgett, Anthony D'Agostino, Christopher Fumerola, Mark Geracitano, Shane Holcomb, Arthur Hyde, Investigator Film, Mark Gorman, Jack Mahar, Frank Mastan, Richard McNally, Jami Panichi, Derek Pyle, Rensselaer County, Rensselaer County Sheriff's Office, Rensselaer County District Attorney's Office, Jason Robelotto, William Roy, Kevin Roy, Patrick Russo, Justin Walread, William Webster, and Steve Wohleber).

PRESENT: JOHN M. WALKER, JR., RICHARD C. WESLEY, JOSEPH F. BIANCO, Circuit Judges.

## SUMMARY ORDER

**\*1**  Plaintiff-Cross-Defendant-Appellant Joshua Stegemann, proceeding *pro se*, brought various claims against several dozen defendants, including numerous law enforcement and government agencies, police officers, private entities (such as telecommunications companies), and others. He alleges, *inter alia*, that the defendants violated his Fourth, Fifth, and Fourteenth Amendment rights when a search warrant was executed at his home in April and May 2013. Specifically, Stegemann challenges the dismissal of his wiretap and excessive force claims, as well as his claims brought against defendant Subsurface Informational Surveys, Inc. ("Subsurface").

As relevant on appeal, the district court *sua sponte* dismissed Stegemann's claims concerning illegal wiretapping as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). After extensive motion practice, the district court also dismissed his Fourth Amendment excessive force and destruction of property claims against the law enforcement defendants as precluded by collateral estoppel. Subsequently, the district court granted summary judgment to defendant Subsurface—a private entity hired to conduct a survey on Stegemann's property in connection with the execution of the search warrant—on the destruction of property claims, reasoning that there was no evidence that Subsurface had caused any property destruction during the search. We assume the parties' familiarity with the underlying facts and the procedural history of the case, which we reference only as necessary to explain our decision to affirm.

### I. Appellate Jurisdiction

As an initial matter, defendant-appellee AT&T Mobility LLC [1] contends that we lack appellate jurisdiction because three defendants (Berkshire County Drug Task Force, Kevin Roy, and Mark Gorman) and several "cross-defendants" were not dismissed on the district court docket. [2] We have jurisdiction over final decisions of the district court. 28 U.S.C. § 1291. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (internal quotation marks and citation omitted). Although a separate judgment has not been entered and three defendants remain unserved, all other defendants have been dismissed. Therefore, we have jurisdiction to proceed to the merits of the appeal. *See Leonhard v. United States*, 633 F.2d 599, 608–09 (2d Cir. 1980) (holding that "the absence of a dismissal" as to unserved defendants was "no impediment to the present appeal" of the dismissal of all of the other defendants).

2021 WL 5492966

1 AT&T Mobility LLC contends that Stegemann improperly identified it as "AT&T Wireless Network" in his pleadings. The Clerk of Court is directed to amend the caption accordingly.

2 The cross-defendants were the individual Rensselaer County law enforcement officers. The claims against those officers were dismissed. *Cf. Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 811 (2d Cir. 1979) (pre-trial settlement of original federal claim necessitated dismissal of cross-claim for indemnification).

## II. Illegal Wiretap Claims

**\*2** Stegemann first challenges the district court's dismissal of his illegal wiretap claims. We conduct *de novo* review of *sua sponte* dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii), accepting well-pled factual allegations in the complaint as true and drawing all reasonable inferences in Stegemann's favor. *See Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 125 (2d Cir. 2020). "Further, when the plaintiff proceeds *pro se*, as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

The Supreme Court's decision in *Heck v. Humphrey* "precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." *Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014). Under *Heck*, if a judgment in the plaintiff's favor would "necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed. 512 U.S. at 487. The bar established in *Heck* applies regardless of whether a plaintiff seeks damages or injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

Stegemann contends that *Heck* cannot bar his wiretap claims because we concluded on the direct appeal of his criminal case that admission of the wiretap evidence at his trial was harmless error and that his conviction was affirmed based on the strength of the government's other evidence. *United States v. Stegemann*, 701 F. App'x 35, 38–39 (2d Cir. 2017) (summary order). In *Heck*, the Supreme Court noted that a Section 1983 suit "may lie" even if the challenged action "produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." 512 U.S. at 487 n.7. The *Heck* Court specifically pointed to the doctrine of harmless error as one reason such a claim could survive because it does not "*necessarily*" invalidate the conviction. *Id.* The governing standard for this exception is "whether a prisoner's victory in a § 1983 suit would *necessarily demonstrate* the invalidity of his conviction or sentence; that a prisoner's success might be merely helpful or *potentially* demonstrative of illegal confinement is, under this standard, irrelevant." *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007).

Stegemann is correct that, on his direct appeal of the criminal conviction, we did not address the merits of his contention that the wiretaps were illegal, but rather concluded that, even if the admission of any such evidence were error, it was harmless because the government's case was otherwise strong enough to sustain his criminal conviction. *Stegemann*, 701 F. App'x at 38–39. Thus, Stegemann's pursuit of claims in this civil action based on an alleged illegal wiretap, even if successful, would not invalidate his criminal conviction.

However, Stegemann's illegal wiretap claims are still barred on a separate ground under *Heck*. More specifically, as the Supreme Court explained in *Heck*, when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom. 512 U.S. at 487 n.7 ("In order to recover compensatory damages [for an illegal search claim] ... the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." (internal citation omitted)). Here, Stegemann has not alleged any injury other than his conviction and subsequent imprisonment, which he asserts resulted from the purportedly illegal wiretap. Therefore, even though his claims regarding the wiretap may not call his conviction into question, Stegemann cannot recover any damages for these injuries unless and until his conviction, which we affirmed on direct appeal, is overturned. Accordingly, there is no basis to disturb the dismissal of his illegal wiretap claims.

2021 WL 5492966

### III. Excessive Force Claim

**\*3**  Stegemann also challenges the dismissal of his excessive force claim. First, Stegemann argues that the district court did not make a finding with respect to why his excessive force claim was barred by *Heck*. We disagree. The district court concluded that this claim was *not* barred by *Heck* because it did not necessarily imply the invalidity of his conviction. However, the district court treated Stegemann's excessive force claim arising from the execution of the search warrant as the same as his claims asserting property damage during the search. Ultimately, the district court dismissed the destruction of property claims as barred by collateral estoppel. On appeal, Stegemann contends that his excessive force claim concerned the entry of officers onto his property and was distinct from his destruction of property claims based on the actions of the officers during the search itself, and thus the district court erred by construing the claims as the same.

Even assuming, *arguendo*, that the district court should have construed his excessive force claim as separate from the destruction of property claims, we affirm the dismissal of both claims as precluded under the doctrine of collateral estoppel. We review *de novo* the dismissal of a complaint for failure to state a claim. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[Although] a court must accept as true all of the allegations contained in a complaint," this tenet is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York collateral estoppel law to New York state court judgments. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005). Under New York law, the doctrine of collateral estoppel bars a party from relitigating an issue in a subsequent proceeding when "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Vargas v. City of New York*, 377 F.3d 200, 205–06 (2d Cir. 2004) (internal quotation marks omitted). Collateral estoppel applies only if the issue in the second action is identical to the first. *City of New York v. Welsbach Elec. Corp.*, 9 N.Y.3d 124, 128 (2007). A nonparty to the prior litigation may invoke the doctrine of collateral estoppel. *See Buechel v. Bain*, 97 N.Y.2d 295, 315–16 (2001).

Collateral estoppel applies here. First, the issues were identical. To determine if an issue is identical, New York courts apply a "functional approach[.]" *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 731 (2d Cir. 2001) (citing *Schwartz v. Pub. Adm'r. of Cnty. of Bronx*, 24 N.Y.2d 65, 73 (1969)). The test is whether the issue "has necessarily been decided in the prior action and is decisive of the present action[.]" *Schwartz*, 24 N.Y.2d at 71. It does not matter that the claim in the latter case is based on a different legal theory so long as the same underlying issue was litigated in the prior proceeding. *See Graven v. Children's Home R.T.F., Inc.*, 152 A.D.3d 1152, 1154 (N.Y. App. Div. 3d Dep't 2017).

Although Stegemann describes his claim here as an "excessive force" claim, the underlying issues are the same as the negligent destruction of property claim that he litigated previously in the New York Court of Claims. Both a Fourth Amendment claim and a state law negligent destruction of property claim involve questions of reasonableness. To determine whether a police officer's actions were reasonable under the Fourth Amendment, this court "ask[s] whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (internal quotation marks omitted). In New York, an officer must execute a search warrant "without unnecessary force or severity[,]" *Siemiasz v. Landau*, 224 A.D. 284, 285 (N.Y. App. Div. 4th Dep't 1928), and cannot act in a way that was "not reasonably necessary" to execute the search warrant and "potentially violate the Fourth Amendment[,]" *Onderdonk v. State*, 170 Misc. 2d 155, 162 (N.Y. Ct. Cl. 1996). Because reasonableness lies at the heart of both a Fourth Amendment claim and a claim under New York law, the issues are identical for collateral estoppel purposes.

**\*4**  Second, the issues were actually litigated. The issue of whether the defendants engaged in "excessive conduct" while executing the search warrant was litigated in the Court of Claims when the court granted the State's motion for summary judgment. The court reasoned that "there is no evidence in the record to indicate that the officers overstepped the bounds of the warrants, that they engaged in excessive conduct in entering upon claimant's property, or that their execution of the warrants

2021 WL 5492966

was accomplished with unnecessary force or severity." *Stegemann v. State*, No. 2016-032-163 (N.Y. Ct. Cl. Jan. 3, 2017). The Court of Claims also decided the issue of whether the defendants "negligently destroyed [Stegemann's] property" in the course of executing the search warrant. *Stegemann v. State*, 163 A.D.3d 1303, 1304 (N.Y. App. Div. 3d Dep't 2018); *see also Halyalkar v. Bd. of Regents of State of N.Y.*, 72 N.Y.2d 261, 268 (1988) ("For a question to have been actually litigated ..., it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding.").

Third, the issue was necessary to the resolution of the motion for summary judgment in the Court of Claims. As discussed above, the reasonableness of the officers' actions was necessary to determine if they negligently destroyed Stegemann's property. *See Kret by Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 458–59 (N.Y. App. Div. 2d Dep't 1983) (holding that an issue was necessarily decided where a decision on that issue was required to reach a verdict and a contrary decision in subsequent litigation would contradict that verdict).

Fourth, Stegemann had a full and fair opportunity to litigate this issue. "[A] determination whether a full and fair hearing was provided requires consideration of the realities of the prior litigation." *In re Sokol*, 113 F.3d 303, 307 (2d Cir. 1997) (internal quotation marks and alteration omitted) (applying New York law). "Factors to be considered include, *inter alia*: 1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding)." *Id.* Here, Stegemann had an opportunity to raise a genuine issue of material fact on summary judgment in the Court of Claims. Further, he had another full and fair opportunity to litigate when he appealed the decision to the Third Department. Accordingly, the district court properly dismissed the excessive force claim as barred by collateral estoppel.

### IV. Subsurface's Motion for Summary Judgment

Finally, Stegemann challenges the district court's grant of summary judgment to Subsurface on the claims against it, which related to its alleged participation in the destruction of his property in connection with the execution of the search warrant. We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (*per curiam*). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

"The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citation omitted). "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *Id.* Stegemann did not offer any evidence establishing that Subsurface destroyed any property when it conducted a ground penetrating radar ("GPR") survey. Indeed, the uncontroverted evidence in the record demonstrated that Subsurface was not hired to excavate Stegemann's property, the GPR unit rolled over the ground in a gentle manner like a baby carriage, no excavation was necessary for the survey, and Subsurface did not have the manpower or equipment to excavate the property.

**\*5** Stegemann argues that there was an issue of fact regarding who conducted excavations on his property after Subsurface completed the GPR survey. However, this argument is meritless because, as the district court concluded, the record is devoid of evidence that Subsurface excavated Stegemann's property. The fact that excavation was mentioned in the GPR report is not evidence that Subsurface did the excavation. Nor is the fact that excavations occurred after Subsurface surveyed the property sufficient to raise a genuine issue of fact precluding summary judgment. Subsurface offered evidence that it did not excavate— and could not have excavated—and Stegemann offered no evidence to controvert these facts. Accordingly, summary judgment was properly granted in Subsurface's favor.

* * *

2021 WL 5492966

We have considered all of Stegemann's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 5492966

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 82 of 108

Kravitz v. City of Hudson, Not Reported in Fed. Supp. (2017)

2017 WL 6403075

2017 WL 6403075
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jay S. KRAVITZ, Plaintiff,

v.

CITY OF HUDSON, Craig Haigh, as City of Hudson Code Enforcer, Sergeant Miller,
City of Hudson Detective, Unknown Employees and Agents of City of Hudson,
Unknown Employees an Agents of Hudson City Police Department, Defendants.

1:17-CV-1175 (TJM/CFH)
|
Signed 11/16/2017

**Attorneys and Law Firms**

Jay S. Kravitz, P.O. Box 206, Earlton, New York 12058, Plaintiff pro se.

### REPORT-RECOMMENDATION AND ORDER

Christian F. Hummel, U.S. Magistrate Judge

#### I. In Forma Pauperis

**\*1** Plaintiff pro se Jay S. Kravitz commenced this action on October 23, 2017 with the filing of a complaint. Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, plaintiff filed a motion for leave to proceed in forma pauperis ("IFP"). Dkt. No. 2. Upon review of plaintiff's IFP application, the undersigned concludes that he may properly proceed with this matter IFP.[1]

---

[1]    Plaintiff is advised that, although he has been granted IFP status, he is still be required to pay any copying and/or witness fees that he may incur in this action.

#### II. Initial Review

##### 1. Allegations in Complaint

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Plaintiff, purporting to commence this action pursuant to 42 U.S.C. § 1983, alleges that defendants violated his First, Fourth, Fifth, and Fourteenth Amendment rights, "his commensurate constitutional rights under the New York State Constitution, negligence and personal injuries." Compl. at 2. Plaintiff alleges that on July 24, 2016, defendants entered his property at 210-212 State Street in Hudson, New York, without a warrant. Id. at 3. He further contends that defendants then improperly seized his property. Id.

Case 6:24-cv-01303-GTS-TWD   Document 10   Filed 02/19/25   Page 83 of 108
Kravitz v. City of Hudson, Not Reported in Fed. Supp. (2017)
2017 WL 6403075

More specifically, plaintiff appears to suggest that his property was seized in violation of his First Amendment right to petition the government for redress of grievances insofar as he has "repeatedly availed himself of his Constitutional rights and contested ... in Court" prior "wrongful actions and attempt[s] to seize by the individual and municipal Defendants of other properties of the Plaintiff." Compl. at 4. Next, plaintiff argues that the warrantless search of his property at 210-212 State Street violated his Fourth Amendment right against unreasonable searches and seizures. Id. at 5. Plaintiff also contends that the seizure of his property at 210-212 State Street violated his Fifth Amendment right to be deprived of property without due process of law. Id. Next, plaintiff argues that the search and seizure violated his Fourteenth Amendment right to due process of law, and that the search and seizure has caused him to suffer "serious personal injuries, emotional distress and commercial loss." Id. at 6. Additionally, seeking to invoke this Court's supplemental jurisdiction, plaintiff contends that the search and seizure of his property "was a violation of his commensurate rights under the New York State Constitution." Id. at 7.

Finally, plaintiff seeks to bring Monell claims against the City of Hudson and Hudson City Police Department for their alleged failure "to properly supervise and discipline its officers, employees and agents." Compl. at 7. Plaintiff argues that this alleged failure to supervise and discipline "was due to the custom, practice, policy, or usage of the Defendants of deliberate indifference to the constitutional and civil rights of citizens of and property owners in the City of Hudson, and in particular, the Plaintiff." Id. at 7-8. For each cause of action, plaintiff demands $2,000,000, "jointly and severally, together with an award of counsel fees." Id. at 9-10.

## 2. Analysis

**\*2** It is not clear whether plaintiff intends to sue defendants Miller and Haigh in their individual or official capacities. See generally Compl. To the extent plaintiff seeks to bring his claims against Miller and Haigh in their official capacities, this District has held that " 'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant." Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (N.D.N.Y. Oct. 25, 1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991)). Here, plaintiff has also named the City of Hudson as a defendant in the Monell claim. Because plaintiff appears to have commenced this action against the City of Hudson and Miller and Haigh in their official capacities, it is recommended that plaintiff's Monell claims against Miller and Haigh in their official capacities be dismissed, and that any claims against them in their individual capacities proceed. Id. To the extent plaintiff attempts to bring the remaining claims in his complaint against Miller and Haigh in their official capacities, it is also recommended that such claims be dismissed because "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998) (citations omitted). Accordingly, claims against the individual defendants in their official capacities must fail as a matter of law, cannot be brought under § 1983, and should be dismissed. It is further recommended that the remainder of the complaint proceed. Id.

Plaintiff has failed to provide to the Court whether, as a result of the search and seizure of his property, he faced any criminal conviction. The Supreme Court of the United States has held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 84 of 108

Kravitz v. City of Hudson, Not Reported in Fed. Supp. (2017)

2017 WL 6403075

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Thus, Heck generally bars any section 1983 challenges to a conviction unless the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus," also known as the "favorable termination" requirement. Id. at 487. If it is the case that the allegedly illegal search of plaintiff's property led to a criminal conviction, a challenge to the search of the property would be barred by Heck as success on such claim would necessarily invalidate that conviction. There are not enough facts pleaded in the complaint to assess whether the complaint would be barred by Heck. Accordingly, it is recommended that plaintiff's complaint be dismissed without prejudice and with opportunity to amend to permit plaintiff an opportunity to provide additional information as to whether he faced—or faces—a criminal conviction as a result of the allegedly illegal search and seizure of his property. [2]

[2]    Plaintiff is advised that, if plaintiff chooses to amend his complaint, the amended complaint must be a complete pleading that will replace and supersede the original complaint in its entirety. Plaintiff is further advised that, in any such amended complaint, he may not re-assert any claims that have been dismissed *with prejudice* by the Court.

Finally, plaintiff has named as defendants "yet unknown employees and agents of City of Hudson and Unknown Employees and Agents of Hudson City Police Department." Compl. at 1. In the event that the District Judge permits this complaint to proceed and plaintiff wishes to pursue this claim against these defendants, he must take reasonable steps to ascertain their identities. [3]

[3]    *If the District Judge, upon Review of this Report-Recommendation and Order, determines that the Complaint may proceed*, and plaintiff then decides he wants to proceed against the "unknown employees and agents," once he ascertains such defendants identities, plaintiff may file a motion to amend his pleadings and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is advised that, *should the District Judge determine, on review of this Report-Recommendation and Order, that this action can proceed*, failure to timely serve these currently unidentified defendants will result int his action be dismissed as against them.

### III. Conclusion

**\*3  WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED**, that all claims brought in plaintiff's complaint (Dkt. No. 1) against defendants Craig Haigh and Sergeant Miller in their official capacities be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that the remainder of the complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE and with opportunity to amend** so that plaintiff may provide the Court with additional information, as detailed herein, so that the Court may properly assess whether his claims are barred by Heck v. Humphrey; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d

Cir. 1993) (citing <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989)); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6403075

---

**End of Document**                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 86 of 108

Kravitz v. City of Hudson, Not Reported in Fed. Supp. (2017)

2017 WL 6389715

2017 WL 6389715
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jay S. KRAVITZ, Plaintiff,
v.
CITY OF HUDSON, et al., Defendants.

1:17-cv-1175 (TJM/CFH)
|
Signed 12/12/2017

**Attorneys and Law Firms**

Jay S. Kravitz, Earlton, NY, pro se.

**DECISION and ORDER**

Thomas J. McAvoy, SR. U.S.D.J.

 **\*1**  The Court referred this action, which is brought pursuant to 42 U.S.C. § 1983 and alleges Defendants violated Plaintiff's civil rights in the way they searched his property, to the Hon. Christian F. Hummel, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 72.3(d) of the Local Rules of the Northern District of New York. The Report-Recommendation, dated November 16, 2017, recommended that the Court dismiss some claims against some Defendants with prejudice and dismiss the rest of the Complaint without prejudice to filing an amended complaint that demonstrated that Plaintiff's claims were not barred by Heck v. Humphrey, 512 U.S. 477 (1994).

Plaintiff did not file objections to the Report-Recommendation and the time for filing such objections has passed. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice and the Court will adopt the Report-Recommendation.

Accordingly:

The Report-Recommendation, dkt. # 4, is hereby ADOPTED. All claims in the Complaint, dkt. # 1, brought against Defendants Craig Haigh and Sergeant Miller in their official capacities, are hereby DISMISSED WITH PREJUDICE. The remainder of the Complaint is hereby DISMISSED WITHOUT PREJUDICE and with an opportunity to amend so that Plaintiff may provide the Court with additional information to permit the Court to assess whether Plaintiff's claims are barred by Heck v Humphrey.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6389715

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Kelly v. Albany County Probation Department, Not Reported in Fed. Supp. (2020)

2020 WL 4458929

2020 WL 4458929
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stephen KELLY, Plaintiff,

v.

ALBANY COUNTY PROBATION DEPARTMENT, Defendant.

Civ. No. 8:20-CV-722 (GLS/DJS)

|

Signed 07/09/2020

**Attorneys and Law Firms**

STEPHEN KELLY, Plaintiff Pro Se, 18-A-3202, Gouverneur Correctional Facility, Scotch Settlement Road, P.O. Box 480, Gouverneur, New York 13642.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed by Plaintiff *pro se* Stephen Kelly. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee, but instead submitted a Motion to Proceed *in forma pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order, this Court granted Plaintiff's Application to Proceed IFP. Now, in accordance with 28 U.S.C. §§ 1915(e) and 1915A, the Court will *sua sponte* review the sufficiency of the Complaint.

## I. DISCUSSION

### A. Pleading Requirements

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Similarly, under 28 U.S.C. § 1915A, a court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at § 1915A(a) & (b). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 88 of 108

Kelly v. Albany County Probation Department, Not Reported in Fed. Supp. (2020)

2020 WL 4458929

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* at 678 (further citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the proposition that Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Allegations that "are so vague as fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

### B. Allegations Contained in Plaintiff's Complaint

**\*2** The *pro se* Complaint asserts a single cause of action alleging false arrest. Compl. at p. 4. [1] The Complaint relates to events surrounding an alleged probation violation committed by Plaintiff. *Id.* at p. 3. Plaintiff's Complaint alleges that the facts asserted did not support the alleged probation violation. *Id.* The Complaint references an unidentified probation officer, but the sole named Defendant is the Albany County Probation Department. *Id.* at pp. 1 & 3.

[1]  Citation to page numbers are to page numbers assigned by the Court's CM/ECF system.

### C. Sufficiency of the Pleading

"It is well-settled that municipal departments and offices which have no separate legal identity and cannot sue or be sued are not 'persons' under Section 1983." *Hill v. New York*, 2018 WL 10246976, at \*5 (N.D.N.Y. Mar. 1, 2018) (citing cases); *see also Gilmore ex rel. Kephart v. Schenectady Cty. Sheriffs*, 2018 WL 794579, at \*4 (N.D.N.Y. Feb. 8, 2018). *Hill* and *Gilmore* both recognize that a county probation department falls into this category of municipal departments that cannot be sued. *Id.* (citing cases). Other courts have reached the same conclusion. *Ceparano v. Suffolk Cty.*, 2010 WL 5437212, at \*6 (E.D.N.Y. Dec. 15, 2010); *Coleman v. City of New York*, 2009 WL 909742, at \*2 (E.D.N.Y. Apr. 1, 2009) (citing cases). Defendant, therefore, must be dismissed as not a proper party to this action.

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). The Complaint does reference, but not name, an individual probation officer who might be amenable to suit, although it is unclear whether the Complaint might nonetheless be barred by the rule enunciated in *Heck v. Humphrey*, 512 U.S. 477 (1994). "*Heck* and its favorable termination rule applies to actions pursuant to section 1983 that challenge the fact or duration of confinement based on the revocation of parole." *Perry v. City of Albany*, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020), *report and recommendation adopted*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (internal quotation and citation omitted). Should Plaintiff name a proper Defendant, he may be able to address the *Heck* bar through more detailed pleading regarding the status of his parole revocation, or by demonstrating that his claims do not implicate the invalidity of his parole revocation. *See Heck v. Humphrey*, 512 U.S. at 487. Given Plaintiff's *pro se* status, therefore, the Court recommends that the Complaint be dismissed as to the only Defendant currently named, but that Plaintiff be granted leave to amend to name a proper defendant.

### II. CONCLUSION

2020 WL 4458929

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Complaint be **DISMISSED with prejudice** as to the Albany County Probation Department, but that Plaintiff be provided leave to amend; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days [2] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[2]    If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4458929

---

**End of Document**                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 90 of 108
Kelly v. Albany Count Probation Department, Not Reported in Fed. Supp. (2020)

2020 WL 4432711

2020 WL 4432711
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stephen KELLY, Plaintiff,

v.

ALBANY COUNT PROBATION DEPARTMENT, Defendant.

8:20-cv-722 (GLS/DJS)
|
Signed 07/31/2020

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Stephen Kelly, Pro Se, 18-A-3202, Gouverneur Correctional Facility, Scotch Settlement Road, P.O. Box 480, Gouverneur, NY 13642.

## <u>ORDER</u>

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court following an Report-Recommendation and Order (R&R) by Magistrate Judge Daniel J. Stewart duly filed on July 9, 2020. (Dkt. No. 6.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 6) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the Complaint is **DISMISSED** with prejudice as to the Albany County Probation Department; and it is further

**ORDERED** that plaintiff is granted leave to file an amended complaint to name a proper defendant within thirty (30) days of this court's order;[1] and it is further

1      Plaintiff filed an amended complaint on July 29, 2020 before the court had an opportunity to review the R&R. (Dkt. No. 7.)

**ORDERED** that plaintiff's amended complaint, filed on July 29, 2020, (Dkt. No. 7), is referred to the Magistrate Judge for further review; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 4432711

**Kelly v. Albany Count Probation Department, Not Reported in Fed. Supp. (2020)**

2020 WL 4432711

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 6:24-cv-01303-GTS-TWD     Document 10     Filed 02/19/25     Page 92 of 108

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 1486836

2019 WL 1486836
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,

v.

CITY OF ALBANY, et al., Defendants.

No. 1:18-CV-1193 (DNH/CFH)
|
Signed 04/04/2019

**Attorneys and Law Firms**

Clarence Delaney Jr., 17-A-0236, Fishkill Correctional Facility, P.O. Box 1245, Beacon, New York 12508, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, U.S. Magistrate Judge

### I. In Forma Pauperis Application

**\*1** The Clerk has sent to the Court an amended complaint, together with an application to proceed in forma pauperis ("IFP"), filed by plaintiff pro se Clarence Delaney Jr. Dkt. Nos. 4, 8 ("Am. Compl."). After reviewing plaintiff's IFP Application, the Court finds that he may properly proceed IFP. See Dkt. No. 4. [1]

[1]   Plaintiff is advised that, despite his IFP status, he will still be required to pay any fees he incurs in this action, including copying fees and witness fees.

### II. Initial Review [2]

[2]   Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

#### A. Standard of Review

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). However, this does not mean the Court is required to accept unsupported allegations devoid of sufficient facts or claims. Pleading guidelines are provided in

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 93 of 108

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 1486836

the Federal Rules of Civil Procedure ("Fed R. Civ. P"). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant['s] duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Plaintiff's Complaint

**\*2** Plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983 alleging that defendants the City of Albany and various members of the Albany City Police Department violated his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. See generally Am. Compl. Plaintiff contends that on August 9, 2018, Detective ("Det.") Adam Brace, Det. DiGiuseppe, and several other members of the Albany City Policy Department "ambushed" him with their guns drawn while he was walking in the City of Albany. Id. at 4. Det. DiGiuseppe "threw [plaintiff] hard against the patrol car and handcuffed [him] around and behind [his] back." Id. In applying the handcuffs, Det. DiGiuseppe injured plaintiff's right arm/elbow, which was already disabled due to a degenerative joint disease. Id. Plaintiff informed Det. DiGiuseppe that he was aggravating plaintiff's disability. Id. Plaintiff also contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Id. at 6. Plaintiff alleges that Det. DiGiuseppe then emptied plaintiff's pockets, including over $ 170.00, and failed to return his possessions. Id. at 4.

Plaintiff alleges that he asked Det. Brace and Det. DiGiuseppe why he was being arrested, and Det. Brace informed him that power tools belonging to plaintiff's friend were stolen out of the friend's truck, and that they wanted to know where the tools were located. Am. Compl. at 5. Plaintiff contends that he was arrested for "two credit cards that [Det. DiGiuseppe] found[.]" Id. Plaintiff suggests that he has had prior negative interactions with Det. DiGiuseppe, and has previously filed complaints against him. Id. Plaintiff further contends that, in a written report to plaintiff's parole officer, Det. Brace lied to plaintiff's parole officer and stated that plaintiff had been in possession of "makita drills that had been reported stolen." Id. Plaintiff contends that he suffered great physical pain and emotional distress as a result of the interaction. See id. at 4, 5.

### C. Analysis

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 94 of 108
Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)
2019 WL 1486836

Plaintiff purports to set forth claims of excessive force, false arrest/imprisonment, defamation, intentional infliction of emotional distress ("IIED"), and official misconduct. See generally Am. Compl. Section 1983 provides, in part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To set forth a cause of action under section 1983, a plaintiff must demonstrate that the alleged conduct was (1) "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (internal quotation marks omitted) ). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

The Supreme Court of the United States has found that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). Therefore, a plaintiff must establish that the defendant was either a state actor or a private party acting under color of state law. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002); see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' "). A private party engages in state action when they are found to be a "willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (citing United States v. Price, 383 U.S. 787, 794 (1966) ). "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." White v. Moylan, 554 F. Supp. 2d 263, 267 (D. Conn. 2008) (citation omitted).

### 1. Official Capacity Claims

*3  To the extent that plaintiff seeks to bring his claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe defendants in their official capacities, this District has held that " 'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.' " Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (N.D.N.Y. Oct. 25, 1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991) ). This is because "[t]he real party in interest in an official capacity suit is the governmental entity and not the named official." Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469 (N.D.N.Y. 2002) (citing Union Pac. R.R. v. Vill. of S. Barrington, 598 F. Supp. 1285 (N.D. Ill. 1997) ). Moreover, this District has held that " 'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.' " Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991) ).

Because plaintiff appears to have commenced this action against the City of Albany and the individual defendants in their official capacities, it is recommended that plaintiff's Monell claims against the Det. Brace., Det. DiGiuseppe, and the John Doe defendants be dismissed with prejudice. Insofar as plaintiff attempts to bring the remaining claims in his amended complaint against the individual defendants in their official capacities, it is recommended that such claims be dismissed with prejudice because "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998) (citations omitted).

### 2. False Imprisonment and False Arrest

In <u>Heck v. Humphrey</u>, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. 477, 486-87 (1994) (emphasis in original).

In a February 13, 2019 letter to the Court, plaintiff stated that his "criminal case in Albany City/Police Court related to this case and the parties involved has been adjudicated and resolved/completed[.]" Dkt. No. 11 at 1. Plaintiff further stated that he "felt that [he] should let the Court know due to the fact that one of [his] causes of action is for false arrest/false imprisonment." <u>Id.</u> Although plaintiff appears to contend that the criminal case associated with this action has been resolved, he does not establish that a "conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid[.]" <u>Heck</u>, 512 U.S. at 486-87. Moreover, plaintiff's complaint and submissions are unclear as to the nature of the charges, if any, that were filed against him in connection with the incident in question. Plaintiff contends that he was arrested for charges unrelated to the reason for defendants' initial stop, but does not identify those charges. <u>See</u> Am. Compl. at 5. Plaintiff seems to suggest that he was arrested and potentially charged with possessing stolen credit cards and/or power tools, but the amended complaint is unclear as to the disposition of those charges. <u>See id.</u> Thus, the undersigned is unable to determine whether his causes of action for false arrest and false imprisonment fall squarely within the ambit of <u>Heck</u> because it is unclear whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain pending, or if they have been vacated, reversed, acquitted, or otherwise invalidated. Thus, the undersigned cannot ascertain whether, if plaintiff's false imprisonment and false arrest claims were to succeed, "he would necessarily call into question the validity of the conviction he is challenging in this action." <u>Godley v. Onondaga Cnty.</u>, No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *5 (N.D.N.Y. Jan. 6, 2017) (citing <u>Duamutef v. Morris</u>, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under <u>Heck</u> where the plaintiff's underlying conviction had not been overturned) ). "[B]ecause [p]laintiff has failed to show that his conviction has been overturned ... [,] his § 1983 claims [for false arrest and false imprisonment] are barred under <u>Heck</u> unless and until such time as [p]laintiff's conviction is overturned or his sentence is invalidated" or plaintiff otherwise demonstrates that his causes of action would not otherwise render his conviction invalid. <u>Godley</u>, 2017 WL 2805162, at *6. Accordingly, it is recommended that plaintiff's false imprisonment and false arrest causes of action be dismissed without prejudice and with opportunity to amend to specify any and all criminal charges brought against him in connection with the August 9, 2018 incident and whether a "conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid[.]" <u>Heck</u>, 512 U.S. at 486-87.

### 3. Defamation

**\*4** Plaintiff contends that Det. Brace "committed libel and slander by charges that was never committed by plaintiff." Am. Compl. at 7. Plaintiff further contends that Det. DiGiuseppe "stated ... [that] plaintiff possessed stolen credit cards ... causing [ ] plaintiff to be arrested illegally." <u>Id.</u> Heck also applies to plaintiff's defamation claim. "Under New York law, '[d]efamation is the

Case 6:24-cv-01303-GTS-TWD   Document 10   Filed 02/19/25   Page 96 of 108

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 1486836

injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.' " Kennedy v. City of New York, No. 12 CIV. 4166 KPF, 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015) (quoting Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) ). "Truth is an absolute defense to a civil defamation action." Beaver v. Franklin, No. 5:16-CV-1454 (BKS/ATB), 2016 WL 11265986, at *4 n.6 (N.D.N.Y. Dec. 16, 2016), report and recommendation adopted, 2017 WL 1378183 (N.D.N.Y. Apr. 14, 2017). Therefore, in order to sustain a cause of action for defamation, plaintiff must establish that the charges or statements made against him were false. See id. It is unclear as to what crimes plaintiff was charged with, whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain pending, or if any charges have been vacated, reversed, acquitted, or otherwise invalidated. Thus, truth of any alleged defamatory statement cannot be addressed until the status of any charges is known. It follows that the undersigned cannot assess whether, if plaintiff's defamation claim were to succeed, "he would necessarily call into question the validity of the conviction he is challenging in this action." Godley, 2017 WL 2805162, at *5. Moreover, the undersigned cannot surmise from the amended complaint if the alleged defamatory statement was published [3] to a third party, as required by New York law. See Beaver, 2016 WL 11265986, at *4 n.6. Accordingly, it is recommended that plaintiff's defamation cause of action be dismissed without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his "conviction or sentence has been reversed ..., expunged ..., [or otherwise] declared invalid"; and (2) whether the alleged defamatory statement was published to a third party. Heck, 512 U.S. at 486-87; see Beaver, 2016 WL 11265986, at *4 (noting that the Heck bar "would also apply to 'slander' and 'defamation of character.' ") (citing Xiang Li v. Shelhamer, No. 5:10-CV-801, 2012 WL 951550, at *4 (N.D.N.Y. Mar. 20, 2012) ) (concluding that the plaintiff's claims that the defendant defamed him through statements made in his criminal proceeding that resulted in his conviction are barred by Heck); Lane v. Papadimitrious, No. 6:10-CV-647, 2010 WL 2803468, at *1 (N.D.N.Y. July 14, 2010) (holding that the "plaintiff's claims in the nature of perjury[ and] slander ... necessarily implicate the validity of his conviction and are thus barred under Heck [ ] until such time as the conviction may be vacated or otherwise invalidated.").

[3]     "Under New York defamation law, 'publication is a term of art.... A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else.' " Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (quoting Ostrowe v. Lee, 256 N.Y. 36, 38 (1931) ). A cause of action for slander also requires publication to a third party. See Kennedy, 2015 WL 6442237, at *12 (" 'A cause of action for slander requires (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege.") (citation omitted).

### 4. Excessive Force

Plaintiff's assertion that Det. DiGiuseppe subjected him to excessive force during the arrest is not barred by Heck, as "it would not implicate his judgments of conviction." Palmenta v. Blank, No. 3:18-CV-1078 (SRU), 2018 WL 4516676, at *4 (D. Conn. Sept. 20, 2018) (citing Poventud v. City of New York, 750 F.3d 121, 132 (2d Cir. 2014) ). "To establish a Fourth Amendment excessive force claim, [a plaintiff] must show that the force used by the defendants was 'objectively unreasonable.' " Palmenta, 2018 WL 4516676, at *4 (citing Graham v. Connor, 490 U.S. 386, 397 (1989) ). [4] To the extent that plaintiff argues that defendants "ambushed" him at gunpoint and handcuffed him, Am Compl. at 4, defendants' actions of "merely drawing weapons when effectuating an arrest [do] not constitute excessive force as a matter of law." Dunkelberger v. Dunkelberger, No. 14-CV-3877 (KMK), 2015 WL 5730605, *15 (S.D.N.Y. Sept. 30, 2015) (citations omitted). [5] However, plaintiff further contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Am. Compl. at 6. "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." Matthews v. City of New York, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012). Thus, at this early stage in the litigation, plaintiff has adequately "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Accordingly, plaintiff's allegations are sufficient to establish a plausible Fourth Amendment claim, and it is recommended that plaintiff's Fourth Amendment excessive force claim be permitted to proceed. [6]

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 97 of 108

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 1486836

4    Although plaintiff purports to bring his excessive force claim under the Eighth Amendment,

[t]he Eighth Amendment standard [for excessive force] "applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions;" i.e., during the post-conviction stages ... Whereas the substantive due process rights provided by the Fourteenth Amendment apply only in situations where the protections provided by the Fourth and Eighth Amendments are not applicable. County of Sacramento v. Lewis, 523 U.S. 833, 844-45, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Here, [p]laintiff complains of abuses that occurred during his arrest and are properly analyzed under the Fourth Amendment.

Williams v. Falkowski, No. 9:11-CV-826 (GLS/RFT), 2013 WL 5423703, at *4 (N.D.N.Y. Sept. 26, 2013) (internal citation omitted); Porath v. Bird, No. 9:11-CV-963 (GLS/CFH), 2013 WL 2418253, at *16 ("If excessive force was allegedly used before arraignment, the Fourth Amendment standards govern.") (citing Graham v. Connor, 490 U.S. 386, 394 (1989) ).

5    Insofar as plaintiff suggests that defendants approached him without reasonable suspicion or arrested him without probable cause, the undersigned notes that such claims would be barred by Heck unless plaintiff demonstrates that his criminal conviction was either overturned or otherwise expunged. See Heck, 512 U.S. at 486-87.

6    As plaintiff's amended complaint alleges only Det. DiGiuseppe's personal involvement in an incident of excessive force, plaintiff has properly pleaded a Fourth Amendment excessive force claim only as against Det. DiGiuseppe. See Am. Compl.

### 5. IIED

**\*5** Plaintiff contends that defendants caused him "emotional trauma" when they "ambushed" him and exacerbated his physical and mental health problems. Am. Compl. at 8. "Under New York law, [IIED] has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Thomas v. City of New York, No. 17-CV-6079, 2018 WL 5791965, at *12 (E.D.N.Y. Nov. 5, 2018) (quoting Restis v. Am. Coalition Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) ). Plaintiff states that since the incident and defendants' "unnecessary [use of] force, he has suffered depression, anxiety, posttraumatic stress disorder, and sleep problems." Am. Compl. at 7-8. As plaintiff has alleged a cognizable federal claim for excessive force that "form[s] part of the same case or controversy under Article III of the United States Constitution," the undersigned finds that plaintiff has sufficiently pleaded an IIED claim, and recommends that the Court exercise supplemental jurisdiction over this claim. Pace v. Waterbury Police Dep't, Civ. No. 3:17CV00426(DJS), 2017 WL 1362683, at *4 (D. Conn. Apr. 12, 2017) (quoting 28 U.S.C. § 1367(a) ) (internal quotation marks omitted).

### 6. Official Misconduct

Plaintiff argues that "defendants caused [his] constitutional rights to be violated by arbitrary action and unlawful conduct due to personal and retaliatory reasons." Am. Compl. at 8. He further contends that Det. DiGiuseppe lied and "extorted plaintiff for over $ 160.00 when he emptied plaintiff['s] pockets." Id. [7] Pursuant to New York Penal Law § 195.00,

[a] public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:

1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or

2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

N.Y. Penal Law § 195.00.

Case 6:24-cv-01303-GTS-TWD   Document 10   Filed 02/19/25   Page 98 of 108

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 1486836

7       Earlier in the amended complaint, plaintiff indicates that Det. DiGiuseppe may taken over $ 170.00. See Am. Compl. at 4.

The undersigned notes that "there is no private right of action to enforce either state or federal criminal statutes." Delany v. City of Albany, No. 1:18-CV-1259 (LEK/ATB), 2018 WL 5923901, at *5 (N.D.N.Y. Nov. 13, 2018), report and recommendation adopted in part, rejected in part sub nom. Delaney v. City of Albany, 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019) 8 (citing Carvel v. Ross, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) ). Therefore, to the extent plaintiff is seeking defendants' prosecution for official misconduct, this claim cannot proceed. As such, it is recommended that plaintiff's purported official misconduct claim be dismissed with prejudice.

8       Plaintiff filed a separate action in the Northern District of New York naming Det. DiGiuseppe and the City of Albany as defendants. See Delany, 2018 WL 5923901, at *1. However, the underlying facts in that action take place in May 2016. See id. at *2.

### 7. Municipal Liability

Plaintiff has named in the caption of the amended complaint defendant City of Albany. However, "a municipality cannot be held liable solely on a theory of respondeat superior." Anderson v. Cnty. of Nassau, 297 F. Supp. 2d 540, 546 (E.D.N.Y. 2004).

Pursuant to the standard for establishing municipality liability laid out in Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. 658); see also Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.")[.] A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985).

*6  Boyde v. New York, No. 5:16-CV-00555(LEK/TWD), 2016 WL 3573133, at *4 (N.D.N.Y. May 19, 2016). Thus, "in order to establish municipal liability, plaintiff must establish that an identified municipal policy was the 'moving force [behind] the constitutional violation.' " Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting Monell, 436 U.S. at 694) (emphasis added).

Plaintiff's allegation that the City of Albany failed to train its police officers "due to defendants Det. Brace and DiGiuseppe and other members clearly violating established laws against its citizens specifically the plaintiff" is conclusory as he fails to allege an "affirmative link" between any custom or policy set forth by the City of Albany, and defendants' alleged violations of plaintiff's constitutional rights. See Boyde, 2016 WL 3573133, at *4; Am. Compl. at 8. Accordingly, it is recommended that all claims against the City of Albany be dismissed without prejudice and with leave to amend to provide plaintiff an opportunity to identify a custom or policy set forth by the City of Albany and demonstrate an affirmative link between that policy and defendants' alleged constitutional violations. See Boyde, 2016 WL 3573133, at *4.

### 8. John Doe Defendants

The undersigned observes that plaintiff has named four John Doe defendants: Police Officer John Doe 1, 2, 3, and 4. In the event that the District Judge permits this amended complaint to proceed, and should plaintiff wishes to pursue this claim against these

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 99 of 108
Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)
2019 WL 1486836

John Doe defendants, he must take reasonable steps to ascertain their identities. Once he ascertains the John Doe defendants' identities, plaintiff may file a motion seeking the Court's permission to amend his pleadings to identify the John Doe defendants by name. Plaintiff is advised that failure to timely identify and serve [9] these currently unidentified defendants will result in this action being dismissed as against the John Doe defendants.

[9]    Service on defendants will not occur until the District Judge determines that a version of plaintiff's complaint may proceed beyond the initial review stage.

### III. Motion to Appoint Counsel

In a separately-filed motion, plaintiff also seeks the appointment of counsel. Dkt. No. 7. Plaintiff indicates that he is "physically [and] mentally disabled and [does not] have the expertise" to litigate his "complex" claims. Id. at 1. It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. Id. at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986) ); see also Leftridge, 640 F.3d at 69 (noting that a motion for appointment of counsel may be properly denied if the court "concludes that [the party's] chances of success are highly dubious.") (citations omitted).

 *7  However, prior to evaluating a request for an appointment of counsel, the plaintiff must make a threshold showing that he is unable to obtain counsel through the private sector or public interest firms. See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting Hodge, 802 F.2d at 61). Although plaintiff contends that he has contacted seven different attorneys but has not received a response, he has not proffered evidence demonstrating that he contacted those attorneys or not-for-profit agencies in an effort to seek pro bono or low-cost counsel. See Dkt. No. 7 at 1-2.

Moreover, before counsel is assigned, it must be determined whether plaintiff's claims are likely to be of substance. See Terminate Control Corp., 28 F.3d at 1341. Until the District Judge reviews this Report-Recommendation and Order and determines whether plaintiff's complaint can proceed, must be dismissed, or whether he may be accorded an opportunity to amend, plaintiff's claims have not been determined to have merit. This case is at its earliest stages, and plaintiff has not demonstrated that appointment of counsel is warranted at this time.

Accordingly, it is ordered that plaintiff's motion for counsel be denied without prejudice and with opportunity for plaintiff to renew his motion for appointment of counsel in the future demonstrates a change in his circumstances. The undersigned reminds plaintiff that any future motion for counsel must be accompanied by evidence of the efforts that plaintiff has taken to retain counsel on his own, either in the public or private sector. Financial need or status as an incarcerated person, without more, does not suffice for appointment of pro bono counsel in a civil action.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for in forma pauperis relief (Dkt. No. 4) be **GRANTED**; and it is

**RECOMMENDED**, that to the extent that plaintiff seeks to bring his claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe police officer defendants in their official capacities, these claims be dismissed with prejudice; and it is further

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 100 of 108
Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)
2019 WL 1486836

**RECOMMENDED**, that plaintiff's official misconduct claim be dismissed with prejudice; and it is further

**RECOMMENDED**, that plaintiff's false imprisonment, false arrest, and defamation claims insofar as they are brought against the individual defendants in their individual capacities, be dismissed without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his conviction or sentence has been declared invalid, or whether there are any charges pending arising out of the incident set forth in the Am. Compl.; and (2) whether the alleged defamatory statement was published to a third party; and it is further

**RECOMMENDED**, that plaintiff's Fourth Amendment excessive force and IIED claims against the individual defendants in their individual capacities proceed but that the summons and complaint not be issued and served until plaintiff has an opportunity to amend his complaint to cure the defects identified herein; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be provided thirty (30) days from the date of any order adopting this Report-Recommendation and Order to file a second amended complaint limited to claims not otherwise dismissed with prejudice by this Court, [10] and should plaintiff decline to file a second amended complaint within that time, the Clerk return the case to the magistrate judge for service of the amended complaint with the unamended claims deemed stricken; and it is

[10]  Any second amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice. If accepted by the Court for filing, the second amended complaint will supersede and replace the amended complaint in its entirety; thus, the second amended complaint becomes the operative pleading and the amended complaint will no longer be considered. See Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ).

 **\*8 ORDERED**, that plaintiff's Motion to Appoint Counsel (Dkt. No. 7) be **DENIED**, but the denial is without prejudice and with opportunity to renew such request in the future should plaintiff demonstrate a change in circumstances; and it is further

**ORDERED**, that if plaintiff files a second amended complaint within the time frame set forth herein, the Clerk of the Court is to return the case to the magistrate judge for review of the second amended complaint; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [11]

[11]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

2019 WL 1486836

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1486836

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)

2019 WL 1922286

2019 WL 1922286
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Clarence DELANEY, Jr., Plaintiff,

v.

CITY OF ALBANY; Police Officer Brace, Detective for the City of Albany/CIU; Police Officer
DiGiuseppe, Detective for the City of Albany/CIU; Police Officer John Doe 1, Police Officer for City
of Albany; and Police Officer John Doe 2, 3, 4, Police Officers for the City of Albany, Defendants.

1:18-CV-1193 (DNH/CFH)
|
Signed 04/30/2019

**Attorneys and Law Firms**

CLARENCE DELANEY, JR., Plaintiff pro se, 17-A-0236, Fishkill Correctional Facility, P.O. Box 1245, Beacon, NY 12508.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

 **\*1**  Pro se plaintiff Clarence Delaney, Jr. brought this civil rights action pursuant to 42 U.S.C. § 1983. On April 4, 2019, the Honorable Christian F. Hum mel, United States Magistrate Judge, advised by Report-Recommendation that some of plaintiff's claims be dismissed with prejudice, some be dismissed without prejudice, some be permitted to proceed, and that he be given an opportunity to file a second amended complaint in accordance with the directives outlined in the Report-Recommendation. No objections to the Report-Recommendation have been filed.

Based upon a careful review of the entire file and the recommendations of the Magistrate Judge, the Report-Recommendation is accepted in whole. See 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. To the extent plaintiff seeks to bring claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe police officer defendants in their official capacities, these claims are DISMISSED with prejudice;

2. Plaintiff's official misconduct claim is DISMISSED with prejudice;

3. Plaintiff's false imprisonment, false arrest, and defamation claims insofar as they are brought against the individual defendants in their individual capacities are DISMISSED without prejudice and with opportunity to amend to specify (1) the charges brought against him and whether his conviction or sentence has been declared invalid, or whether there are any charges pending arising out of the incident set forth in the amended complaint; and (2) whether the alleged defamatory statement was published to a third party;

**Delaney v. City of Albany, Not Reported in Fed. Supp. (2019)**

2019 WL 1922286

4. Plaintiff's Fourth Amendment excessive force and IIED claims against the individual defendants in their individual capacities shall proceed but the summons and complaint shall not be issued and served until plaintiff has an opportunity to amend his complaint to cure the defects identified;

5. Plaintiff is provided thirty (30) days from the date of this Decision and Order to file a second amended complaint limited to claims not otherwise dismissed with prejudice;

6. If plaintiff files a timely second amended complaint, it be forwarded to the Magistrate Judge for review; and

7. If plaintiff fails to file a second amended complaint within thirty (30) days of the date of this Decision and Order, the Clerk return the case to the Magistrate Judge for service of the amended complaint with the unamended claims deemed stricken.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1922286

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 104 of 108

Salaam v. Department of Corrections and Community..., Not Reported in Fed....

2019 WL 4415624

2019 WL 4415624

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Rashad SALAAM, Plaintiff,

v.

State of New York DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, et al., Defendants.

9:19-CV-0689 (BKS/TWD)

|

Signed 09/16/2019

**Attorneys and Law Firms**

RASHAD SALAAM, 14-A-3363, Plaintiff, pro se, Clinton Correctional Facility, P.O. Box 2000, Dannemora, NY 12929.

**DECISION AND ORDER**

BRENDA K. SANNES, United States District Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Rashad Salaam pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"), and a motion for appointment of counsel. Dkt. No. 1 ("Compl."); Dkt. No. 8 ("Motion for Counsel"); Dkt. No. 11 ("IFP Application"). [1] Plaintiff is currently incarcerated at Clinton Correctional Facility and has not paid the filing fee for this action.

[1]    Plaintiff filed his complaint in the Eastern District of New York. *See* Compl. After this action was transferred to this District, it was administratively closed based on plaintiff's failure to comply with the filing fee requirements. Dkt. No. 7. Plaintiff then filed his IFP Application, and the action was re-opened. Dkt. Nos. 11, 12.

## II. IFP APPLICATION

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application (Dkt. No. 11) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3. Accordingly, plaintiff's IFP Application is granted.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 105 of 108

Salaam v. Department of Corrections and Community..., Not Reported in Fed....

2019 WL 4415624

2

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

**\*2** Plaintiff asserts allegations of wrongdoing while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Auburn Correctional Facility ("Auburn C.F."). *See generally* Compl. Plaintiff names DOCCS and Jason Williams, an inmate in the custody of DOCCS, as defendants. Compl. at 1-2. The following facts are set forth as alleged by plaintiff in his complaint.

In July 2017, defendant Jason Williams entered plaintiff's cell holding "a medium shank" and directed plaintiff to "take [his] pants off[.]" Compl. at 4. Plaintiff complied, and inmate Williams then sexually assaulted him. *Id.*

"[D]ays later, while plaintiff was walking to his cell, inmate Williams "approached [him] from behind with a razor shank" and cut his face. Compl. at 4. Plaintiff ran to his cell, and inmate Williams chased after him. *Id.* Upon entering plaintiff's cell, inmate Williams "sliced [plaintiff's] arm[.]" *Id.* Plaintiff responded by throwing "items" at inmate Williams, who then left plaintiff's cell. *Id.* Unidentified corrections officials were witnesses but "did not say anything[,]" and plaintiff "had to tell them about the cutting." *Id.*

Following the second attack by inmate Williams, plaintiff was escorted to the infirmary, where he received treatment for cuts on his face and right arm. Compl. at 4.

Construed liberally, the complaint asserts an Eighth Amendment failure-to-protect claim against DOCCS and an assault claim against defendant inmate Williams.[3] Plaintiff seeks monetary and injunctive relief. Compl. at 5. For a complete statement of plaintiff's claims, reference is made to the complaint.

3      Plaintiff has not named any of the officials who allegedly witnessed this event as defendants. The Court therefore declines to analyze the sufficiency of plaintiff's allegations against these non-parties.

#### C. Analysis

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. DOCCS

The Eleventh Amendment bars federal court claims against states, absent their consent to such suit or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989);[4] *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.' "); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."); *Rivera v. Goord*, 119 F. Supp. 2d 327, 336 (S.D.N.Y. 2000) (defendant correctional facility is immune from suit since it is a branch of a state agency). Thus, plaintiff's claims against DOCCS fail because it is an arm of New York State. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of Section 1983 claims against DOCCS on 11th Amendment grounds); *Jones v. New York State Division of Military and Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999) (the Eleventh Amendment bars Section 1983 suits against state agencies).

4      The Supreme Court has held that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Will*, 491 U.S. at 66.

**\*3** Accordingly, the New York State Department of Corrections and Community Supervision, and all claims against it, are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Inmate Jason Williams

In order to maintain a Section 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under Section 1983). State action is an essential element of any Section 1983 claim. *See Gentile v. Republic Tobacco Co.*, No. 6:95-CV-1500 (RSP/DNH), 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (McAvoy, C.J.)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

Plaintiff has not alleged any nexus between the State of New York and the alleged wrongdoing by defendant Williams, nor has he alleged any facts which plausibly suggest that defendant Williams violated his constitutional rights, or any of his rights under Federal law.

Thus, defendant Williams and all claims against him are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Dismissal with Leave to Amend

The Court recognizes that plaintiff is proceeding pro se and that this requires the Court to treat his pleadings with a certain degree of liberality. Despite this, the complaint is wholly insufficient to state any plausible claim for relief or to allow a proper defendant to make a reasonable response. As a result, and for the reasons set forth above, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

In light of plaintiff's pro se status, the Court will afford him an opportunity to file an amended complaint if he wishes to avoid dismissal of this action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). In any amended complaint that plaintiff submits in response to this Decision and Order, he must set forth a short and plain statement of the facts on which he relies to support his claim that the individuals named as defendants engaged in misconduct or wrongdoing that violated his constitutional rights. Any amended complaint filed by plaintiff must bear his original signature, and must be a complete pleading which will supersede and replace the original complaint in its entirety. Plaintiff must name one or more defendants, and must set forth a short and plain statement of the facts he relies on in support of his claim that the defendants violated his statutory or constitutional rights. While it is not improper for a plaintiff to identify a defendant only as "John/Jane Doe" at the outset of litigation, a complaint must nevertheless set forth factual allegations regarding the actions taken by each Doe defendant which plaintiff relies on in support of his claim that the defendant was personally involved in conduct violative of his statutory or constitutional rights.

**\*4** Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV. MOTION FOR COUNSEL

Based on the Court's decision preliminarily dismissing the complaint, plaintiff's Motion for Counsel is denied as moot. In the event that plaintiff files an amended complaint in compliance with this Decision and Order, he may renew his motion for counsel.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 11) is **GRANTED**. [5] The Clerk shall provide the superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; [6] and it is further

[5]   Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[6]   "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Case 6:24-cv-01303-GTS-TWD    Document 10    Filed 02/19/25    Page 108 of 108

Salaam v. Department of Corrections and Community..., Not Reported in Fed....

2019 WL 4415624

**ORDERED** that the Clerk shall provide a copy of plaintiff's authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the New York State Department of Corrections and Community Supervision, and all claims against it, are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted and because DOCCS is entitled to Eleventh Amendment immunity; [7] and it is further

[7]    Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).

**ORDERED** that plaintiff's Motion for Counsel (Dkt. No. 8) is **DENIED as moot** with leave to renew in the event plaintiff files an amended complaint; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action, he must file an amended complaint as directed above **within thirty (30) days** from the filing date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

 **\*5  ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e) (2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4415624

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.